**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE LLC, and Doe defendants 1 through 5, inclusive, <br><br> Defendants. | Case No. 3:17-CV-2335-GPC-MDD <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL** <br><br> Date: October 12, 2018 <br> Time: 1:30 p.m. <br> Ctrm: 2D <br> Judge: Hon. Gonzalo P. Curiel <br><br> **REDACTED FOR PUBLIC VIEW** |

-1-

*Hilsley v. Ocean Spray Cranberries, Inc., et al.*, Case No. 3:17-CV-2335
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................................... 1

II.  FACTS ..................................................................................................... 3

III. LEGAL STANDARDS ............................................................................ 5

IV.  ARGUMENT ........................................................................................... 6

   A.   THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED ................................... 6

      1.   Numerosity ................................................................................ 6

      2.   Commonality .............................................................................. 6

      3.   Typicality ................................................................................... 8

      4.   Adequacy ................................................................................... 9

   B.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ............................. 11

      1.   Predominance .......................................................................... 11

         a.   *Ocean Spray's Liability Will be Adjudicated Pursuant to Objective Standards, Using Common Evidence* ....................................... 12

         b.   *Damages Stem Solely From Defendants' Actions that Created Legal Liability* ............................................................................ 16

         c.   *Proposed Damages Model* ................................................. 18

      2.   Superiority ............................................................................... 19

   C.   THE REQUIREMENTS OF RULE 23(B)(2) ARE SATISFIED ............................. 21

   D.   THE CLASS IS ASCERTAINABLE .............................................................. 22

   E.   THE COURT SHOULD APPROVE NOTICE TO THE CLASS ............................... 24

V.   CONCLUSION ....................................................................................... 25

-i-

*Hilsley v. Ocean Spray Cranberries, Inc., et al.*, Case No. 3:17-CV-2335
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Similasan Corp.*,
   306 F.R.D. 635 (S.D. Cal. 2015) ................................................................. 16, 23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ...................................................................................... 7, 20

*Bateman v. Am. Multi-Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ............................................................................ 20

*Berger v. Home Depot USA, Inc.*,
   741 F.3d 1061 (9th Cir. 2014) ........................................................................... 11

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................... 5

*Briseno v. ConAgra Foods, Inc.*,
   844 F. 3d 1121 (9th Cir. 2017) ....................................................................... 5, 22

*Brockey v. Moore*,
   107 Cal. App. 4th 86 (2003) .......................................................................... 12, 13

*Brown v. Hain Celestial Grp., Inc.*,
   2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) .................................................... 24

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012) ....................................................................... 13

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) ....................................................................... 15

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ............................................................................. 16

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ................................................................... 6, 14

*Chowning v. Kohl's Dep't Stores, Inc.*,
   2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ................................................... 17

*Clark v. Super. Ct.*,
   50 Cal. 4th 605 (2010) ........................................................17

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ....................................12, 16, 17

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)..............................................11, 13, 16

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ...................................................16, 17

*Culley v. Lincare Inc.*,
   2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) ....................20

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ............................................22

*De La Fuente v. Stokely-Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) ...............................................8

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ..........................................................20

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................21

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ..........................................................12

*Fletcher v. Sec. Pac. Nat'l Bank*,
   23 Cal. 3d 442 (1979) .......................................................16

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)...................22, 23

*Galvan v. KDI Distribution Inc.*,
   2011 WL 5116585 (C.D. Cal. 2011) .................................24

*Grinnel v. Charles Pfizer & Co.*,
   274 Cal. App. 2d 424 (1969) ............................................15

-iii-

*Guido v. L'Oreal, USA, Inc.*,

    284 F.R.D. 468 (C.D. Cal. 2012)...................................................................13, 18

*Hale v. State Farm Mut. Auto. Ins. Co.*,

    2016 WL 4992504 (S.D. Ill. Sept. 16, 2016) ...........................................7, 11

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ............................................................passim

*Hanon v. Dataproducts Corp.*,

    976 F.2d 497 (9th Cir. 1992) .....................................................8, 9, 13

*Harris v. Palm Springs Alpine Estates*,

    329 F.2d 909 (9th Cir. 1964) ...............................................................6

*Hauter v. Zogarts*,

    14 Cal. 3d 104 (1975) ........................................................................15

*Hilao v. Estate of Marcos*,

    103 F.3d 767 (9th Cir. 1996) ............................................................23

*Hofstetter v. Chase Home Fin., LLC*,

    2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) ......................................6

*In re Abbott Labs. Norvir Anti-Trust Litig.*,

    2007 WL 1689899 (N.D. Cal. June 11, 2007) ......................................6

*In re Brazilian Blowout Litig.*,

    2011 WL 10962891 (C.D. Cal. Apr. 12, 2011)................................9, 10, 20, 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

    2013 WL 5429718 (N.D. Cal. 2013) ..................................................16

*In re ConAgra Foods, Inc.*,

    90 F. Supp. 3d 919 (C.D. Cal. 2015)...............................14, 15, 16, 18

*In re Ferrero Litig.*,

    278 F.R.D. 552 (S.D. Cal. 2011) ......................................................14

*In re Scotts EZ Seed Litig.*,

    304 F.R.D. 397 (S.D.N.Y. 2015)......................................................15

*In re Tobacco II Cases*,

    46 Cal. 4th 298 (2009) ..................................................................12, 13, 22

*In re Vioxx Class Cases*,

    180 Cal. App. 4th 116 (2009) ...............................................................17

*Jefferson v. Chase Home Fin.*,

    2008 WL 1883484 (N.D. Cal. Dec. 14, 2007) ....................................12

*Jimenez v. Allstate Ins. Co.*,

    765 F.3d 1161 (9th Cir. 2014) ..................................................................7

*Johns v. Bayer Corp.*,

    280 F.R.D. 551 (S.D. Cal. 2012) .............................................................14

*Kanfer v. Pharmacare US, Inc.*,

    142 F. Supp. 3d 1091 (S.D. Cal. 2015) ..................................................15

*Karim v. Hewlett-Packard Co.*,

    311 F.R.D. 568 (N.D. Cal. 2015) ............................................................15

*Keegan v. Am. Honda Motor Co., Inc.*,

    284 F.R.D. 504 (C.D. Cal. June 12, 2012) ...........................................13

*Keele v. Wexler*,

    149 F.3d 589 (7th Cir. 1998) ....................................................................7

*Keilholtz v. Lennox Hearth Prods.*,

    268 F.R.D. 330 (N.D. Cal. 2010) .............................................................6

*Keith v. Buchanan*,

    173 Cal. App. 3d 13 (1985) ....................................................................15

*Knutson v. Schwan's Home Serv., Inc.*,

    2013 WL 4774763 (S.D. Cal. Sept. 5, 2013) .......................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,

    29 Cal. 4th 1134 (2003) ..........................................................................17

*Krueger v. Wyeth, Inc.*,

    310 F.R.D. 468 (S.D. Cal. 2015) .............................................................16

-v-

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D. N.Y. 2017)..................................................................17

