**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

CRYSTAL HILSLEY, on behalf of herself, all others similarly situated,

Plaintiff,

v.

OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE, LLC; and Doe Defendants 1 through 5, inclusive,

Defendants.

CASE NO.: 3:17-CV-2335-GPC-MDD

**CLASS ACTION**

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND TO APPOINT CLASS COUNSEL**

Date: October 12, 2018
Time: 1:30 p.m.
Ctrm: 2D
Judge: Hon. Gonzalo P. Curiel

**TABLE OF CONTENTS**


I. ARGUMENT ..... 1

1. Ocean Spray cites no authority for its argument that synthetic malic and fumaric acids "are not flavors" ..... 1
2. Ocean Spray's factual contentions support commonality and predominance ..... 2
3. Plaintiff satisfies all of Rule 23's criteria for adequacy ..... 2
4. Plaintiff is typical of the Class ..... 4
5. When defense counsel instructs the deponent to read a Complaint's inadvertent one-word drafting error aloud, that does not constitute "knowing false testimony" ..... 5
6. Plaintiff's damages model and survey methodology are valid under *Comcast* ..... 6
7. Ocean Spray is confused about the ingredients in its "100% Apple Juice" ..... 9
8. Ocean Spray's transparent attempt to shift the blame for its failure to pursue discovery ..... 9
9. Plaintiff has standing to pursue injunctive relief, and certification under Rule 23(b)(2) is proper ..... 10

II. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 2

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014) .......... 2

*Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .......... 2

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314 (11th Cir. 2008) .......... 4

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......... 8

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .......... 10

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .......... 5

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .......... 8

*Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927 (7th Cir. 1972) .......... 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 3, 4

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .......... 4

*Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900 (N.D. Cal. Mar. 31, 2011) .......... 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2013 WL 5429718 (N.D. Cal. 2013) ... 9

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ... 6, 7

*Jim Ball Pontiac–Buick–GMC, Inc. v. DHL Express (USA), Inc.*,
2011 WL 815209 (W.D.N.Y. Mar. 2, 2011) ... 4

*Kennedy v. United Healthcare of Ohio, Inc.*,
206 F.R.D. 191 (S.D. Ohio 2002) ... 3

*Krueger v. Wyeth, Inc.*,
310 F.R.D. 468 (S.D. Cal. 2015) ... 9

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ... 8

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ... 6

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ... 4

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
823 F.3d 948 (9th Cir., 2016) ... 6

*Rodman v. Safeway, Inc.*,
2014 WL 988992 (N.D. Cal. 2014) ... 2

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ... 4

*Stuart v. Radioshack Corp*,
2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ... 3

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ... 7

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 2
*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) .......... 6, 8
*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 4
*Zaklit v. Nationstar Mortg. LLC*,
2017 WL 3174901 (C.D. Cal. July 24, 2017) .......... 3

**Rules**

Fed. R. Civ. P. 23 .......... 1
Fed. R. Civ. P. 23(a)(2) .......... 2
Fed. R. Civ. P. 23(a)(3) .......... 4
Fed. R. Civ. P. 23(a)(4) .......... 2, 3
Fed. R. Civ. P. 23(b)(2) .......... 10

**Regulations**

21 CFR § 101.22 .......... 6
21 CFR § 101.22(i)(1) .......... 7
21 CFR 184.1069(c) .......... 1

# I. ARGUMENT

1. Ocean Spray cites no authority for its argument that synthetic malic and fumaric acids "are not flavors"

Ocean Spray contends that malic acid and fumaric acid "are not flavors" and that this factual contention precludes both commonality and predominance. *See* Dkt. No. 30 ("Opp'n") at 2-3. Aside from the legal untenability of this argument, Ocean Spray's sole support for this premise is a declaration from an employee which does not include a single citation, authority, reference, or other supporting source. *See* Declaration of Erich Fritz in Opposition to Plaintiff's Motion for Class Certification ("Fritz Decl."), Dkt. No. 30-1.

