1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   CRYSTAL HILSLEY, on behalf of              Case No.:  17cv2335-GPC(MDD)
     herself and all others similarly situated,
12
                                    Plaintiff,    **ORDER DENYING DEFENDANTS'**
13                                                **MOTION FOR SUMMARY**
     v.                                           **JUDGMENT**
14
     OCEAN SPRAY CRANBERRIES, INC.;               **[Dkt. No. 31.]**
15   ARNOLD WORLDWIDE LLC; and
     DOES defendants 1 through 5, inclusive,
16
                                    Defendants.
17

18

19        Before the Court is Defendants' motion for summary judgment.  (Dkt. No. 31.)

20   Plaintiff filed an opposition, and Defendants replied.  (Dkt. Nos. 40, 65.)  Based on a

21   careful review of the briefs, the supporting documents and the applicable law, the Court

22   DENIES Defendants' motion for summary judgment.

23                                   **Background**

24        The action was removed to this Court pursuant to the Class Action Fairness Act on

25   November 16, 2017.  (Dkt. No. 1.)  Plaintiff Crystal Hilsley ("Plaintiff" or "Hilsley")

26   brings a purported consumer class action against Defendants Ocean Spray Cranberries,

27   Inc. and Arnold Worldwide LLC for violations of California consumer protection laws

28   based on misrepresentation of labels on certain Ocean Spray products.  (Dkt. No. 1-2,

1

Compl.) Defendant Ocean Spray Cranberries, Inc. ("Ocean Spray") manufactures, distributes, advertises, markets and sells a variety of juices and juice-based beverage products. Defendant Arnold Worldwide LLC ("Arnold") participates in the labeling and advertising of these products for Ocean Spray. (Id. ¶ 6.) According to Hilsley, the labels on Defendants' juice-based beverage products labeled "Cran-Apple" and "Cran-Grape" states "No . . . artificial flavors." (Dkt. No. 23-19, Hilsley Decl. ¶ 5.) The Cran-Apple juice drink includes fumaric acid and malic acid as ingredients. (Dkt. No. 31-2, Fritz Decl. ¶ 9; Dkt. No. 23-4 at 4[1].) The Cran-Grape juice drink contains fumaric acid. (Dkt. No. 23-6, Marron Decl., Ex. 3 at 8-10.)

According to Hilsley, the Cran-Apple juice drink contains an artificial ingredient called d-l malic acid. (Id. ¶ 6.) "Malic acid is an organic compound with the molecular formula $C_2H_6O_5$. (Dkt. No. 40-19, Dr. Somogyi Decl. ¶ 19.) Natural malic acid, also known as l-malic acid, is found naturally in many fruits and vegetables. (Id. ¶ 21.) Dl-malic acid is a racemic mixture that does not occur naturally but is produced synthetically by "hydration of fumaric acid or maleic acid." (Id. ¶ 22.) The complaint alleges that Ocean Spray uses a synthetic form of fumaric acid to simulate the flavor of grapes in its Cran-Grape product.[2] (Dkt. No. 1-2, Compl. ¶ 56.)

According to Plaintiff's expert, Dr. Somogyi, malic acid is added to foods, beverages and candies to give tart and fruity flavors. (Dkt. No. 40-19, Dr. Somogyi Decl. ¶ 25.) Fumaric acid also simulates, resembles or reinforces certain fruit flavors in beverages and can also affect pH. (Id. ¶ 41.) Fumaric acid combined with malic acid improves the flavor profile of the product. (Id. ¶¶ 25, 41.) According to Ocean Spray's

---

[1] Page numbers are based on the CM/ECF pagination.

