UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE LLC; and DOES defendants 1 through 5, inclusive,<br><br>Defendants. | Case No.: 17cv2335-GPC(MDD)<br><br>**ORDER RE: CLASS NOTICE** |

On November 29, 2018, the Court granted in part and denied in part Plaintiff's motion for class certification. (Dkt. No. 83.) Because changes had been made to the Class Definition, the Court directed the parties to meet and confer regarding the proposed method and form of class notice. (Id. at 39.) On December 21, 2018, the parties filed a joint supplemental brief regarding class action notice plan. (Dkt. No. 89.)

In the briefing, the parties do not dispute on the notice provider, the long and short form notices, class action website, online notice through Facebook ads, print publication notice in the most read English and Spanish language newspapers in California, notice and opt out deadlines and further notice in the event of a monetary judgment in favor of the class. (Dkt. No. 89 at 6-8.) The parties disagree on three issues: whether direct

notice should be made through the Cranberry Club email list, whether notice should be made on Ocean Spray's website and their social media accounts, and whether the cost of class notice should be shifted to Defendants.

**1.      Direct Notice through Ocean Spray's Cranberry Club Email List**

Plaintiff argues that direct notice should be made through the Cranberry Club email list because Defendant Ocean Spray solicits consumers to join the Cranberry Club email list, and the list is then used to notify members of "upcoming Ocean Spray events, promotions and coupons." (Dkt. No. 89-4, Retnasaba Decl. ¶ 13.) As such, Plaintiff contends the Cranberry Club email list likely include repeat purchasers of Ocean Spray products, and are thus likely to be among the most impacted class members. (Id.)

Defendant Ocean Spray argues notice by means of the Cranberry Club email list should not be allowed because it is not the best notice practicable for putative class members. First, Defendant contends the Cranberry Club email list sends notifications to members in all fifty states and to individuals internationally. Such a large geographic pool means an email notification of class notice by way of the Cranberry Club email list will notify an overinclusive group of individuals who are not part of the class member group. Additionally, Defendant asserts the Cranberry Club email list does not require any purchase of Ocean Spray products, much less the specific products at issue here, and instead discusses a variety of topics, including the cranberry fruit, recipes, and other Cranberry Spray products. Defendant suggests that such a wide variety of purposes bear no reasonable relationship to the member class at issue. As such, using Ocean Spray's Cranberry Club email list is not only overinclusive, but does not share a common link to the individual putative class members.

Under Rule 23, a court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort.").

"[T]he type of notice to which a member of a class is entitled [under Rule 23(c)] depends upon the information available to the parties about that person." Bruno v. Quten Research Inst., LLC., No. SACV 1100173DOXEX, 2012 WL 12886843, at *3 (C.D. Cal. July 16, 2012) (quoting In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1098 (5th Cir. 1977)). However, "if the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." Jermyn v. Best Buy Stores, L.P., No. 08 Civ. 00214(CM), at *3, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317-18 (1950)); Johnson v. General Mills, Inc., No. SACV 10-00061-CJC (ANx), 2013 WL 3213832, at *4 (C.D. Cal. June 17, 2013) (notice by publication is used when identity and location of class members cannot be determined through reasonable efforts); In re Wal-Mart Stores, Inc. Wage & Hour Litig., No. 06-02069 SBA, 2008 WL 1990806, at *2 (C.D. Cal. May 5, 2008).

In one case, the court concluded that individuals who provided a retail company their email addresses for a "wide variety of purpose" was overinclusive for purposes of class notice as these email addresses did not bear a "reasonable relationship" to the class member group whose zip codes were collected in conjunction with credit card transactions by the retail company. Yeoman v. Ikea U.S. W., Inc., No. 11CV701 WQH BGS, 2013 WL 5944245, at *6 (S.D. Cal. Nov. 5, 2013) ("Notice to individuals is improper and not required by Rule 23 when it is overly broad or over-inclusive."). In Yeoman, the plaintiff alleged that defendant Ikea requested and recorded zip codes from customers during credit card transactions, in violation of California's Song-Beverly Credit Card Act of 1971. Id. at *1. Because the names and addresses of class members were not easily discernable, the plaintiff proposed using Ikea's general email list to notify potential class members. Id. The defendant argued, and the court agreed, using Ikea's email list containing 1.6 million addresses obtained from a variety of sources, including "Ikea sign up forms, the Ikea Family Program, Ikea's website registration pages, [] and

Ikea's partnerships with other media channels" was "overbroad, overinclusive, and not the best method 'practicable under the circumstances'" because Ikea's email list "bears no reasonable relationship to the membership in the class." Id. at *4, 6.

In a similar case, no link was found between customers who shared their email addresses with a retail provider and class member customers who were denied a price match. Jermyn v. Best Buy Stores, L.P., No. 08 CIV. 00214 CM, 2010 WL 5187746, at *7 (S.D.N.Y. Dec. 6, 2010). In Jermyn, plaintiff alleged that defendant Best Buy failed to honor a program it promoted to price match goods sold by its competitors in certain circumstances. Id. at *1-2. The plaintiff proposed using the defendant's general email list because individual notice was impossible due to neither party having any way of identifying such class member customers. Id. at *4. Ultimately, the Jermyn court held there was no link between Best Buy's general email list and those class-member-customers who were denied a price match by defendant. Id. at *7. The court reasoned that not only was the email list used for various purposes, but it also might not necessarily correspond to customers who were denied a price match. Id.