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ...................................................................16

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ....................................................................12

*Levya v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ....................................................................11

*Lilly v. Jamba Juice Co.*,
   308 F.R.D. 231 (N.D. Cal. 2014) ...............................................9, 11, 23, 24

*Martin v. Monsanto Co.*,
   2017 WL 1115167 (C.D. Cal. Mar. 24, 2017) ...........................................10

*Mary Pickford Co. v. Bayly Bros., Inc.*,
   12 Cal. 2d 501 (1939) ...............................................................................14

*McCrary v. Elations Co., LLC*,
   2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).............................................23

*McGill v. Citibank*, N.A.,
   2 Cal. 5th 945 (2017) ................................................................................22

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016) .............................................7

*Miller v. Fuhu Inc.*,
   2015 WL 7776794 (C.D. Cal. Dec. 1, 2015)..............................................18

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
   823 F.3d 948 (9th Cir. May 20, 2016).......................................................13

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)...............................................................14

*Pulaski Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ...............................................................12, 16

*Richmond v. Dart Indus., Inc.*,

    29 Cal. 3d 462 (1981) ..................................................................6

*Ries v. Arizona Beverages USA LLC*,

    287 F.R.D. 523 (N.D. Cal. 2012) ............................................23, 24

*Rodman v. Safeway, Inc.*,

    2014 WL 988992 (N.D. Cal. 2014) ...............................................7

*Salvagne v. Fairfield Ford Inc.*,

    264 F.R.D. 321 (S.D. Ohio 2009)..................................................9

*Sav-On Drug Stores, Inc. v. Super. Ct.*,

    34 Cal. 4th 319 (2004) ..................................................................6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,

    559 U.S. 393 (2010) ......................................................................5

*Simpson v. Fireman's Fund Ins. Co.*,

    231 F.R.D. 391 (N.D. Cal. 2005) ..................................................8

*Six (6) Mexican Workers v. Arizona Citrus Growers*,

    904 F.2d 1301 (9th Cir. 1990) .....................................................23

*Smith v. Univ. of Wash. Law Sch.*,

    233 F.3d 1188 (9th Cir. 2000) .....................................................21

*Spann v. J.C. Penney Corp.*,

    307 F.R.D. 508 (C.D. Cal. 2015)...................................................8

*Stearns v. Ticketmaster Corp.*,

    655 F.3d 1013 (9th Cir. 2012) .....................................................13

*Tait v. BSH Home Appliances Corp.*,

    289 F.R.D. 466 (C.D. Cal. 2012)............................................13, 20

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) .................................................................7, 21

*Weinstat v. Dentsply Int'l, Inc.*,

    180 Cal. App. 4th 1213 (2010) ...................................................15

*Wiegele v. FedEx Ground Package Sys.*,

    2008 U.S. Dist. LEXIS 10246 (S.D. Cal. Feb. 12, 2008) ....................................5

*Williams v. Gerber Prods. Co.*,

    552 F.3d 934 (9th Cir. 2008) ...........................................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) ....................................................................8, 20

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) ..................................................................20, 21

**Statutes**

28 U.S.C. § 1332(d) ...............................................................................................3

Cal. Bus. & Prof. Code § 17535 ..........................................................................17

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................................2, 12

Cal. Bus. & Prof. Code §§ 17203 ........................................................................17

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ......................................................2, 12

Cal. Civ. Code § 1780(a)(3) .................................................................................17

Cal. Civ. Code §§ 1750, *et seq.* .....................................................................2, 12

Cal. Com. Code § 2313 ........................................................................................15

Cal. Com. Code §§ 2313(1)(a)-(b) .......................................................................14

Cal. Health & Saf. Code § 109875, *et seq.* ..........................................................4

**Rules**

Fed. R. Civ. P.  23(a) ........................................................................................1, 2

Fed. R. Civ. P.  23(a)(2) ...................................................................................6, 7

Fed. R. Civ. P. 23 ..................................................................................................5

Fed. R. Civ. P. 23(a)(1) .........................................................................................6

Fed. R. Civ. P. 23(a)(3) .........................................................................................8

Fed. R. Civ. P. 23(a)(4) .........................................................................................9

Fed. R. Civ. P. 23(b)(2) ...........................................................................1, 2, 21, 22

Fed. R. Civ. P. 23(b)(3) ................................................................................passim

*Hilsley v. Ocean Spray Cranberries, Inc., et al.*, Case No. 3:17-CV-2335
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL

Fed. R. Civ. P. 23(c)(2)(B) ................................................................24, 25

**Regulations**

21 CFR § 101.22 ...........................................................................................4

21 CFR § 101.4(a)(1) ....................................................................................4

21 CFR § 102.4(c) .........................................................................................4

**Treatises**

Manual for Complex Litigation, Fourth § 21.311 ...................................24

Restatement of Restitution § 151 ............................................................17

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed. 2004) .............................................14

# I.    INTRODUCTION

This is a simple consumer fraud action in which a California Class alleges that Defendants Ocean Spray Cranberries, Inc. and Arnold Worldwide, LLC ("Defendants" or "Ocean Spray") product labels claiming that Ocean Spray fruit-flavored beverage products contain "No Artificial Flavors" are false and misleading because the Products actually contain an artificial flavoring ingredient called dl-malic acid. (*See* ECF No. 1-2 ("Compl."), ¶ 32). Plaintiff alleges that this type of malic acid "is not naturally-occurring but is in fact made in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—after an intermediate conversion to maleic anhydride through a series of chemical reactions involving toxic chemical precursors and byproducts." (Compl., ¶ 33). Plaintiff also alleges that some of the Ocean Spray Products also contain a similar artificial flavoring ingredient called fumaric acid. (Compl., ¶ 54).