Ocean Spray's factual premise is simply false.[1] The FDA classifies malic acid as a "flavoring agent." *See* 21 CFR 184.1069(c). Plaintiff's expert, Dr. Laszlo Somogyi, has also opined that the malic acid and fumaric acid in the Products functions as a flavoring ingredient. *See* Declaration of Dr. Laszlo Somogyi, Ph.D. in Support of Plaintiff's Motion for Class Certification filed concurrently herewith ("Somogyi Decl."), ¶¶ 38-41. "In determining whether class certification is appropriate, the question is not whether . . . [plaintiff] will prevail on the merits, but rather, whether the requirements of Rule 23 are met." *Hofstetter v. Chase Home Fin., LLC*, No. C10-01313 WHA, 2011 WL 1225900, at *6 (N.D. Cal. Mar. 31, 2011). Whether malic acid and fumaric acid in the Products functions as artificial flavoring ingredients is a common contention that is capable of classwide resolution. Plaintiff will further address Ocean Spray's merits-based arguments in her opposition to Ocean Spray's Summary Judgment Motion.

---

[1] The list of authorities disagreeing with Ocean Spray's thesis includes: the U.S. FDA, the U.S. Department of Agriculture, the Flavor and Extract Manufacturers Association, the Institute of Food Technology, and the manufacturers and suppliers of the chemicals themselves. The Flavor and Extract Manufacturers Association lists both compounds as "flavoring ingredients" as does the Institute of Food Technology. Chemical suppliers and food industry scientists describe the flavor of malic acid, which is named for 'malum', the Latin word for apple, as having a "green apple" character and a "[m]ellow, smooth, persistent sourness reminiscent of fruit." *See* Declaration of Ronald A. Marron in Support of Plaintiff's Motion for Class Certification filed concurrently herewith ("Marron Decl."), ¶¶ 2-5 & Exs. 1-4.

2. Ocean Spray's factual contentions support commonality and predominance

Because whether malic and fumaric acids function as flavorings in the Products is an issue susceptible to common proof which can be decided uniformly for all members of the class, this issue in fact supports both commonality and the more stringent predominance requirement. Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). *See, e.g.*, *Rodman v. Safeway, Inc.*, 2014 WL 988992, at *4 (N.D. Cal. 2014) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance criterion is met where common questions present "a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014) (internal punctuation omitted). As a "common contention" that is "capable of classwide resolution," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), the question of whether the synthetic acids function as flavors in the Products supports rather than precludes the finding of both commonality and predominance. *Id*.

Ocean Spray also argues against commonality on the basis that the products Plaintiff purchased do not all contain the same ingredients as other of the products in the Class definition. Ocean Spray argues that the "common issue is not common to all of the products[.]" Opp'n at 4:4-11. Rule 23 does not require uniformity among the products in a class action, only a common showing of factual or legal issues among class members. Fed. R. Civ. P. 23(a)(2). Here, each of the Ocean Spray Products "are all just different flavors or varieties of the purchased products" and the Court should find that they are "substantially similar." *See Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *9 n. 5 (N.D. Cal. Sept. 23, 2013).

3. Plaintiff satisfies all of Rule 23's criteria for adequacy

Ocean Spray also challenges Plaintiff's adequacy as a class representative under Fed. R. Civ. P. 23(a)(4). That challenge consists principally of speculative personal attacks against Ms. Hilsley and her counsel. *See* Opp'n 6-12. Ocean Spray's *ad hominem* attacks are not only factually incorrect, they are also misplaced. Even if Ocean Spray's