[2] Defendants state fumaric acid "is produced from malic acid via the isomerization of maleic anhydride . . . Malic Acid is made by the hydration of fumaric acid." (Dkt. No. 31-1, Ds' P&A at 20 n.9 (citing 21 C.F.R. § 172.350).) Plaintiff's expert does not assert that fumaric acid is produced synthetically but describes fumaric acid as being used to create the synthetically produced dl-malic acid. (Dkt. No. 40-19, Dr. Somoygyi Decl. ¶ 22.) By implication, it appears that Plaintiff is claiming that fumaric acid is synthetically produced.

Vice President ("VP") of research, development, quality and engineering, Ocean Spray uses malic and fumaric acids to control pH and titratable acid levels in their juice products, and are not used as flavors. (Dkt. No. 31-2, Fritz Decl. ¶ 9.)

Plaintiff purchased four Ocean Spray juice drinks: 1) Ocean Spray Cran-Apple; 2) Ocean Spray Cran-Grape; 3) Ocean Spray 100% Apple Juice; and 4) Ocean Spray Cranberry Juice Cocktail. (Dkt. No. 23-19, Hilsley Decl. ¶ 4.) Plaintiff concedes that Ocean Spray Cranberry Juice Cocktail does not contain malic acid or fumaric acid and she is no longer asserting claims as to the Cranberry Juice Cocktail. (Dkt. No. 40-20, P's Response to Ds' SSUF, Nos. 3, 4.) While Plaintiff agrees that the Ocean Spray 100% Apple Juice does not contain fumaric acid, she disputes Defendants' claim that Ocean Spray 100% Apple Juice does not contain malic acid and refers to Ocean Spray's own website where malic acid is an ingredient in the 100% Apple Juice product for the 15.2-ounce bottles. (Id., Nos. 1, 2; Dkt. No. 40-12, Marron Decl., Ex. 10.) According to the labels, the 60-ounce 100% Apple Juice does not contain malic acid while the 15.2-ounce 100% Apple Juice contains malic acid. (Compare Dkt. No. 23-6, Marron Decl., Ex. 3 at 14 with Dkt. No. 40-12, Marron Decl., Ex. 10.) Defendants argue that since Plaintiff purchased the 64-ounce[3] 100% Apple Juice product which does not contain malic acid, her reference to the single-serve bottle is not relevant in this case. The Court disagrees. Neither party has explained the difference in the ingredient labels of the 15.2-ounce and 60-ounce bottle of the same exact product. Accordingly, the Court concludes that this is a disputed issue of fact.

When Plaintiff purchased Defendants' juice products, she read and relied on the products' labels including "No artificial flavors or preservatives" and the fact that the labels failed to state that they contained artificial flavorings. (Dkt. No. 23-19, Hilsley

---

[3] The 100% Apple Juice product, at issue, comes in a 60-ounce bottle, not a 64-ounce bottle. (See Dkt. No. 23-6, Marron Decl., Ex. 3 at 14.)

17cv2335-GPC(MDD)

Decl. ¶ 5.)  Plaintiff would not have purchased the juice products had she known they contained artificial ingredients.  (Id. ¶ 7.)

The complaint alleges that Defendants' product labels stating the products contain "No Artificial Flavors" are false and misleading because their juice products contain artificial flavor ingredients of dl-malic acid and fumaric acid.  (Dkt. No. 1-2, Compl. ¶ 10.)  The complaint also claims that the products' ingredient list violates federal and state law because it incorrectly identifies malic acid as a generic "malic acid" instead of using the correct, specific, non-generic chemical name.  (Id. ¶ 27.)  Plaintiff alleges six causes of action for violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*; violation of the unlawful prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Professions Code section 17200 *et seq*.; violation of the unfair prong of the UCL; violation of California's False Advertising Law, breach of express warranty and breach of implied warranty.  (Id. ¶¶ 115-187.)

**Discussion**

**A.     Legal Standard on Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  Celotex Corp., 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the

4

burden of proof at trial.  Id. at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970). Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party."  Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  Anderson, 477 U.S. at 255.