Here, Defendant's website solicits visitors to join its Cranberry Club by asking for contact information, including email addresses, and in exchange, visitors are notified about upcoming Ocean Spray events, promotions and coupons. (Dkt. No. 89-4, Retnasaba Decl. ¶ 13.) The Cranberry Club is a list of individuals in all fifty states and around the world and any individual can join without purchasing Cranberry juice products. Because this class action is limited specifically to California residents who purchased the specific Ocean Spray products at issue, using the Cranberry Club email list will send notice to an overinclusive group of individuals. Further, Plaintiff has provided no evidence to suggest that all known class members are contained on the Cranberry Club email list. See Macarz v. Transworld Sys., Inc., 201 F.R.D. 54, 61 (D. Conn Jan. 8, 2001) (notice to an overinclusive list may be permitted if the list also contains all known class members). Additionally, Ocean Spray's Cranberry Club email list has a wide variety of uses. The email list is comprised of individuals who signed up for individual

4

sweepstakes, received coupons, and discussed a variety of topics including Ocean Spray products, recipes, and the cranberry fruit in general. Given the Cranberry Club email list's wide variety of uses, and lack of a reasonable relationship to the member class in this case, notice through the Cranberry Club email list does not comply with Rule 23(c)'s notice requirement.

## 2. Notice on Ocean Spray's Website and Social Media

Plaintiff argues Defendant Ocean Spray should be ordered to post banners on its website providing California visitors with notice of the class certification and providing them with a link to the class website. Additionally, Plaintiff also argues that Defendant Ocean Spray should be ordered to provide notice of class certification on its social media accounts of Facebook[1], Twitter, Instagram, Pininterst and YouTube, and providing a link to the class website, because visitors are likely to be repeat purchasers of Ocean Spray products, and thus the most likely impacted.

Defendant Ocean Spray argues it should not be ordered to provide class notice by means of its website and social media platforms. First, Defendant argues it does not sell products directly to any consumers, including on its website or to California residents directly. Defendant suggests this could mean not a single consumer of Ocean Spray products, including potential class members, visited its website or social media accounts. Finally, Defendant argues its website is used to reach a national and international market, with no way to provide notice to just California residents, which means Defendant would be giving notice to an overly broad group.

"The World Wide Web is an increasingly important method of communication, and, of particular pertinence here, an increasingly important substitute for newspapers." Mirfasihi v. Fleet Mortg. Corp., 356 F.3d 781, 786 (7th Cir. 2004). In Jermyn, the court held that class notice via a defendant's website is akin to publishing notice in a national

---

[1] The parties agree to posting class notice online through Facebook ads because the notice will be targeted to users of Ocean Spray products in California. (Dkt. No. 89 at 7.)

newspaper and therefore complies with Rule 23(c). Jermyn, 2010 WL 5187746, at *6, 8; see also Martin v. Weiner, No. 06cv94, 2007 WL 4232791, at *3 (W.D.N.Y. Nov. 28, 2007) (notice on defendant's website was upheld despite being potentially over inclusive because such notice was akin to a "general circulation newspaper where a number of readers would not be interested class members."). In Jermyn, the price match program being challenged was posted on its website and in its stores. Jermyn, 2010 WL 5187746, at *1. In approving class notice through Best Buy's website, the court concluded at least some of the class members will be familiar with the website because the price match they sought was based on a lower price they found on Best Buy's website. Id. at *8.

Here, while class members cannot purchase Ocean Spray products on Ocean Spray's website, prior to purchase, some may have researched the ingredients contained in Ocean Spray products on its website. Because Ocean Spray's website may be viewed as a publication, the fact it is overinclusive is not a relevant consideration. See Jermyn, 2010 WL 5187746, at *8 (notice to a New York class through Best Buy's website, "which can be accessed nationwide, is similar to publishing notice in a nationwide newspaper, which can be seen by readers across the country – not all of whom will be class members.").

Here, the parties have agreed upon notice by print publication in the most read newspapers in California and which disproportionately reach older Americans as well as publication in the most read Spanish newspapers in California. They have also agreed upon online notice through Facebook which will be targeted towards users of the Ocean Spray products in California. In light of the fact that there is no direct notice to class members by name and address, publication notice through the print publication and through the internet, Facebook ads and a banner on Ocean Spray's website, will satisfy due process and Rule 23. Thus, using Defendant's website to host banners about the class certification and directing individuals to the appropriate class website complies with Rule 23(c).