The case is readily amenable to certification. Each of the Rule 23(a) criteria is satisfied. Regarding numerosity, many thousands of consumers purchased these Ocean Spray Products. For commonality, Plaintiff demonstrates that Defendants' unlawful behavior was the same to all class members so that liability to each will be determined by answering the same questions, including whether Ocean Spray violated California consumer protection laws and whether this conduct was likely to deceive a reasonable consumer. For typicality, Plaintiff demonstrates that the legal theory and type of injury is the same for all class members, and with respect to adequacy, Plaintiff demonstrates that she and her counsel have no conflicts and have been vigorously prosecuting the case on behalf of the class.

In addition, each of the Rule 23(b)(2) and 23(b)(3) criteria is satisfied. The Class's claims present predominating common questions based on objective standards that can be resolved through class-wide evidence. Because a determination of the truth or falsity of Ocean Spray's representations will resolve an issue that is central to the validity of each one of Plaintiff's claims in one stroke, Plaintiff's

-1-

claims are appropriate for class treatment. And because the Class challenges a uniformly deceptive advertising campaign, the Class damages necessarily flow from Ocean Spray's conduct creating the legal liability.

For the reasons set forth below, Plaintiff respectfully moves the Court for an Order pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), certifying, with respect to her claims for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violations of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and for breach of express and implied warranties, a California Class defined as follows:

> All California Citizens who purchased one of the following Ocean Spray Products, for personal and household use and not for resale, in California from January 1, 2011 until the date class notice is disseminated:
>
> - Ocean Spray Cran Apple;
> - Ocean Spray Cran Grape;
> - Ocean Spray "100% Apple" Juice Drink;
> - Ocean Spray Cranberry Juice Cocktail;
> - Ocean Spray Wave Apple with White Cranberries;
> - Ocean Spray Wave Berry Medley;
> - Ocean Spray Cran Cherry;
> - Ocean Spray Cran Pineapple;
> - Ocean Spray Cran Pomegranate;
> - Ocean Spray Diet Cran Pomegranate;
> - Ocean Spray Diet Cran Cherry;
> - Ocean Spray Cranberry Cherry Flavor 100% Juice.
>
> Excluded from the Class are Defendants' current and former officers and directors, members of the immediate families of Defendants' officers and directors, Defendants' legal representatives, heirs, successors, and assigns, any entity in which Defendants have or had a controlling interest during the Class Period, and the judicial officers to whom this lawsuit is assigned.

-2-

*Hilsley v. Ocean Spray Cranberries, Inc., et al.*, Case No. 3:17-CV-2335
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL

## II. FACTS

This action was filed in the San Diego Superior Court on September 19, 2017. (*See generally* Compl.). Defendants each filed an answer to Plaintiff's Complaint on November 16, 2017. (ECF Nos. 1-2 & 1-3). On November 16, 2017, Defendants removed this action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (ECF No. 1).

Plaintiff's complaint alleges that "Defendant Ocean Spray manufactures, distributes, advertises, markets, and sells a variety of juices and juice-based beverage products" and that "Defendant Arnold Worldwide participates substantially in the labeling and advertising of these products." (Compl., ¶ 6). The twelve Ocean Spray Products at issue are (1.) Ocean Spray Cran Apple; (2.) Ocean Spray Cran Grape; (3.) Ocean Spray "100% Apple" Juice Drink; (4.) Ocean Spray Cranberry Juice Cocktail; (5.) Ocean Spray Wave Apple with White Cranberries; (6.) Ocean Spray Wave Berry Medley; (7.) Ocean Spray Cran Cherry; (8.) Ocean Spray Cran Pineapple; (9.) Ocean Spray Cran Pomegranate; (10.) Ocean Spray Diet Cran Pomegranate; (11.) Ocean Spray Diet Cran Cherry, and; (12.) Ocean Spray Cranberry Cherry Flavor 100% Juice (collectively the "Products" or the "Ocean Spray Products"). (Compl., ¶¶ 7, 94-95). The labels of each of the Ocean Spray Products similarly represent that the Products contain "No Artificial Flavors." (*See* Declaration of Ronald A. Marron in Support of Plaintiff's Motion for Class Certification ("Marron Decl."), ¶¶ 2-4 & Exs. 1-3 [product labels]).

Plaintiff alleges that Ocean Spray's labeling claims are false and misleading because each of the Ocean Spray Products contain artificial flavoring ingredients, either dl-malic acid, fumaric acid, or both. (Compl., ¶¶ 33, 54). In fact, ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (*See* Marron Decl.,

¶ 8 & Ex. 7). ████████████████████████████████████████████████████████

████████████████ (*See* Marron Decl., ¶ 8 & Ex. 7). ████████████████████

-3-

███████████████████████████████████████████████████

████████████████████████████ (*See* Marron Decl., ¶ 9 & Ex. 8).  Plaintiff's testing confirms that Ocean Spray uses the artificial dl-malic acid in the Products. (*See* Marron Decl., ¶ 5 & Ex. 4). ████████████████████████████████████

██████████████████████████████ (*See* Marron Decl., ¶ 11 & Ex. 10), but failed to label them as "artificially flavored."