accusations were truthful, which they are not, these arguments would not address Plaintiff's adequacy as a class representative. Under Fed. R. Civ. P. 23(a)(4), "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff has demonstrated that she and her counsel satisfy both these criteria. A named representative is adequate if she understands the alleged violations, the underlying legal basis of the action, or the "gist of the suit." *Stuart v. Radioshack Corp*, 2009 WL 281941, at *11 (N.D. Cal. Feb. 5, 2009) (collecting cases) (finding a class representative who was resident in Florida adequate where she sat for a lengthy deposition, understood the 'gravamen of the claim', and submitted a declaration stating she would "do everything in her ability to attend trial" in California.) (Compare Declaration of Crystal Hilsley in Support of Plaintiff's Motion for Class Certification ("Hilsley Decl."), Dkt. No. 23-19 at ¶¶ 9-11). Plaintiff is clearly familiar with the underlying legal claims asserted in this case and the "gist of the suit," has stayed informed about its status and has assisted with its prosecution including sitting for a lengthy deposition. Hilsley Decl., ¶¶ 9-11. Ocean Spray does not suggest that Plaintiff or her counsel possess any interests that actually conflict with those of the proposed Class. *See* Def.s' Opp'n at 6-12; Hilsley Decl., ¶¶ 4-8).

Ocean Spray also claims without factual support that Plaintiff was "recruited" as lead plaintiff. Even if the Firms had recruited the plaintiff (they did not) that fact would have no bearing on the adequacy inquiry when ruling on a motion for class certification. *Zaklit v. Nationstar Mortg. LLC*, No. 515CV2190CASKKX, 2017 WL 3174901, at *14 (C.D. Cal. July 24, 2017) ("Even assuming that plaintiffs were solicited by counsel, that does not undermine a finding of adequacy. There is nothing inherently improper with the recruitment of class representatives."); *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 197 (S.D. Ohio 2002) (". . . there is nothing per se improper about counsel

soliciting participation of potential class members."); *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1324 (11th Cir. 2008); *Halverson v. Convenient Food Mart, Inc.*, 458 F.2d 927, 932 (7th Cir. 1972); *Jim Ball Pontiac–Buick–GMC, Inc. v. DHL Express (USA), Inc.*, No. 08–CV–761C, 2011 WL 815209, at *5 (W.D.N.Y. Mar. 2, 2011) (noting that defendants had argued "that counsel solicited plaintiff to be the class representative," and holding that "the class is [nonetheless] adequately represented by plaintiff's counsel"). Plaintiff thus fulfills Rule 23's requirements for adequacy.

4. Plaintiff is typical of the Class

Ocean Spray also argues that Ms. Hilsley's interest in and avocation related to healthy eating for children including her daughter make her "not typical" of the proposed Class. Opp'n at 4:22-6:18. Ocean Spray misapprehends the typicality requirement. Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Ocean Spray's unsupported (and false) speculation about Ms. Hilsley's outside interest in healthy foods, or her preferences regarding dairy products, for that matter, Opp'n at 6:7-10, do not defeat typicality. 'Typicality' focuses on defendants' conduct and plaintiff's legal theory, *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (emphasis added), not on the proposed class representative's expertise or outside interests. A proposed class representative's claims are typical of class members' claims when "they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014). Here, Ocean Spray cannot credibly argue that Plaintiff does not fulfill this criterion. (Compl ¶ 42; Marron Decl., ¶¶ 2-4 & Exs. 1-3). Ocean Spray fails to identify a single unique defense that Ms. Hilsley could be subject to,

speculating instead only that she "most certainly would be." Opp'n at 6:15. Ocean Spray cites to *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011), in support. *Ellis* was an employment discrimination case in which the court found that the defendant employer could have specific factual defenses unique to each named class representative, based on the employer's conduct and the named representative's employment status or job performance. *Id*. *Ellis* is inapposite here, where Plaintiff's purchases are the same as those of absent class members and there are no defenses based on Ocean Spray's conduct that are unique to her. *See id*.