**B.      Whether Malic and/or Fumaric Acids Function as Flavors**

Defendants move for summary judgment on all six causes of action arguing that malic and fumaric acids do not function as flavors in their juice products but instead are acidulants used to control the pH and titratable acid levels in their juices.  Because each cause of action is dependent on the determination that malic and fumaric acids function as flavors in Defendants' products, they argue that summary judgment should be granted on all causes of action.  Plaintiff responds arguing there are genuine issues of material fact that malic and fumaric acids act as flavors in Defendants' products.

21 C.F.R. § 101.22(a)(1) provides,

The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or

5

fermentation products thereof. Artificial flavor includes the substances listed in §§ 172.515(b) and 182.60 of this chapter except where these are derived from natural sources.

21 C.F.R. § 101.22(a)(1). Artificial flavor is also described as any flavor "which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(2).

Defendants first argue that malic and fumaric acids are not artificial flavors because they are not listed by the FDA as an artificial flavor as provided under 21 C.F.R. §§ 172.515(b) and 182.60. Plaintiff disagrees.

Malic and fumaric acids are not listed on the list of artificial flavors promulgated by the FDA. See 21 C.F.R. §§ 172.515(b) and 182.60. However, the lists are not exhaustive. See Allred v. Frito-Lay N. America, Inc., Case No. 17cv1345-JLS-BGS, 2018 WL 1185227, at *4 (S.D. Cal. Mar. 7, 2018) (interpreting statutory language "[a]rtificial flavor *includes* the substances listed in §§ 172.515(b) and 182.60" to be not exhaustive (emphasis added)); Engurasoff v. Coca-Cola Co., No. C 13-3990 JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) ("absence of phosphoric acid on these lists does not mean that the FDA has made a finding that phosphoric acid is not an artificial flavor"). Therefore, simply because malic and fumaric acids are not on the FDA lists does not mean that the FDA has determined they are not artificial flavors.

Next, Defendants argue that malic acid and fumaric acid in their juice products are used to control pH levels and levels of titratable acid. In contrast, Plaintiff asserts that malic and fumaric acids are used to impart a tart, fruity flavor in Defendants' juice products.

The regulations provide that malic acid can be used "as *a flavor enhancer* as defined in § 170.3(o)(11) of this chapter, *flavoring agent and adjuvant* as defined in § 170.3(o)(12) of this chapter, and *pH control agent* as defined in § 170.3(o)(23) of this chapter." 21 C.F.R. § 184.1069(c) (emphasis added). "Flavor enhancers" are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. §

6

170.3(o)(11); see Viggianov v. Hansen Natural Corp., 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013) (finding sucralose and ace-k are not "flavors" because they do not give the product an original taste, but "sweeten or amplify whatever characterizing flavor it has from another source."). "Flavoring agents and adjuvants" are "[s]ubstances added to impart or help impart a taste or aroma in food." 21 C.F.R. § 170.3(o)(12). pH control agents are "[s]ubstances added to change or maintain active acidity or basicity, including buffers, acids, alkalies, and neutralizing agents." 21 C.F.R. § 17.03(o)(23).

In support of their argument that malic and fumaric acids do not act as flavors in their juice products, Defendants rely solely on the declaration of Erich Fritz, the VP of research, development, quality and engineering at Ocean Spray. (Dkt. No. 31-2, Fritz Decl.) According to Fritz, there are two basic flavor components in each product: (i) the juice or juices used in the product; and (ii) natural flavors. (Id. ¶ 4.) Ocean Spray purchases natural flavors from flavor houses, who certify, pursuant to 21 C.F.R. § 101.22, that the flavors they provide to Ocean Spray are natural, contain no artificial flavor and that no artificial flavors have been added. (Id.) These natural flavors are included as part of what Ocean Spray calls its "bev base," which are proprietary blends of natural flavors that have been developed to complement the juices in order to deliver the overall flavor profile Ocean Spray desires in any given product. (Id.) The Cran-Apple's "bev base" contains the only ingredients that impart flavor to the product which includes water, sugar, cranberry juice (from concentrate) and apple juice (from concentrate). (Id. ¶ 8.)