6

17cv2335-GPC(MDD)

Proposing class notice via social media, by itself and without justification, does not satisfy Rule 23. See Jermyn, 2010 WL 5187746, at *6 (notice via Twitter cannot be limited to Best Buy customers in New York and there is no way to assure that notice will result in "notice to even a single class member, let alone a substantial number of class members"). However, class notice via social media may satisfy Rule 23 as long as it is targeted and the proponent provides details on the "proposed use and reasoning behind use of a particular social media method as part of a notice plan." McLaughlin on Class Action § 5:81 (15th ed. 2018). In Woods, the plaintiffs provided details on the proposed use of Facebook as part of the notice plan. Woods v. Vector Mktg Corp., No. C-14-264 EMC, 2015 WL 1198593, at *4 (N.D. Cal. Mar. 16, 2015). Based on these details, the Court found that a Facebook ad would be a useful form of providing actual notice to class members explaining that a substantial majority of potential class members are college-aged and email may not be a reliable form of contact; instead, these young class members are likely to maintain a social networking presence. Id. at *5; see also Mark v. Gawker Media LLC, No. 13cv4347(AJN), 2014 WL 5557489, at *4 (S.D.N.Y. 2014) (allowing class notice through social media notice as the court noted that it is unrealistic that the defendant's former interns do not maintain social media accounts; "the vast majority likely have at least one such account, if not more"); In re Facebook Biometric Info. Privacy Litig., No. 3:15-CV-03747-JD, 2018 WL 2412176, at *2 (N.D. Cal. May 29, 2018) (notification through social media can be considered the best practicable notice where the defendant routinely communicates with users through online notifications of its social media).

Here, Plaintiff summarily proposes posting class notice on Defendant's social media accounts without providing the proposed use and whether these accounts would reach potential class members. In fact, according to Plaintiff, class notice should be disseminated with a particular focus on African Americans and Americans over the age of 55. (Dkt. No. 89-4, Retnasaba Decl. ¶¶ 3, 6.) Unlike the class members in Woods and Mark, where most of the class members maintained social media accounts due to their

young age, here, Plaintiff has failed to make such an argument or showing and based on the targeted population of American over the age of 55, it is unlikely that the majority would maintain social media accounts. Therefore, class notification via Defendants' social media accounts fails to comply with Rule 23(c).

### 3. Cost of Class Notice

Plaintiff contends that Defendant Ocean Spray should be ordered to pay the total cost of notice to the class assessed at $60,000 or, alternatively, that cost should be proportioned equally between Plaintiff and Defendants. Plaintiff argues that interim litigation costs, including class notice costs, may be shifted to Defendant now that Plaintiff has shown some success on the merits by defeating Defendant's motion for summary judgment. Second, Plaintiff argues, because Defendant maintains it is not liable in this case, if Defendant prevails, it will receive the benefit of res judicata, which is a factor that weighs in favor of Defendant bearing the costs. Finally, Plaintiff contends her interest compared with the entire class – approximately $3.25 per product—is miniscule, further suggesting Defendant should bear the cost of class notice.

Defendant Ocean Spray argues it should not be forced to bear any portion of the cost of notice to the class because Plaintiff must show a likelihood of success on the merits in order for the court to shift notice costs. Defendant contends that surviving Defendant's motion for summary judgment is not a showing of some success on the merits, but rather a showing of a disputed issue of fact. Thus, Defendant contends that Plaintiff should bear the costs of class notice.

Where the parties are adversarial in nature, the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178-79 (1974). However, "the district court has some discretion" in allocating the cost of complying with an order regarding class notice. Oppenheimer Fund Inc., v. Sanders, 437 U.S. 340, 358-60 (1978). District courts have discretion to shift cost of class notice to the defendants after courts determine that the defendant is liable on the merits. Hunt v. Imperial Merch. Servs., Inc., 560 F.3d 1137,

8

17cv2335-GPC(MDD)

1144 (9th Cir. 2009) (relying on district court cases). Fee shifting factors include: (1) the merit of the claim; (2) defendant's desire to utilize res judicata; (3) the number of named plaintiff's and their financial responsibility; (4) the named plaintiff's interest relative to the entire class, (5) the ability of the plaintiffs to make the initial outlay required; and (6) the cost of notice. Hunt v. Check Recovery Sys. Inc., No. C05-04993 MJJ, 2007 WL 2220972, at *4 (N.D. Cal. 2007) (citing Berland v. Mack, 48 F.R.D. 121, 132 (S.D.N.Y. 1969) (considering six factors to determine whether the cost of notice should be shifted to defendant).

Here, Plaintiff has not shown success on the merits which is a key factor in the cost shifting analysis. See Hunt, 560 F.3d at 1144. As correctly pointed out by Defendant Ocean Spray, Plaintiff has successfully shown a disputed issue of fact on summary judgment and not success on the merits. Further, Plaintiff suggests her interest in the claim is approximately $3.25 per product, a relatively small amount but fails to allege her interest relative to the entire class. Plaintiff acknowledges that Defendant's desire to utilize res judicata is not apparent in the case, but Defendant will likely utilize res judicata if it prevails. This argument is not compelling. In consideration of the Berland factors, the Court declines to shift the cost of notice to Defendants. Plaintiff shall bear the costs of notice.

**Conclusion**

The Court DIRECTS the parties to provide Notice to the Class in accordance with the parties' agreed upon terms and in accordance with this Order.

IT IS SO ORDERED.

Dated: February 5, 2019

Hon. Gonzalo P. Curiel
United States District Judge