Plaintiff alleges that the Ocean Spray Product labels violate California law in a minimum of three different ways. (Compl., ¶ 25). "First, because the Product contains added flavoring ingredients that simulate and reinforce the Product's characterizing flavors, the front label is required by law to disclose the presence of those additional flavorings rather than misleadingly suggest that Product's flavor is conferred only by natural cranberry and apple juices." (Compl., ¶ 26) (citing Cal. Health & Saf. Code § 109875, *et seq.* (Sherman Law), incorporating 21 CFR § 101.22). "Second, the required Product ingredient list violates Federal and state law because it misleadingly identifies the malic acid constituent only as a generic 'malic acid' instead of using the correct, specific, non-generic chemical name of the ingredient as required by food labeling regulations." (Compl., ¶ 27) (citing 21 CFR § 101.4(a)(1)). "Third, and even more deceptive, is the fact that the Product claims on its [] label to have 'No… artificial flavors', even though it contains an undisclosed artificial flavor made from petrochemicals." (Compl., ¶ 28). Moreover, Plaintiff's Complaint alleges that Federal and state laws require Ocean Spray to affirmatively disclose its use of artificial flavoring ingredients in "boldface print on the front display panel and of sufficient size for an average consumer to notice." (Compl., ¶¶ 47-48) (citing 21 CFR § 102.4(c)). Ocean Spray fails to do so.

Plaintiff Crystal Hilsley purchased the 64-ounce Ocean Spray Cran-Apple Product occasionally from about 2011 until 2013 and on approximately a monthly basis from 2013 until December of 2016. (*See* Declaration of Crystal Hilsley in Support of Plaintiff's Motion for Class Certification ("Hilsley Decl."), ¶ 4; Marron

Decl., ¶ 13 & Ex. 12 [Hilsley Dep. Tr. 74:17-75-20]). Plaintiff also purchased the 64-ounce Ocean Spray Cran-Grape Product, the 64-ounce Ocean Spray "100% Apple" juice drink, and the 64-ounce Ocean Spray Cranberry Juice Cocktail Products multiple times during the class period. (Hilsley Decl., ¶ 4; Marron Decl., ¶ 13 & 12 [Hilsely Dep. Tr. 75:24-76:3; 76:22-77:16). Plaintiff purchased the Ocean Spray Products from various retail stores in San Diego County, California, including the Ralphs Supermarket located at 125 N. El Camino Real, Encinitas, California. (Hilsley Decl., ¶ 4). When purchasing the Products, Plaintiff read and relied on the labels, including the labeling statement that the Products contain "No artificial flavors or preservatives" and the fact that the labels failed to disclose that the Products contained artificial flavorings. (Hilsley Decl., ¶ 5; Marron Decl., ¶ 13 & Ex. 12 [Hilsley Dep. Tr. 81:4-20]). Plaintiff would not have purchased the Ocean Spray Products if she had known that the Products actually contain artificial ingredients. (Hilsley Decl., ¶ 7).

## III. <u>LEGAL STANDARDS</u>

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). These are the only criteria that must be met. *Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1124-26 (9th Cir. 2017) ("declin[ing] to interpose an additional hurdle"—administrative feasibility—"into the class certification process delineated in the enacted Rule"). In ruling on a motion for class certification, "the court 'is bound to take the substantive allegations of the complaint as true.'" *Wiegele v. FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246, at *8 (S.D. Cal. Feb. 12, 2008) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)). California "has a public policy which encourages the use of the class action device."

*Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 473 (1981); *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004) (same). On a motion for class certification the court makes no findings of fact. *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 337, n.3 (N.D. Cal. 2010). "In determining whether class certification is appropriate, the question is not whether . . . [plaintiffs] will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin., LLC*, No. C10-01313 WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011) (internal quotations and citations omitted).

## IV.  ARGUMENT

### A.  The Requirements of Rule 23(a) Are Satisfied

#### 1.  *Numerosity*

Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *In re Abbott Labs. Norvir Anti-Trust Litig.*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. June 11, 2007) (internal citations and quotations omitted). Numerosity is generally met if a proposed class has at least 40 members. *See, e.g., Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964). In seeking removal of this action to this Court, Ocean Spray admitted that class members have made "millions of purchases of the twelve products" and that the amount in controversy is in excess of $5,000,000. (*See* Dkt. No. 1 [Ntc. of Removal at & 24]). Common sense accordingly dictates that the class is sufficiently numerous that joinder of all members of the Class is impracticable. *See, Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (mass-market beverage purchases satisfied numerosity).

#### 2.  *Commonality*

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This criterion is satisfied whenever "the class

members have suffered the same injury," so that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ["*Dukes*"]. "Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal citation omitted)). "What matters" is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes,* 564 U.S. at 350 (quotation omitted); *see, also, Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

"[P]laintiff's burden for showing commonality is 'minimal,'" *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *3 (S.D. Cal. May 12, 2016) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts." *Hanlon*, 150 F.3d at 1019. Commonality is found "where a defendant has engaged in standardized conduct toward members of the class." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (collecting cases)). Under Rule 23(a)(2), "even a single common question will do." *Dukes*, 564 U.S. at 359.

Here, the class includes only persons who purchased Ocean Spray Products that are falsely labeled, fail to disclose artificial flavorings, and claim "No artificial flavors." (*See* Marron Decl., ¶¶ 2-4 & Exs. 1-3 [product labels]). The gravamen of the Class's claims is that Ocean Spray did not provide products that conformed to these labels because those products in fact contain artificial flavoring ingredients. (Compl., ¶¶ 21-33). This "common contention" is "capable of classwide resolution," *see Dukes*, 564 U.S. at 350, as Ocean Spray's liability to all class members will be

determined by answering the same questions. Because these representations were made to all class members on the product packaging (Marron Decl., ¶¶ 2-4 & Exs. 1-3), common questions include whether Ocean Spray's "No artificial flavors" claim and failure to disclose is likely to deceive. *See, e.g., Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015). Common questions also include (1) whether Ocean Spray communicated a representation—through the Products' packaging and labeling—that the Ocean Spray Products contain "No artificial flavors"; (2) if so, whether that representation was material to individuals purchasing the Ocean Spray Products; (3) if the representation was material, whether it was truthful; and (4) if reasonable consumers who purchased Ocean Spray Products were deceived by a material misrepresentation, what is the proper method for calculating their damages? Commonality is satisfied.