5. When defense counsel instructs the deponent to read a Complaint's inadvertent one-word drafting error aloud, that does not constitute "knowing false testimony"

Defendant devotes two pages of its Opposition to accusing Ms. Hilsley of providing "knowing false testimony" and Hilsley's counsel of "allowing" it. Opp'n 9-11 *passim*, 11:5-6. Ocean Spray bases these accusations on a one-word drafting error in background material in the Complaint, mis-identifying a corporate relationship in the attribution of a quote from a non-party company's executive. Compl., ¶ 68. In quoting another beverage company's CEO regarding consumer preferences for natural products, the Complaint identified Pepsico as Ocean Spray's "parent" company instead of "partner."[2] *Id*. Ocean Spray's counsel instructed Ms. Hilsley in her deposition to read the text in the Complaint that included the inadvertent drafting error and she did so. *See* Declaration of Rick L. Shackelford in Support in Opposition to Plaintiff's Motion for Class Certification ("Shackelford Decl."), Dkt. No. 30-2 at ¶ 15. Ocean Spray now describes this bit of theater as Plaintiff providing "knowing false testimony" and "false embellishments" [sic] in which, Ocean Spray accuses, her counsel was complicit. Opp'n at 11:5-6. This is absurd. Plaintiff did not "knowingly give false testimony"; at the deposing counsel's request she recited text from her Complaint that included an inconsequential drafting error. This attack on Plaintiff and her counsel is preposterous.

[2] "Pepsi – Ocean Spray Alliance Gets Juicier"; https://www.adweek.com/brand-marketing/pepsi-ocean-spray-alliance-gets-juicier-106572/; last visited September 21, 2018. (Marron Decl., ¶ 6 & Ex. 5).

6. Plaintiff's damages model and survey methodology are valid under *Comcast*

Ocean Spray also contests the consumer survey used to provide price-sensitivity data for Plaintiff's price-premium damages model. Opp'n at 17-22. Price premium damages models are well-accepted by courts in the Ninth Circuit. *See, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1025 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). Ocean Spray does not object to the use of a price premium model but challenges Plaintiff's consumer survey methodology, chiefly with imagined hypothetical questions Defendant insists the survey should have asked but did not. Opp'n at 17-22.

All of these hypotheticals misapprehend the purpose of the consumer survey. For example, Ocean Spray complains that the consumer survey asked "no questions whatsoever about malic or fumaric acid." Opp'n at 16:24-25. It was not the survey's purpose and was entirely unnecessary for the survey to inquire into this. Under Federal and California law, consumers are not required to display detailed chemical knowledge about a product's ingredients but rather are entitled to rely on the manufacturer's compliance with Federal and state labeling laws, which Defendant is alleged to have violated here. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). Deceptive labeling is "judged by the effect it would have on a reasonable consumer," who is the "ordinary consumer within the target population," *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-507, 510 (2003), not a sophisticated food chemist who might have prior knowledge about malic or fumaric acid. *See also Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 964-65 (9th Cir., 2016).

Ocean Spray poses the similarly irrelevant question, "whether anyone thought [malic or fumaric acid] was a flavor or what the flavor was." Opp'n at 16: 25. This is both factually and legally irrelevant, as whether a consumer *thinks* a chemical is a flavor is not one of the criteria in FDA's regulatory definition of artificial flavoring. *See*, 21 CFR § 101.22. And under California consumer protection laws, the court is not required to investigate class members' "individual interaction with the product." *Tait v. BSH Home*

*Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012).