Ocean Spray also adds other ingredients to the solution to achieve the specified pH level of 3.9 and to fine tune the solution for titratable acid before the end product is bottled. (Id. ¶ 9.) These ingredients are fumaric acid, sodium citrate and malic acid. (Id.) Ocean Spray uses different acids because of their different properties and it has created blending formulas and technologies to produce delicious juice and juice drink products consumers have come to expect from Ocean Spray. (Id. ¶ 10.) Ocean Spray's goal is to produce end products that are indistinguishable to the consumer no matter where they were produced or when they were made. (Id.) All juice products contain

some amount of juice and the juice is part of the flavor profile in each product and Ocean Spray does not make juice products that do not contain juices and instead derive their flavor profiles from artificial flavors. (Id.)

The ingredient list for Cran-Apple lists fumaric acid ahead of malic acid, because there is more fumaric acid, by weight, in the formula.[4] (Id. ¶ 11.) Ingredients are listed in descending order of predominance by weight. (Id.) Fumaric acid is listed after "natural flavor," meaning that there is more natural flavor, by weight, than fumaric acid. (Id.) Malic acid is listed even further down the list, meaning that there is less malic acid in the product than fumaric acid. (Id.)

The amount of fumaric acid is set by formula so the same amount goes into each batch. (Id. ¶ 12.) However, the amount of malic acid can vary and is used to "fine tune" the titratable acid in the end product before it is bottled. (Id.)

One of the specifications is final pH and compliance with that specification is analytically determined by measuring the pH level and not by taste, smell, or any sensory attribute. (Id. ¶ 13.) Both malic and fumaric acids are essentially odorless and have no distinctive flavor, which again sets them distinctly apart from other ingredients added for flavor. (Id. ¶ 14.) However, at some level, a consumer could perceive a difference if there was more acidulants than in a sample with less acidulants. (Id.) A consumer could describe that sensory difference as a difference in "taste," but the flavor components would be unchanged between the two samples. Fritz asserts that "flavors" (as defined by regulation) and "taste" (a subjective sensory perception) are not the same thing. (Id.) In all cases, the pH level as well as the level of titratable acid is determined by an analytical test, not a sensory test. (Id. ¶ 15.)

---

[4] The ingredients for the Cran-Apple juice drink lists ingredients as follows: "Filtered Water, Sugar, Cranberry Juice (Water, Cranberry Juice Concentrate), Apple Juice (Water, Apple Juice Concentrate), Natural Flavor, Fumaric Acid, Sodium Citrate, Malic Acid, Ascorbic Acid (Vitamin C), Vegetable Concentrate for Color." (Dkt. No. 23-23.)

17cv2335-GPC(MDD)

Adding in "too much" malic acid would not change the flavor of the formula, because malic acid is not a flavor but adding in too much malic acid in a formula at some point would create a perceptible difference in mouth feel of the product, because the pH would be altered from the level called for in the specification, and thus would be perceived by Ocean Spray's quality control personnel as out of specification. (Id. ¶ 16.)

Therefore, Fritz asserts it is theoretically possible to add too much malic acid or fumaric acid into a solution that the acidity would overwhelm the actual juices and natural flavors in the solution, and, in that sense, the solution could be said to be "flavored" by the malic or fumaric acid. (Id. ¶ 17.) But such a product would be unpalatable, and never be allowed to leave the production facility and a consumer drinking it would immediately perceive the taste as being something very different from what she expected from an Ocean Spray product. (Id.)

In response, Plaintiff presents the expert declaration of Dr. Laszlo D. Somogyi, Ph.D. (Dkt. No. 40-19, Dr. Somogyi Decl.) Dr. Somogyi is a food scientist with extensive experience in food technology research and food product development. (Id. ¶ 10.) He reviewed "laboratory test results regarding the presence of synthetic d-malic acid isomer in the Ocean Spray Cran-Apple juice beverage." (Id. ¶ 7.)