### 3. *Typicality*

Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This means plaintiff's claims "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation and internal quotation marks omitted).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quotation and citations omitted). Thus, "[t]o

-8-

assess whether or not the representative's claims are typical, the Court examines 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *In re Brazilian Blowout Litig.*, No. CV 10-8452-JFW MANX, 2011 WL 10962891, at *3 (C.D. Cal. Apr. 12, 2011) ["*Brazilian Blowout*"] (quoting *Hanon*, 976 F.2d at 508 (quotation omitted)). "In instances where it is alleged that the defendant[] engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members." *Salvagne v. Fairfield Ford Inc.*, 264 F.R.D. 321, 328 (S.D. Ohio 2009) (quotation omitted).

Here, Plaintiff alleges that she and all class members were exposed to the same misleading claims and omissions, were influenced by those claims, and were injured in the same manner. (Compl ¶ 42; Marron Decl., ¶¶ 2-4 & Exs. 1-3). Consumer research discloses that consumers are highly likely to be influenced by these exact misleading claims and omissions. (*See* Declaration of Dr. George E. Belch in Support of Plaintiff's Motion for Class Certification ("Belch Decl."), ¶¶ 34-38). Plaintiff's claims are therefore typical of class members' claims. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) (plaintiffs' claims are typical when "they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class."). The typicality requirement is also satisfied.

### 4. *Adequacy*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

Plaintiff has demonstrated that she and her counsel satisfy these criteria. Plaintiff has standing, has no conflict of interest with other class members, is aware of her obligations as a class representative, and has prosecuted and will continue prosecuting the action vigorously on behalf of the class. (*See* Hilsley Decl., ¶¶ 9-11); *Brazilian Blowout*, 2011 WL 10962891, at *5 (class representatives adequate where they submitted declarations stating "they understand their responsibilities as class representatives that no conflicts exist between their interests and other members of the class, and that they intend to vigorously pursue all claims asserted in this lawsuit"). Plaintiff does not possess any interests that conflict with those of the proposed Class because, like absent Class members, Plaintiff relied on Ocean Spray's misleading advertisements in purchasing the Products, lost money because the Products are not as advertised, and is motivated to establish Ocean Spray's liability and attain remedies equally applicable to and beneficial for the Class. (Hilsley Decl., ¶¶ 4-8). Plaintiff is familiar with the underlying legal claims asserted in this case and has stayed informed about its status. (Hilsley Decl., ¶¶ 9-11).

Plaintiff's counsel are adequate class counsel because they are experienced in consumer protection class actions and other false advertising litigation, have no conflicts, and have prosecuted and will continue prosecuting the action vigorously on behalf of the class. (Marron Decl. ¶¶ 15-33 & Ex. 14 [Firm Resume]; Declaration of David Elliot in Support of Plaintiff's Motion for Class Certification ("Elliot Decl."), ¶¶ 1-2); *Martin v. Monsanto Co.,* No. EDCV162168JFWSPX, 2017 WL 1115167, at *5 (C.D. Cal. Mar. 24, 2017) (finding the adequacy requirement satisfied when Plaintiff's counsel "submitted declarations demonstrating that they have had substantial experience with similar class actions and other false advertising litigation, have no conflicts, and will continue prosecuting the action vigorously on behalf of the Class."). The Law Offices of Ronald A. Marron and the Law Office of David Elliot demonstrate the ability to diligently pursue the instant claims on behalf of Plaintiff and the proposed Class and have sufficient resources to do so

successfully. (Marron Decl. ¶¶ 15-33 & Ex. 14; Elliot Decl., ¶¶ 1-2). The adequacy requirement is therefore also satisfied.

**B.      The Requirements of Rule 23(b)(3) Are Satisfied**

**1.      *Predominance***

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *see also* Fed. R. Civ. P. 23(b)(3). Predominance exists where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal quotation, brackets, and alteration omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022 (quotation omitted). In addition to showing that common questions concerning the substantive elements of the class's claims predominate, Rule 23(b)(3) requires a showing that the class's "damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) ["*Comcast*"]). Plaintiff must also show that "damages are capable of measurement on a classwide basis," *Comcast*, 133 S. Ct. at 1433, so they can "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Levya*, 716 F.3d at 514. "Often, this will impose only a very limited burden." *Lilly*, 308 F.R.D. at 244. "If damages are capable of measurement on a class-wide basis, questions of individual damage calculations will not overwhelm questions common to the class." *Hale*, 2016 WL 4992504, at *8 (citing *Comcast*, 133 S. Ct. at 1433).

### a. Ocean Spray's Liability Will be Adjudicated Pursuant to Objective Standards, Using Common Evidence

"Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

> i. *Common Issues Predominate with Respect to Plaintiff's Claims Under California's Consumer Protection Laws*

California's FAL, CLRA, and UCL "prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quotation omitted). This is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture," *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006), and is not "expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print." *Williams*, 552 F.3d at 939.

"[T]he primary evidence in a false advertising case is the advertising itself," *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003), and "[t]he 'misleading character' of a given representation 'appears on applying its words to the facts.'" *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *17 (N.D. Cal. Dec. 14, 2007) (quoting *Colgan*, 135 Cal. App. 4th at 679). "To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ["*Pulaski*"] (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). A product's packaging is misleading

if it presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey*, 107 Cal. App. 4th at 99.

If plaintiff demonstrates a representation was likely to deceive under this objective "reasonable consumer" test, relief "is available 'without individualized proof of deception, reliance and injury,' so long as the named plaintiff[] demonstrate[s] injury and causation." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 482 (C.D. Cal. 2012) (quotation omitted); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir. May 20, 2016) ("[W]here the defendant's representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification." )(citing *Hanon*, 976 F.2d at 509 ("We emphasize that the defense of non-reliance is not a basis for denial of class certification."))). And while reliance is an element of the class's CLRA claims, "[t]he causation required by the CLRA does not make plaintiffs' claims unsuitable for class treatment because causation as to each class member is commonly proved more likely than not by materiality." *Guido*, 284 F.R.D. at 482 (quotation omitted). That is because "[a] presumption, or at least an inference, of reliance arises . . . whenever there is a showing that a misrepresentation was material." *Tobacco II Cases*, 46 Cal. 4th at 327; *see also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2012), *abrogated on other grounds by Comcast*, 133 S. Ct. 1426.