Ocean Spray in its Opposition inexplicably gives the appearance of being unfamiliar with FDA's labeling regulations. Ocean Spray complains that front-label disclosure text on the example product shown in the survey was "giant" and "shockingly large," and that the survey results were "skewed" thereby. Opp'n at 21:3-11. But the text in question was reproduced in the survey image at the FDA-required minimum font size. 21 CFR § 101.22(i)(1) ("one-half the height of the letters used in the name of the food"). Ocean Spray calls Dr. Belch's use of FDA-compliant label text in his survey questions a "misleading trick." Opp'n at 21:10. Ocean Spray further claims Dr. Belch made a "critical mistake," when it was Defendant who misunderstands FDA labeling regulations.[3]

Ocean Spray further speculates about imagined extreme extrapolations that survey-takers *might* make from the survey's simple questions. Opp'n at 20:2-8; 20-24. Defendant's objections are all either baseless pot-shots, inapposite speculation, or demand irrelevant additional information unrelated to the purposes of the survey, which was to determine consumers' perceived price premium for an Ocean Spray juice product that was allegedly improperly labeled as containing "No Artificial Flavorings" when it in fact (allegedly) contained artificial flavorings. This is the question Plaintiff's consumer survey was intended to answer and did answer. The survey followed generally accepted principles for surveys used as evidence in litigation. *See* Declaration of Dr. George E. Belch in Support of Plaintiff's Motion for Class Certification ("Belch Decl."), Dkt. No. 23-20 at ¶¶ 10-18. The survey found that there was a price premium representative consumers of Ocean Spray juice products would pay for a naturally-flavored Ocean Spray juice product compared to an artificially-flavored one. *See* Belch Decl., ¶¶ 10-38. Consumer survey evidence is a reliable method of calculating classwide damages under the price premium model, *In re ConAgra Foods, Inc.*, 90 F.Supp.3d at 1026, and Dr. Belch, who has over 30 years of experience in product pricing, market analysis, and

[3] Ocean Spray also confuses the neutral control product in the survey with the test product. Opp'n at 21:1-5. This product is simply a placeholder; its characteristics are not relevant to the data elicited by the survey.

consumer research, has been qualified as an expert in this field by numerous courts. *See* Belch Decl., ¶¶ 1-5 & Ex. 5. Plaintiff further validated and cross-checked this consumer survey finding with an additional market-survey methodology applied by Dr. Goedde. Dkt. No. 23-1 at 19:8-23. Ocean Spray quibbles that Dr. Goedde's survey examined competing product prices in 2018 rather than in 2016. Opp'n at 23:19-21. This is another red herring. If the Class is certified the Class period will include products purchased in 2018 so those prices are fully relevant and the Products' pricing over time can be interpolated from sales data throughout the class period.

Ocean Spray also complains that the survey did not reproduce the *back*-panel package label as well as the front-panel label so that survey-takers could compare the two. But California law has already spoken to this issue. *See Williams*, 552 F.3d at 939 ("reasonable consumers should not be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Ocean Spray's objections are unavailing, as none go to the purpose or validity of the survey. Both Plaintiff's consumer survey and market survey methodologies are valid and both produced usable data for Plaintiff's damages model. Ocean Spray cites to *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 328 (2011) and to *Freeman v. Time, Inc*., 68 F.3d 285, 290 (9th Cir. 1995), without detailed explanation. In *Freeman* the plaintiff argued unavailingly that an unwary consumer could be deceived by a "*You may already have won*!" sweepstakes mailer into believing he or she could simply claim the prize. *Id*. *Kwikset* is informative here, but not for the purpose Ocean Spray hopes. The court in *Kwikset* found that a "Made in USA" product label which was alleged to be false could influence consumers' buying decision because "labels matter." *Kwikset*, 51 Cal. 4th at 328. Similarly, Plaintiff here alleges that a "No artificial flavors" label declaration can influence consumers' purchase decisions. Ocean Spray also cites to *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426 (2013). Opp'n at 17:19. *Comcast's* criticism of a proposed damages model, however, "has no application" where plaintiffs assert "only one theory of [] liability and impact." *See In re Cathode Ray Tube*

*(CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. 2013). "Unlike the situation in *Comcast*, there is no possibility in this case that damages could be attributed to defendants' acts that are **not** challenged on a class-wide basis because all members of the current class attribute their damages" to the same deceptive practice. *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 482 (S.D. Cal. 2015) (emphasis in original). As in *Krueger*, Defendant's *Comcast* objection here has no basis in law.