According to Dr. Somogyi, malic acid can be used by itself or blended with other acids to produce a number of unique and distinct flavor properties. (Id. ¶ 25.) Malic acid is added to foods, beverages and candies to give them a tart taste, and some fruit juice and carbonated beverages rely on malic acid as a flavoring agent. (Id.) Malic acid is used to simulate, resemble, or reinforce certain flavors, or enhance flavors in processed foods and beverages that lose some of their natural flavoring during the processing. (Id.) For flavors with astringency (such as cranberry juice) use of fumaric acid in combination with malic acid improves the flavor profile of the product. (Id.) Dr. Somogyi acknowledges that dl-malic acid can be used as a flavoring agent and adjuvant, a flavor enhancer and pH control agent in beverages, confectionaries, fruit preparations and preserves, desserts and bakery products. (Id. ¶¶ 26-31.)

9

Dr. Somogyi asserts that the Cran-Apple juice drink includes apple and cranberry juice as well as a significant amount of natural l-malic acid (>1%) and other acidulants, such as citric, fumaric, tartaric and ascorbic acid. (Dkt. No. 40-19, Dr. Somogyi Decl. ¶ 33.) The Cran-Apple juice drink also contains commercial dl-malic acid and is in a lesser quantity as it is listed near the bottom of the ingredient list. (Id. ¶ 34.) According to the laboratory analysis of the Cran-Apple juice drink, there was only a small quantity of dl-malic acid at 0.014g/100ml. (Dkt. No. 40-19, Dr. Somogyi Decl. ¶ 38; Dkt. No. 31-4, Shackleford Decl., Ex. 5 at 88.) Because there is only a small quantity of synthetic malic acid in the Cran-Apple juice drink, Dr. Somogyi opines it would not significantly lower the pH of the juice drink but instead would function as a flavor and flavor enhancer. (Id. ¶ 38.) "Dl-malic acid adds tartness, astringency, and a fruit-like flavor profile to foods and simulates, resembles, or reinforces various tart, fruity flavors, and in particular the flavors of apples." (Id. ¶ 39.) Dr. Somogyi concludes that dl-malic acid is added to the Cran-Apple juice drink and other products to function as a flavoring agent. (Id. ¶ 40.) He also opines that fumaric acid similarly functions as a flavoring agent to reinforce certain fruit flavors as well as affect pH. With astringent flavors like cranberry juice, the use of fumaric acid along with malic acid "can improve the flavor profile of the product." (Id. ¶ 41.)

The parties acknowledge that malic acid can be used as a "flavor enhancer", a "flavoring agent and adjuvant" and as a "pH control agent." See 21 C.F.R. § 184.1069(c). Defendants admit that a determination on whether malic acid acts as an "artificial flavor" in a product depends on the manufacturer's use of it. (Dkt. No. 31-1 at 20.) Defendants claims that malic acid and fumaric acid, as used in their products, achieve a specified pH level and fine tunes the solution for titratable acid. (Dkt. No. 31-2, Fritz Decl. ¶¶ 9, 12, 13.) Plaintiff raises an issue of material fact by presenting evidence that Defendants use malic and fumaric acid as a flavor. This is based on the trace amounts of malic acid in the Cran-Apple juice drink. (Dkt. No. 40-19, Dr. Somagyi Decl. ¶ 38.) Dr. Somagyi explains that a small amount of dl-malic acid, 0.014g/100 ml in

10

the Cran-Apple juice drink, would not affect the pH levels of the drink but instead would function as a flavor or flavor enhancer. (Id.)

Next, while Defendants assert that malic and fumaric acids are odorless and have no distinctive flavor, (Dkt. No. 31-2, Fritz Decl. ¶ 14), Dr. Somagyi raises an issue of fact by asserting that malic and fumaric acids are used to improve the flavor profile of the product and dl-malic acid adds tartness, astringency and a fruit-like flavor profile to foods. (Dkt. No. 40-19, Dr. Somogyi Decl. ¶¶ 25, 39.)