The objective tests for deception and materiality "renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' 'individual interaction with the product.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quotation omitted). "For this reason, district courts in California routinely certify consumer class actions arising from alleged violations of the CLRA, FAL, and UCL." *Id.* (citing *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012); *Chavez*, 268

F.R.D. at 375-80; *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008)).

Here, "the predominating common issues include whether [Defendants] misrepresented" the Products "and whether the misrepresentations were likely to deceive a reasonable consumer." *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012); *see also In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011). The Court should therefore find that common issues predominate.

ii. <u>Common Issues Predominate with Respect to Plaintiff's Warranty Claims</u>

A warranty is a guarantee by a contracting party that something contemplated by the contract has a particular character or quality; the promising party in effect insures the other against the possibility that the thing is not as warranted. *See Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501, 520 (1939) ("The obligation of a warranty is absolute, and is imposed as a matter of law irrespective of whether the seller knew or should have known of the falsity of his representations."). The elements of a claim for breach of warranty are: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 984 (C.D. Cal. 2015) ["*ConAgra*"] (quotation omitted); *see also* Cal. Com. Code §§ 2313(1)(a)-(b). "[A] warranty is conclusively presumed to be material," BLACK'S LAW DICTIONARY (8th ed. 2004), at 1618.

Plaintiff alleges Ocean Spray made the same warranty to every class member— *i.e.* that the Products contain "No artificial flavors." (Marron Decl. ¶¶ 2-4 & Exs. 1-3). Resolution of every class member's claim therefore requires determining only whether Ocean Spray's "No artificial flavors" statement was an express warranty and, if so, whether the Ocean Spray Products conformed to the promises and descriptions on the product labels. There are no individualized questions that could colorably predominate over these two common questions. First,

plaintiff "need not establish reliance as an element of [her] express warranty claim," and she "need not establish reliance on a classwide basis." *See Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 573 (N.D. Cal. 2015); *see also ConAgra*, 90 F. Supp. 3d at 984 ("Proof of reliance on specific promises or representations is not required" for breach of warranty claim.); *Hauter v. Zogarts*, 14 Cal. 3d 104, 115 (1975) ("Whereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller . . . the Uniform Commercial Code requires no such proof." (citing *Grinnel v. Charles Pfizer & Co.*, 274 Cal. App. 2d 424, 440 (1969))). "Because reliance is not an element of express warranty claims under California law, common questions predominate and class action treatment is appropriate." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (citations omitted).

Second, the class may invoke the presumption that "all of the statements of the seller" become part of the basis of the bargain "unless good reason is shown to the contrary." *Karim*, 311 F.R.D. at 574 (quoting Cal. Com. Code § 2313, comment 8); *see also Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1229 (2010) ("Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." (citations omitted)); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (1985). Plaintiff's claims for breach of the implied warranty of merchantability will be adjudged by the same standard because the implied warranty of merchantability "is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. 2015) (citing *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 189 (2003)).

Accordingly, common questions predominate on the class's breach of warranty claims as well. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (certifying breach of warranty claims in action alleging supplement was falsely advertised as providing "up to 6X better absorption");

*ConAgra*, 90 F. Supp. 3d at 985 (certification proper where "whether defendant misrepresented its product and whether such misrepresentations breached warranties are issues common to members of the class"); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 648-49 (S.D. Cal. 2015) ["*Similasan*"] ("Whether the Defendant's statements about the Products' efficacy are affirmations of fact, promises, or a description of the goods focuses on Defendant's labels, not consumers, and therefore is plainly subject to common proof.").

**b.** **Damages Stem Solely From Defendants' Actions that Created Legal Liability**

Plaintiff alleges Defendants are liable based solely on their misrepresentations of the Ocean Spray products, and the Class's damages flow solely from that conduct. *See Comcast*, 133 S. Ct. at 1434. Thus, "[u]nlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to defendants' acts that are **not** challenged on a class-wide basis because all members of the current class attribute their damages" to the same deceptive practice. *See Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2015) (emphasis in original); *accord Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (same); *c.f. In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. 2013) ("*Comcast* has no application" where plaintiffs assert only one theory of liability and impact").

"Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017) (quoting *Pulaski*, 802 F.3d at 989). The UCL, FAL, and CLRA all "authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan*, 135 Cal. App. 4th at 694 (citing *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000); *Fletcher v. Sec. Pac. Nat'l Bank*, 23 Cal. 3d 442, 452 (1979)); *see also* Cal. Bus. & Prof. Code §§

-16-

17203, 17535; Cal. Civ. Code § 1780(a)(3). "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Restitution is "measured by what was taken from the plaintiff." *Clark v. Super. Ct.*, 50 Cal. 4th 605, 615 (2010). Thus, "[i]n its simplest form, restitution is simply 'the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received.'" *Chowning v. Kohl's Dep't Stores, Inc.*, 2016 WL 1072129, at *5 (C.D. Cal. Mar. 15, 2016) (*quoting Cortez*, 23 Cal. 4th at 174).

The measure of recovery in restitution for the benefit received by the other is the value of the property at the time of its improper acquisition, retention or disposition. *Colgan*, 135 Cal. App. 4th at 698-99 (quoting Restatement of Restitution § 151). For the class's consumer fraud claims, restitution damages are therefore their out-of-pocket costs, or the difference in the value between the products as misleadingly advertised and as they were actually delivered. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution." (citations omitted)).

Here, damages can be calculated on a class wide basis by showing the price premium that is attributable to Ocean Spray's "No artificial flavors" labeling claims and failure to disclose the artificial flavorings. Plaintiff's expert, Dr. George E. Belch, has conducted a consumer survey that examines the price consumers would pay for the Ocean Spray Products if they were properly labeled as being "artificially flavored." (*See* Belch Decl., ¶¶ 10-38). Consumer survey evidence is a reliable method of calculating class wide damages under the price premium model. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 551 (E.D. N.Y. 2017) (stating that consumer survey evidence has "previously been approved in consumer class actions as reliable methodologies available for calculating the price premium attributable to

a product characteristic.") (citing *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015); *ConAgra*, 90 F.Supp.3d at 1026)

### c. Proposed Damages Model

In this case, Plaintiff proposes a Price Premium Model based on the difference in value between the Products as they were labeled and the value of the Products as they were actually delivered to Plaintiff and the Class. This damages model is direct and straightforward, easy for a jury to understand, relatively simple to apply to the facts of this case, and has been validated by numerous courts in this jurisdiction including the Ninth Circuit Court of Appeals. *See ConAgra*, 90 F. Supp. 3d at 1025; (finding that consumer survey evidence was a reliable means of calculating a price premium attributable to misleading labeling claims); *Guido*, 2014 WL 6603730 at *10–14 (same).