7. Ocean Spray is confused about the ingredients in its "100% Apple Juice"[4]

Ocean Spray states as an unopposed fact that its "100% Apple Juice" product contains no malic acid. Opp'n at 4:1-5. Ocean Spray's website states otherwise.[5] The ingredients listed for Defendant's "100% Apple Juice" on Defendant's website are: "Apple Juice from concentrate, natural flavors, malic acid, ascorbic acid." *Id*. Defendant's supposed unopposed fact appears to be incorrect as its "100% Apple Juice" product contains or contained malic acid at some time within the Class period.

8. Ocean Spray's transparent attempt to shift the blame for its failure to pursue discovery

Ocean Spray complains that Ms. Hilsley "refused" to respond to discovery requests or appear for deposition. Opp'n at 7-9. This is a transparent attempt to shift the blame for Ocean Spray's laxity and failure to follow through on its discovery obligations under the Federal Rules. Plaintiff timely interposed objections to Defendant's discovery, both the interrogatories and document requests. *See* Shackelford Decl., ¶¶ 5-8. The next step under the Federal Rules was for Ocean Spray to file a motion to compel. Instead, Ocean Spray slept on its discovery rights and failed to take the actions prescribed under the Federal

[4] Plaintiff believes after additional research that a historical ingredient list obtained for Cranberry Juice Cocktail is likely incorrect and the product does not contain malic acid as previously thought. Accordingly, when the Court addresses the list of products to be included in the Class definition Plaintiff will not oppose deletion of the Cranberry Juice Cocktail and will propose replacing it instead with Defendant's Cran Raspberry juice product which does contain the ingredient.

[5] https://www.oceanspray.com/Products/Juices-and-Drinks/By-Type/On-the-Go/Single-Serve-100-Apple-Juice, "Nutrition Facts"; see, also, https://www.fredmeyer.com/p/ocean-spray-100-apple-juice/0001200007175; last visited September 21, 2018. (Marron Decl., ¶¶ 7-8 & Exs. 6-7).

Rules until after the deadline had passed and Ocean Spray had waived those rights under Magistrate Judge Dembin's Chambers Rules. The fault lies with Defendant, not Plaintiff.

9. Plaintiff has standing to pursue injunctive relief, and certification under Rule 23(b)(2) is proper

Ocean Spray misrepresents Plaintiff's testimony regarding future purchases. Opp'n at 25:4-6. Ms. Hilsley did not say she would never buy the Products if they contained malic or fumaric acid, only that she would not buy them if they contained artificial flavors. (Hilsley Decl., ¶ 7-8). Both compounds are found in nature, just not in the forms that Defendant puts in its Products. Plaintiff alleged in her Complaint and testified at her deposition that she would purchase the Products again if the product ingredients conformed to representations made on the labels. Compl., ¶ 90; Opp'n at 23-26. If, in the future, the Products are instead properly labeled to disclose the presence of artificial flavors, members of the Class will be properly informed and can avoid purchasing those Products if they choose. Under Ninth Circuit authority, in either of these cases, Plaintiff has standing to pursue the injunctive relief that she seeks. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-69 (9th Cir. 2018) ["*Davidson II*"] ("a previously deceived consumer['s] . . . inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief."). Injunctive relief is proper to protect Plaintiff and the Class from Ocean Spray's future unlawful conduct and class certification under Rule 23(b)(2) is appropriate.

## II. CONCLUSION

Ocean Spray's Opposition raises no valid argument against class certification. All of the Rule 23 criteria are met. The Court should simply certify the class and designate Plaintiff as class representative and her counsel as class counsel.

Dated: September 21, 2018

Respectfully submitted,

/s/ *Ronald A. Marron*
RONALD A. MARRON

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
MICHAEL HOUCHIN
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiff and the Proposed Class***