Finally, Plaintiff points out that Defendants make a distinction between "taste" and "flavor" without any legal or factual support. As noted by Plaintiff, the FDA does not make such a distinction. 21 C.F.R. § 101.22(a)(1). Moreover, Plaintiff presents Ocean Spray's own technical reference document as to l-malic acid,[5] the natural form of malic acid, where the specification for "Flavor Profile" is described as having a "[s]trong[] acidic taste." (Dkt. No. 71-4, Marron Decl., Ex. 13 at 2 (UNDER SEAL).) The use of "taste" and "flavor profile" to describe l-malic acid in Ocean Spray's own documents challenges Defendants' assertion that taste and flavor are distinct.

Based on the competing declarations, the Court concludes that there is a material issue of disputed fact whether malic acid and fumaric acid function as flavors in Defendants' juice products.[6] Thus, the Court DENIES Defendants' motion for summary judgment.[7]

---

[5] The Court notes that Ocean Spray's technical document concerns l-malic acid, the natural form of malic acid. It is not clear whether l-malic acid and dl-malic acid function in the same manner in Defendants' products. In his declaration, Fritz references "malic acid" and does not indicate whether there is any difference between l-malic acid and dl-malic acid and whether they are both used as acidulants in Ocean Spray's juice products.

[6] Plaintiff also relies on journal articles to support her argument that titratable acidity is a "surrogate for a tart acid flavor" (Dkt. No. 40 at 16, 21); however, the Court, as discussed below, excludes these journal articles as inadmissible hearsay. Thus, the Court declines to consider her argument concerning titratable acidity as unsupported by evidence.

[7] In a footnote, Defendants propose that the Court is within its prerogative to dismiss the case under the doctrine of primary jurisdiction in order to allow the FDA to interpret its regulations concerning whether malic acid is a flavor and whether labels must distinguish between l-malic acid and dl-malic acid. (Dkt. No. 31-1 at 11 n.4.) "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

17cv2335-GPC(MDD)

## C.    Additional Arguments

In their motion, Defendants preemptively present arguments that Plaintiff may raise; however, it is not clear whether they move for summary judgment on these issues as they provide cursory arguments.  Nonetheless, because both parties address them, the Court also considers the preemptive arguments.

Defendants argue malic acid, as stated in the regulations, is the common and usual name that is properly placed on their labels' ingredient list.  Plaintiff opposes arguing that the regulations also provide that the name of an ingredient must be a specific name and not a collective or generic name.  She argues that malic acid is the common or generic name for the group of compounds consisting of l-malic, d-malic and dl-malic acid and specific names exist for each.  Therefore, the failure to list dl-malic acid in its ingredient list violates 21 C.F.R. § 101.4(b).

The FDA regulations state that ingredients "shall be listed by common or usual name."  21 C.F.R. §§ 101.4(a)(1).  It also provides that "[t]he name of the ingredient shall be a specific name and not a collective (generic) name, except that: (1) Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of § 101.22."  21 C.F.R. § 101.4(b).  The regulations provide that the "malic acid" is the common name for "1–hydroxy–1, 2–ethanedicarboxylic acid."  21 C.F.R. § 184.1069(a).  The regulation then identifies the two types of malic acid: L-malic acid, which "occurs naturally in various foods" and racemic DL-malic acid, which "does not occur naturally" and "is made commercially by hydration of fumaric acid or maleic acid."  Id.

If the ingredient is a flavoring, the provisions of 21 C.F.R. § 101.22 apply.  See 21 C.F.R. § 101.4(b).  21 C.F.R. § 101.22 provides that

---

complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency. . . and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency."  Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  Here, Defendants do not specifically move to stay or dismiss based on primary jurisdiction and have also failed to identify that this issue is currently pending before the FDA.  Accordingly, the Court disregards Defendants' comments on primary jurisdiction.