Plaintiff's primary damages-model expert, Dr. Belch, conducted a multi-part consumer survey that controlled for other market variables, focusing on the variable of interest – the misleading labels – and then derived a damages model accordingly addressing how much the allegedly mislabeled Products would have been worth to consumers if they had been labeled accurately. (*See* Belch Decl., ¶¶ 10-38). Dr. Belch, who has over 30 years of experience in product pricing, market analysis, and consumer research and has been qualified as an expert in this field by numerous courts, in turn worked with a consumer survey specialist company to refine and administer a consumer survey addressing the case's central question of damages. (*See* Belch Decl., ¶¶ 1-5 & Ex. 5 [curriculum vitae]). Dr. Belch provided Plaintiff with his expert opinion, which describes both his analysis and the proposed damages model. (Belch Decl., ¶¶ 10-38). Dr. Belch has concluded that consumers "have higher levels of purchase likelihood for Ocean Spray Cranberry juice products that use the claim of no artificial flavors on the label versus those products that include a disclosure of artificial flavors on the package label." (Belch Decl., ¶ 35). Moreover, "[t]he majority of consumers made aware of the use of artificial flavors on the

package label of the Ocean Spray Cranberry juice products are willing to pay less than an average reference price for the product." (Belch Decl., ¶ 36). Through his consumer survey, Dr. Belch was able to determine the price premium that is attributable to Ocean Spray's "No artificial flavors" labeling claim. (Belch Decl., ¶¶ 37-38). Dr. Belch concluded that "[c]onsumers would be likely to pay 61 cents *less* on average if they were aware of the use of artificial flavors in Ocean Spray Cranberry juice products." (Belch Decl., ¶ 38).

As an alternative damages model, Plaintiff retained Dr. Alan G. Goedde to conduct a survey of published juice prices from Southern California retailers. (*See* Declaration of Dr. Alan G. Goedde in Support of Plaintiff's Motion for Class Certification and to Appoint Class Counsel ("Goedde Decl."), ¶¶ 6-16). Dr. Goedde concluded that "[t]he results showed that the average price for artificially flavored juices sold in 59 to 64 fluid ounce packaging was $2.30 while the average price for all natural juices in 59 to 64 fluid ounce packaging was $2.96, indicating a price premium of $0.66 or 29% over similarly sized artificially flavored products." (Goedde Decl., ¶ 13). "On a price per ounce bases, artificially flavored juices sold at $0.04 per ounce while all natural juices sold at $0.05 per ounce, indicating a price premium of 25% for all natural juice products."

Both experts worked independently, neither expert communicated their results to the other, and both experts independently derived Price Premium figures for the Products within pennies of each other. (Belch Decl., ¶¶ 8, 38; Godde Decl., ¶¶ 4-5). These results further reinforce the applicability and reliability of the Price Premium damages model that Plaintiff and the putative Class propose.

## 2. *Superiority*

In addition to predominance, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of a controversy." Fed. R. Civ. P. 23(b)(3). The superiority analysis focuses on "efficiency and economy[.]"*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

1190 (9th Cir. 2001). The superiority inquiry also assesses whether the objective of the class action procedure will be achieved and compares alternative mechanisms for dispute resolution. *See Hanlon*, 150 F.3d at 1023. Courts are afforded wide discretion to evaluate superiority because they are "in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). The superiority requirement "is met '[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis.'" *Tait*, 289 F.R.D. at 486 (quoting *Wolin*, 617 F.3d at 1175); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Class members have no incentive to prosecute separate actions since the products cost less than $4.00, making individual claims exceedingly small in comparison to the costs of litigation. Courts routinely find the superiority requirement satisfied under similar circumstances. *See Brazilian Blowout Litig.*, 2011 WL 10962891, at *9; *c.f. Amchem Prods.*, 521 U.S. at 617.

Here, neither Plaintiff nor the proposed Class members have an interest in individual prosecution of their claims, as those claims are of small individual value and virtually identical. Class certification here promotes judicial efficiency because it permits Plaintiff's and Class members' common claims and issues to be tried once with a binding effect on all parties. Given the relatively small size of each Class members' claim, class treatment is not merely superior but effectively is the only way for the Court to ensure fair and efficient adjudication of the Class claims, as no individual consumer could reasonably bring an action to recover that amount. "The Ninth Circuit has recognized that a class action is a plaintiff's only realistic method for recovery if there are multiple claims against the same defendant for relatively small sums." *Culley v. Lincare Inc.*, 2016 WL 4208567, at *8 (E.D. Cal. Aug. 10, 2016) (citation omitted).

There is also no other litigation pending concerning the proposed class's claims. Further, it is desirable to concentrate the litigation of these claims on behalf

of California Class members in a California federal court. *See Brazilian Blowout*, 2011 WL 10962891, at \*9 (superiority where "no individual actions [are] pending against Defendant based on the claims asserted by Plaintiffs," and action was "most procedurally advanced" among pending class actions). Therefore, the superiority requirement is satisfied.

### C. The Requirements of Rule 23(b)(2) Are Satisfied

In the alternative, or in addition to certification under (b)(3), Plaintiff requests certification under Rule 23(b)(2). In the Ninth Circuit, a class may be certified under both (b)(2) and (b)(3). *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000). Certification under (b)(2) is appropriate where a defendant has acted on "grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Further, "[a] class seeking monetary damages may be certified pursuant to Rule 23(b)(2) where [monetary] relief is 'merely incidental to [the] primary claim for injunctive relief.'" *Zinser*, 253 F.3d at 1195 (citation omitted). Applying *Dukes*, the Ninth Circuit has held "the key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted". *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (quotations omitted).