17cv2335-GPC(MDD)

(c) A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

21 C.F.R. § 101.22(c). "The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be." 21 C.F.R. § 101.22(h).

While 21 C.F.R. § 101.4(a) requires that ingredients "shall be listed by common or usual name" on the label, and the name shall be a "specific name and not a collective (generic) name", the regulations provide for exceptions for labeling flavorings under § 101.22. See 21 C.F.R. §§ 101.4(a) & (b)(1). § 101.22 states that an artificial flavor may be labeled as "artificial flavor" in the ingredient list.

Therefore, whether Defendants failed to comply with federal labeling laws is dependent on whether malic and fumaric acids function as flavors in Defendants' juice products. At this stage, since there is a genuine issue of material fact whether malic acid and fumaric acid are flavors, there remains an issue as to how those specific ingredients must be labeled. Accordingly, the Court rejects Defendants' argument as premature.[8]

**D. Defendants' Request for Judicial Notice**

Defendants filed a Request for Judicial Notice of two court orders from the Southern District of California denying motions to dismiss in <u>Allred v. Kellogg Co</u>., No.

---

[8] Defendants present two other preemptive challenges that Plaintiff will make and argue they are irrelevant based on their position that malic and fumaric acids are not used as flavors in their products. They argue that Plaintiff will raise an issue that malic and fumaric acids are made in manufacturing facilities which they claim is irrelevant and Plaintiff will raise the "reasonable consumer" standard which is also irrelevant because the use of malic and fumaric acids are legal issues defined by the federal regulations. Plaintiff opposes arguing that because malic and fumaric acids are artificial flavors, these issues are relevant. Based on the Court's conclusion that there is a disputed issue of fact whether fumaric and malic acids act as flavors in Defendants' products, their preemptive arguments are not persuasive to support summary judgment.

13

17-cv-1354-AJB, Dkt. No. 20, Order Denying Defendant's Motion to Dismiss (Feb. 23, 2018); and Allred v. Frito-Lay North Am., Inc., No. 17-cv-1345-JLS, (Dkt. No. 26), Order Denying Defendants' Motion to Dismiss (Mar. 7, 2018). Plaintiff did not file an opposition. Court filings are subject to judicial notice. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 767 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record). Accordingly, the Court GRANTS Defendants' request for judicial notice.

**E.    Evidentiary Objections**

Plaintiff filed evidentiary objections to certain paragraphs of Fritz' declaration. (Dkt. No. 40-21.) Defendants did not file a response. The Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider it.

Defendants also filed evidentiary objections to Plaintiff's evidence in support of her opposition. (Dkt. No. 65-1.) Plaintiff did not file a response. Defendants object to the declaration of Plaintiff's expert Dr. Somogyi and the attached newspaper and journal articles to Marron's declaration.

As to Dr. Somogyi's declaration, Defendants argue it that it should be excluded because he was never disclosed as an expert in discovery. The Court disagrees. Defendants chose to file an early motion for summary judgment before discovery has been completed. The Court notes that while class discovery closed on July 9, 2018, fact and expert discovery is still ongoing. According to the Scheduling Order, fact discovery must be completed by November 8, 2018 and expert discovery to be completed by March 11, 2019. (Dkt. No. 14, Sch. Order ¶¶ 5, 9.) In fact, the deadline for the parties to designate their respective experts is December 10, 2018. (Id. ¶ 6.) Accordingly, the Court overrules Defendants' objection to Dr. Somogyi's declaration based on a failure to disclose.