Here, Ocean Spray's conduct affected class members equally because the Products' packaging uniformly conveys that the Products contain "No artificial flavors," and all class members were exposed to the same or substantially similar misleading or false labels. Final injunctive relief is appropriate with respect to the Class as a whole and would ensure class members are protected in the future.

Further, Plaintiff and the Class are limited to their out-of-pocket cost as restitution damages, and this monetary relief is equitable in nature, flowing from the wrongs asserted. Moreover, injunctive relief in this action is not merely incidental to monetary damages because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." *McGill v.*

-21-

*Citibank*, N.A., 2 Cal. 5th 945, 954, 393 P.3d 85, 89 (2017) (quoting *In re Tobacco II Cases*, 46 Cal.4th at 319).

Plaintiff has standing to pursue the injunctive relief that she seeks. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-69 (9th Cir. 2018) ["*Davidson II*"], the Ninth Circuit noted that "[i]t [was] an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." *Id.* at 967. The Ninth Circuit "resolve[d] this district court split in favor of plaintiffs seeking injunctive relief" and held that a previously deceived consumer "may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969. Here, Plaintiff would purchase and intends to purchase the Ocean Spray Products again in the future if the labels were accurate and the Products actually contained "No artificial flavors or preservatives." (*See* Hilsley Decl., ¶ 8). Thus, the requirements of Rule 23(b)(2) are satisfied.

### D.    The Class Is Ascertainable

In the Ninth Circuit, "'[t]he requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWX, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014); *Briseno*, 844 F.3d at 1124 n.4   ("noting that the Ninth Circuit has not expressly adopted an "ascertainability" requirement) "A class is sufficiently ascertainable if the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover." *Id*. (quotations omitted); *See also McCrary v. Elations Co., LLC,* No. EDCV 13-00242

JGB OP, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) (same, applying Ninth Circuit criteria).

Accordingly, courts in this circuit routinely certify classes for low-cost consumer products where purchasers are unlikely to have retained receipts and where it may be impossible to identify and notice every member of the class, as long as objective criteria can be applied to determine eligibility. *See e.g., Lilly*, 2014 WL 4652283, at *4 ("Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits. In the absence of a class action, the injury would go unredressed."); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting that if proof of class membership was required for certification, "there would be no such thing as a consumer class action"). Here, the proposed class definition clearly specifies the products at issue and the relevant time period. Objective criteria define the Class, and because the class is defined by objective criteria, members of the class can be ascertained. *See, e.g., Forcellati*, 2014 WL 1410264, at *5. These objective criteria also address a defendant's interest in validating Class membership. *Id.*; *Allen*, 300 F.R.D. at 660; *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307-08 (9th Cir. 1990). The use of objective criteria, in addition to the claims-processing error-trapping methodologies deployed, also minimizes the risk of inaccurate or fraudulent claim submissions. (*See* Declaration of Gajan Retnasaba in Support of Plaintiff's Motion for Class Certification ("Retnasaba Decl."), ¶¶ 27-32 (detailing fraud prevention measures)).

It is expected that most Class members will not have preserved proofs of purchase over the proposed Class period. Courts in this circuit have held that the

inability to provide individual proof of purchase does not render a class action unmanageable or nullify the objective criteria used to identify class members. *See, e.g., Lilly*, 2014 WL 4652283, at *4; *Brown v. Hain Celestial Grp., Inc*., 2014 WL 6483216, at *9 (N.D. Cal. Nov. 18, 2014). Further, an inability to identify each potential class member does not render the administration of a class action unmanageable. *See e.g., Knutson v. Schwan's Home Serv., Inc.,* No. 3:12-CV-0964-GPC-DHB, 2013 WL 4774763, at *1 (S.D. Cal. Sept. 5, 2013); *Ries*, 287 F.R.D. at 535. Under Rule 23, individual notice must only be provided to class members "who can be identified through reasonable effort." Rule 23(c) implicitly assumes that some class members cannot be individually identified. *See Manual for Complex Litigation*, Fourth § 21.311, at 292 (Fed. Jud. Center 2004) ("[I]f no records were kept of sales of an allegedly defective product from retailers to consumers, publication notice may be necessary."). Thus, in cases such as this one where a defendant cannot directly identify class members, courts in the Ninth Circuit hold that other types of notice are sufficient to notify and identify class members and are administratively feasible. *See, e.g., Galvan v. KDI Distribution Inc.*, 2011 WL 5116585, at *5-6 (C.D. Cal. 2011) (class notice may be distributed through advertising channels).

## E. The Court Should Approve Notice to the Class

Under Rule 23(c)(2)(B), for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Filed concurrently with this Motion is the Declaration of Gajan Retnasaba detailing a Notice Plan for this case. Because the Products are not sold directly to consumers but are purchased off retail store shelves, individual notice is not possible in this action. (Retnasaba Decl. ¶ 3.). Thus, to reach all potential class members, the best notice practicable under the circumstances is notice by publication and through social media websites like Facebook. (Retnasaba Decl. ¶¶ 3-26); Fed. R. Civ. P. 23(c)(2)(B). The Court should also order Defendant to post

-24-

notice on its own website(s) relating to the Products at no cost to the class as this will significantly increase the reach of the Class Notice. (Retnasaba Decl. ¶ 21).

Plaintiff therefore here includes draft notices to the class, in summary and detailed form, notifying them of the certification of this class, how it will affect their rights, and the deadline to opt-out of the class, as required under Rule 23(c)(2)(B). (*See* Marron Decl., ¶ 14 & Ex. 13). The short notice directs class members to the claims administrator-created web site, where the detailed notice may be viewed. The notices contain all information required under Rule 23(c)(2)(B) and are written in neutral language. *See id.* The Court should approve the Notice Plan, the proposed Notices, and set an opt-out date for three months after its order certifying the class.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Class Certification and to Appoint Class Counsel.

Dated:    August 16, 2018          Respectfully submitted,


/s/ *Ronald A. Marron*
    RONALD A. MARRON

**LAW OFFICES OF RONALD A.
MARRON, APLC**
RONALD A. MARRON
MICHAEL HOUCHIN
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*

-25-

2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiff and the Proposed
Class***