14

Next, Defendants make generalized and summary arguments to exclude Dr. Somogyi's declaration based on <u>Daubert</u>.[9]  First, they contend that Dr. Somogyi is not qualified but do not explain why he is not qualified.  Federal Rule of Evidence 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  In applying Rule 702, the Ninth Circuit "contemplates a broad conception of expert qualifications."  <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting <u>Thomas v. Newton Int'l Enters.</u>, 42 F.3d 1266, 1269 (9th Cir. 1994)).  The threshold for qualification is low; a minimal foundation of knowledge, skill, and experience suffices.  <u>Hangarter</u>, 373 F.3d at 1015-16; <u>see also</u> <u>Thomas</u>, 42 F.3d at 1269.  Moreover, "lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert."  <u>United States v. Garcia</u>, 7 F.3d 885, 889 (9th Cir. 1993).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  <u>Primiano v. Cook</u>, 598 F.3d 558, 564 (9th Cir. 2010) (citing <u>Daubert</u>, 509 U.S. at 596).  It appears that Dr. Somogyi is qualified to testify regarding artificial flavors as he is a food scientist.

Next, Defendants argue that Dr. Somogyi has not conducted any testing or analysis of any challenged products so his opinions lack any foundation.

An expert's failure to independently conduct testing does not render his testimony inadmissible as expert testimony may be in the form of specialized knowledge.  <u>See</u> <u>Shuck v. CNH America, LLC</u>, 498 F.3d 868, 875 (8th Cir. 2007) ("observations coupled with expertise generally may form the basis of an admissible expert opinion"); <u>Jaasma v. Shell Oil Co.</u>, 412 F.3d 501, 514 (3d Cir. 2005) (rejecting argument that expert report should be excluded because it was not based on independent testing and finding expert opinion reliable).  Moreover, a failure to test goes to the weight of his testimony, not

---

[9] <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).

17cv2335-GPC(MDD)

admissibility.  See Clay v. Ford Motor Co., 215 F.3d 663, 668–69 (6th Cir. 2000) ("The district court, in its discretion, could have decided that [expert's] failure to test his theories went to the weight of his testimony regarding defects in the [product], not to its admissibility.").

Here, in support of his opinion, Dr. Somogyi relied on a laboratory test result, (Dkt. No. 31-4, Shackleford Decl., Ex. 5), indicating the amount of synthetic d-malic acid isomer in the Cran-Apple juice drink and his own specialized knowledge as a Certified Food Scientist.  (Dkt. No. 40-19, Dr. Somogyi Decl. ¶ 7.)  Defendants' argument that Dr. Somogyi's declaration is inadmissible because he did not conduct independent testing is without merit.  Thus, the Court overrules the objections as to Dr. Somogyi's declaration.

Exhibits 1 through 8 of Marron's declaration are articles from different journals as well as articles from the website, www.bartek.ca.  "It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted[.]"  AFMS LLC v. United Parcel Serv. Co., 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015) (quoting In re Dual–Deck Video Cassette Recorder Antitrust Litig., No. MDL 765, 1990 WL 126500, at *3 (D. Ariz. July 25, 1990)); see Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991) ("newspaper articles have been held inadmissible hearsay as to their content").  Here, Plaintiff relies on the articles to demonstrate the malic and fumaric acids are used as flavors and relies on them for truth of the matters asserted.  Accordingly, they are inadmissible as hearsay and the Court sustains Defendants' objection to Exhibits 1-8 of Marron's declaration.

Defendants also present objections to the remaining exhibits of Marron's declaration, Exhibits 9-16.  The Court notes these objections.  To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence.  To the extent that the evidence is not proper, the Court did not consider it.

////

////

////

17cv2335-GPC(MDD)

**Conclusion**

Based on the above, the Court DENIES Defendants' motion for summary judgment.[10]  The hearing set for November 2, 2018 shall be **vacated**.

IT IS SO ORDERED.

Dated:  October 30, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[10] Because the Court denies summary judgment, it declines to consider Plaintiff's alternative argument asking the Court to defer ruling until after the close of discovery under Federal Rule of Civil Procedure 56(d).

17cv2335-GPC(MDD)