GREENBERG TRAURIG, LLP
Rick L. Shackelford (SBN 151262)
Adam Siegler (SBN 116233)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700; Fax: 310-586-7800
Email:   *ShackelfordR@gtlaw.com*
         *SieglerA@gtlaw.com*

Attorneys for Defendants
Ocean Spray Cranberries, Inc. and Arnold Worldwide, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE LLC, and Doe Defendants 1 through 5, inclusive,<br><br>Defendant. | CASE NO.: 3:17-CV-2335-GPC-MDD<br><br>[Hon. Gonzalo P. Curiel]<br><br>**REPLY IN SUPPORT OF OCEAN SPRAY CRANBERRIES, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed Concurrently with: Declaration of Rick Shackelford and Reply to Plaintiff's Separate Statement of Disputed Material Facts]<br><br>Date:         June 28, 2019<br>Time:        1:30 p.m.<br>Courtroom:  2D<br><br>Date of Removal:     September 19, 2017 |

**[PUBLIC REDACTED VERSION]**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT..........................................................................................................2

    A. Summary Judgment Is Proper Under Celotex Because None Of Hilsley's Experts Could State Under Penalty of Perjury That Malic And Fumaric Acids Act As Artificial Flavors In The Ocean Spray Products At Issue ..........................................................2

    B. The Opposition Confirms That Malic And Fumaric Acids Do Not Act as Artificial Flavors In Ocean Spray's Products ........................7

III. CONCLUSION.......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Branca v. Bai Brands, LLC*,
  No. 3:18-cv-00757-BEN, 2019 U.S. Dist. LEXIS 37105 (S.D. Cal. Mar. 7, 2019) .......................... 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................................... 2, 9

*Gerlinger v. Amazon.com, Inc.*,
  526 F.3d 1253 (9th Cir. 2008) ............................................................................................ 7

*Kennedy v. Collagen Corp.*,
  161 F.3d 1226 (9th Cir. 1998) ............................................................................................ 9

*Thomas v. Newton Int'l Enters.*,
  42 F.3d 1266 (9th Cir. 1994) .............................................................................................. 9

**Federal Statutes**

**Other Authorities**

21 C.F.R. § 101.22(a) ............................................................................................................ 3, 4

21 C.F.R. § 170.3(o)(11) ....................................................................................................... 5, 6

21 C.F.R. § 170.3(o)(12) ....................................................................................................... 3, 5

56 Fed. Reg. 28592, 28598 (June 21, 1991) ........................................................................... 5

## I. INTRODUCTION

Plaintiff Crystal Hilsley's ("Hilsley") Opposition to Ocean Spray's Motion for Summary Judgment is a classic exercise in misdirection. Faced with a challenge to demonstrate that she has evidence that malic and fumaric acid function as artificial flavors in Ocean Spray's products—the central claim in her Complaint, and the seminal factual issue in this case as identified by this court [Dkt. No. 83, 8:21–22]— Hilsley once again attempts to dodge the issue and change the subject.

Throughout this litigation, the fundamental factual issue has been whether malic and/or fumaric acid function as artificial flavors in the Ocean Spray products at issue. As this Court previously recognized, "[i]f malic and fumaric acids ***do not function as flavors***, then it would be a ***death knell*** to Hilsley's entire case." [Dkt. No. 83, 8:21–22 (emphasis added).] That is, based on her Complaint, the issue was artificial flavors, ***not*** flavor enhancers, flavoring agents, or some other similar sounding term with a different legal definition.  Yet, when faced with the challenge presented by Ocean Spray's motion to demonstrate that she has evidence that malic acid and fumaric acid function as artificial flavors—the ***central claim*** in Hilsley's Complaint—Hilsley once again attempts to shift the conversation.  To be clear:  Hilsley has offered no evidence at all that malic acid and fumaric acid function as artificial flavors (as that term is legally defined) in the Ocean Spray products.  Instead, Hilsley's expert, Somogyi, employs a new term – flavoring agents – and attempts to pass off that term as the equivalent to the legally-defined term artificial flavor.  As Ocean Spray noted in opposition to Hilsley's summary judgment motion, "flavoring agent" is a completely separate, independent function, with a completely separate legal definition compared to "artificial flavor."  Somogyi's semantic game is, at best, a dodge, but it cannot supply evidence on the critical issue of whether the ingredients function as artificial flavors—meaning they impart a distinct flavor of their own—to the Ocean Spray products.  Hilsley has no evidence on that point, and no answer to that shortcoming, because the ingredients are not used as flavors.

1

OCEAN SPRAY'S REPLY ISO MOTION FOR SUMMARY JUDGMENT

3:17-CV-2335

At least, that was Somogyi's story in his original declaration. [Dkt. No. 35-9.] Hilsley's Opposition asserts that nothing has changed since then, but that is not true. Somogyi has been deposed. We now know that Hilsley's key expert, Somogyi, could only opine that he thinks Ocean Spray uses these acids as flavor *agents* or flavor *enhancers*. Terms defined by the FDA differently than an artificial flavor. He bases this opinion on no testing or analytical procedures. This testimony falls far short of carrying Hilsley's burden that the ingredients function as artificial flavors, as legally defined. Her use of different terms is nothing but an inartful dodge. She has no evidence to carry the key element of her claim.

Unable to present evidence to meet her burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), Hilsley instead spends the balance of her Opposition mounting a misplaced and mistimed attack on the testimony of Ocean Spray's expert Paula Lent. Hilsley's attack is misplaced because her criticisms, to the extent they might have merit (which they do not), address only the weight to be given to Ms. Lent's testimony and not whether that testimony is admissible. The attack is mistimed because attempting to undermine Ocean Spray's expert does not carry Hilsley's burden of establishing that she has evidence to prove her claim.

Accordingly, Ocean Spray's Motion should be granted.

## II. ARGUMENT

### A. Summary Judgment Is Proper Under *Celotex* Because None Of Hilsley's Experts Could State Under Penalty of Perjury That Malic And Fumaric Acids Act As Artificial Flavors In The Ocean Spray Products At Issue

In her Opposition, Hilsley heavily relies on the now shopworn declaration of her expert, Somogyi, to carry her burden on the "death knell" issue of this case. Somogyi's declaration simply does not say what Hilsley needs it to say. On the key issue, it is worth quoting that declaration, because Somogyi states that ". . . dl-malic acid is added to the CranApple juice drink and the other Products at issue in this action to function as a *flavoring agent*. . . Fumaric acid similarly **functions to simulate, resemble or reinforce**

*certain fruit flavors*. . . ." [Dkt. No. 140 ("Opposition") at 4:15-19] (emphasis added). Not only does Somogyi *not* state that the ingredients function as flavors, he affirmatively disproves the central tenet of Hilsley's claim. Simply, if the ingredients merely reinforce the flavors provided by other ingredients, then those ingredients ***do not, and cannot, impart any flavor of their own***. In other words, they cannot meet the legal definition of artificial flavor, and Somogyi was unwilling to swear to the contrary.

Now that discovery is complete on this topic, it has become clear that Hilsley's entire legal theory was based upon mixing and matching distinct ingredient definitions, established by regulation, and treating them as though they were interchangeable and mean the same thing as one another. When read against the backdrop of these separate legal definitions, Somogyi's declaration by itself seals Hilsley's fate on this Motion for two reasons. First, Somogyi's opinion does not carry Hilsley's burden to show admissible evidence that the acids function as artificial flavors, as opposed to ***flavoring agents***. "Flavoring agent" is, by legal definition, different from an "artificial flavor," and Hilsley's original claim—the one she *actually* bears the burden of proving—has nothing to do with whether the ingredients function as "flavoring agents," as separately defined.[1] And second, Hilsley's reliance on Somogyi's opinion does nothing to demonstrate that she has any evidence regarding any of the other eleven products at issue in this case, as the opinion Hilsley cites is limited to Ocean Spray CranApple.

With the proper legal framework in mind, it is readily apparent that Hilsley's spin on Somogyi's testimony is wishful thinking. For his part, it appears Somogyi knew exactly what he was saying, and not saying, and was very careful about not mashing the two together. Despite Hilsley's reliance on his testimony, Somogyi never actually states that malic acid functions as an ***artificial flavor*** in any of the Ocean Spray products at issue, including CranApple. His declaration never mentions the FDA's definition of "artificial flavor" found at 21 C.F.R. §101.22(a): "[A]ny substance, ***the function of which is to impart flavor***, which is not derived from a spice, fruit or fruit juice, vegetable

---

[1] *See* 21 C.F.R. §170.3(o)(12).

or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." (emphasis added.) That bears repeating. An artificial flavor, by definition, imparts flavor. It does not reinforce flavor provided by some other ingredient. It does not enhance the flavor provided by some other ingredient; those definitions apply to ingredients which have separate legal definitions from "artificial flavors" (and, therefore, are not artificial flavors). As an expert, presumably Somogyi knows that, and, therefore, never actually says that malic acid functions to impart any flavor of its own to any of the Products, as required to meet that legal definition. By definition, an "artificial flavor" must impart its own flavor. 21 C.F.R. §101.22(a). The court in *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757-BEN, 2019 U.S. Dist. LEXIS 37105, at *11-12 (S.D. Cal. Mar. 7, 2019), acknowledged the regulatory distinction between an artificial flavor and flavor enhancer "which does not impart any taste upon its addition to the product." Nothing in the regulations extends the definition of "flavor" to ingredients that merely simulate, resemble or reinforce something else. Somogyi's declaration steers carefully away from claiming that malic acid imparts any flavor of its own. For example, in paragraph 27, Somogyi says that malic acid "simulates, resembles or reinforces as well as enhances characteristic fruit flavors." [Dkt. No. 35-9, ¶ 27.] These words are not part of the definition of "artificial flavor." Elsewhere, he refers to low calorie drinks and says "[d]l-malic acid's extended sour flavor [sour is a taste, not a flavor] masks the unnatural sweetener aftertaste." [Dkt. No. 35-9, ¶ 30.] Again, Somogyi cannot say that malic acid imparts any flavor of its own to the Ocean Spray products at issue.

These shortcomings in Somogyi's declaration are critical. This case is not, and never has been, about whether malic acid is "artificial," because Ocean Spray has not made a "no artificial ingredients" claim. It did, however, make the claim "no artificial flavors," and Somogyi, throughout his carefully-worded collection of verbs, never uses the one verb that matters for purposes of the legal definition of artificial flavors under 21 C.F.R. §101.22(a): *imparts*.

Despite Hilsley's attempt to treat them as interchangeable, "flavor" and "flavor enhancer" are, by definition, two different things. The FDA defines "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own" as a "[f]lavor enhancer," not an artificial flavor. 21 C.F.R. §170.3(o)(11). Somogyi's description of malic acid as "simulat[ing], resembl[ing] or reinforc[ing] as well as enhanc[ing] characteristic fruit flavors," [Dkt. No. 35-9, ¶ 27], paraphrases the definition of a flavor enhancer, not an artificial flavor. As discussed above, Somogyi cannot opine that malic acid functions as an artificial flavor because he cannot directly say that malic acid imparted any flavor of its own.

Hilsley's other bit of misdirection fares no better. Her argument that malic acid and fumaric acid are flavoring agents fails, because "flavoring agent" is likewise a separate function entirely—and separately defined by the FDA—from an artificial flavor. By definition, a "flavoring agent" is a substance "added to impart or help impart a taste or aroma in food." 21 C.F.R. §170.3(o)(12). As the FDA has stated: "Generally, a flavoring is considered to be a substance that has a flavor of its own at the level at which it is used in a food, while flavor enhancers and flavor potentiators do not themselves impart flavor but rather intensify in some manner the flavors that are naturally present or are added to food." 56 Fed. Reg. 28592, 28598 (June 21, 1991) (emphasis added). This is exactly what Somogyi was describing, and it explains why neither Hilsley nor Somogyi have been able to answer a very simple question. If malic acid is a flavor, what flavor is it? What unique, distinct flavor does it impart that would not be present without malic acid? The answer to both questions is "none."

Hilsley's entire case has been predicated upon her misinterpretation of applicable regulations, and now that they are laid bare, Hilsley's expert cannot support her continued misinterpretations. Notably, this misinterpretation also explains the dearth of legal authority supporting Hilsley's position. Simply put, the regulations do not mean what she claims they mean.

Hilsley's argument that Somogyi demonstrated, by process of elimination, that Ocean Spray does not use malic acid and fumaric acid as acidulants in its products is unpersuasive.  For example, Somogyi contradicted his own written report in his deposition, admitting that product developers could use small amounts of acidulants to fine-tune and adjust the pH of a product ensure it exactly meets specifications. [Declaration of Rick Shackelford ("Shackelford Decl."), Ex. A ("Somogyi Dep."), 60:22–61:15.] Somogyi's claim that malic and fumaric acids have flavors of their own is similarly unsupported, as he does not state specifically what that *flavor* is beyond "tart and fruity," which is nonspecific.  If Somogyi cannot identify what flavor these acids have, how can he conclude that they *impart any flavor of their own*, as required by the FDA?  Somogyi's inability to identify these acids' flavor makes more sense in the context of his opinion that fumaric acid "functions to simulate, resemble, or reinforce certain fruit flavors." [Opposition, at 5].  As mentioned above, this description more closely tracks the definition of a "flavor enhancer," which specifically *does not impart a flavor of its own*. See 21. C.F.R. 170.3(o)(11).  Finally, the fact that malic acid and fumaric acid could hypothetically have dual purposes in hypothetical products made by a hypothetical company for a hypothetical purpose is irrelevant.  The key issue in this case—the one without which Hilsley's claims cannot succeed—is whether the acids function as artificial flavors in these products, not whether some scientists—who have never conducted any testing on these products [Somogyi Dep., at 76:21–77:5]—think that the acids might be used elsewhere.  She has no evidence on that point at all.

Moreover, Hilsley's reliance on Chin's expert report in her Opposition is also misplaced, because he does nothing more than cite to various external sources for the proposition that malic acid and fumaric acid *can* function as flavoring agents.  This adds nothing.  It is perfectly consistent with Somogyi's statements, and perfectly inadequate to carry Hilsley's burden that the ingredients function as artificial flavors, as legally defined, in the products.  It is telling that—aside from Somogyi's conclusory and unsupported statement that the acids function as flavoring *agents* in Ocean Spray's

products—the Opposition's only citation regarding the function of the acids in Ocean Spray's products in its entire discussion of Chin's report is to the allegations in Hilsley's Complaint. [Opposition, at 8.] But Hilsley cannot defeat summary judgment by merely resting on the allegations in her unverified complaint. *See Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253, 1255–56 (9th Cir. 2008) ("In response to a summary judgment motion . . . a plaintiff can no longer rest on 'mere allegations' but must set forth by affidavit or other admissible evidence 'specific facts.'").

### B. The Opposition Confirms That Malic And Fumaric Acids Do Not Act as Artificial Flavors In Ocean Spray's Products

Ocean Spray's moving papers conclusively demonstrated that Ocean Spray does not use malic and fumaric acids in the products at issue as artificial flavors. As Paula Lent—Ocean Spray's Senior Manager of Global Product Development for Food and Beverages Paula Lent and the ***only*** witness, expert or otherwise, provided by either party with first-hand experience with Ocean Spray's manufacturing processes and procedures—testified, Ocean Spray uses these acids as ***acidulants*** to regulate the pH and T.A. levels of Ocean Spray's products. In conformance with these acids' roles as acidulants, Ocean Spray does not use either acid to correct any taste or flavoring defects in its products during the manufacturing process. [Dkt. No. 121, at 13–14.] Accordingly, Lent's report and testimony establish that malic and fumaric acids are not used as flavors, flavor enhancers, or flavor adjuvants/agents in the Ocean Spray products at issue in this case, affirmatively rebutting the key point which Hilsley bears the burden of proving.

Hilsley largely ignores the central points of Ms. Lent's testimony—that Ocean Spray uses malic acid and fumaric acid as acidulants to regulate pH and T.A. rather than to impart any flavor in its products—and focuses her attention to a sideshow issue of whether acids, in bulk and before added to any solution, taste like acid. This truism could have been established by stipulation, but it has nothing to do with the real issue of whether the acids impart a flavor of their own in the Ocean Spray products.  [*See* Opposition, at 9-10.] In her entire eleven-page Opposition, Hilsley cites but one

document. Hilsley asserts that malic acid and fumaric acid must function as artificial flavors in Ocean Spray's products because they are added during Ocean Spray's manufacturing process "regardless of the initial pH or TA levels of the beverage." [Opposition, at 10.] To support this assertion, Hilsley cherry picks one page (identified as OS000060) out of a fourteen-page "█████████████████████" for only one of Ocean Spray's products.[2] She has no testimony to support her interpretation of this document; indeed this document was just one more thing her counsel failed to ask Ms. Lent about at her deposition. For that reason, Hilsley's efforts to explain what the document means are no more reliable than her attempts to interpret the applicable federal regulations. Her myopic focus completely disregards other language in that same document indicating that, for that one product, ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
Whatever else the document may say, it does not say that malic acid functions as a flavor, or is added to adjust flavor, or to meet a flavor or sensory specification. This single document, referenced by Hilsley entirely out of context and without acknowledging all of its contents, is insufficient to establish a genuine dispute about the function of malic acid in even that one product, let alone touch upon the function in any of the other 11 Products at issue.

      Hilsley's attempts to disparage Ms. Lent's qualifications are little more than misplaced expert snobbery. Ocean Spray has already laid out Ms. Lent's numerous qualifications in its Opposition to Plaintiff's Motion to Exclude Defendants' Expert testimony [Dkt. No. 141], so they will be briefly summarized here. Ms. Lent has two

---

[2] How Hilsley intends to establish her affirmative burden of demonstrating how malic acid and fumaric acid are used in Ocean Spray's *other* products is a mystery, as Hilsley did not reference any similar documents for other products in support of its broad assertion that Ocean Spray always mixes its acidulants into its products regardless of their current pH or T.A. levels. [*See* Opposition, at 10.]

degrees in food sciences, and over seventeen years of practical experience in research & development roles in the food and beverage industry. [Shackelford Decl., Ex. B, at 9–10.] Eleven of those years have been spent in various roles with Ocean Spray, each of which has involved the development of Ocean Spray's beverage products. [*Id.*] Accordingly, she has extensive practical experience with Ocean Spray's procedures for selecting and using acidulants such as malic acid and fumaric acid to balance the pH and T.A. levels of juice beverages; to assert otherwise is to demean her decade-plus of valuable experience. [*See* Shackelford Decl., Ex. C, at 14:1–16:15; *see also Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269–70 (9th Cir. 1994) (holding that a longshoreman with 29 years of practical experience in the industry was qualified to testify as an expert regarding the safety of working conditions).]

Hilsley's criticisms of Ms. Lent's testimony, if they have any merit (which they do not), relate to the ***weight*** of Ms. Lent's testimony, not to whether she is qualified to testify as an expert. *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230–31 (9th Cir. 1998) ("Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995))). Furthermore, these criticisms—aside from addressing the weight and not the admissibility of her testimony—do nothing to demonstrate how Hilsley could possibly carry her affirmative burden under *Celotex* of showing that she has any evidence that malic acid and fumaric acid function as artificial flavors ***in Ocean Spray's products***. Accordingly, Ocean Spray's motion should be granted.

### III.   CONCLUSION

Hilsley's Opposition confirms that no genuine issues of material fact exist. Hilsley has not carried her burden to establish that the malic and fumaric acid in Ocean Spray's products act as artificial flavors, because she cannot answer the simple question of what flavor of their own those ingredients impart to any of the Products. Ocean Spray has established that it uses malic and fumaric acid as, and that those ingredients function as,

acidulants and only acidulants to control pH and T.A. – not as an artificial flavor. Hilsley has failed to show any evidence to contradict Ocean Spray's showing. Accordingly, Ocean Spray's motion for summary judgment on each of Hilsley's claims should be granted.

Dated:  May 31, 2019               Respectfully submitted,

                                            GREENBERG TRAURIG, LLP


                                            By:   /s/:  Rick L. Shackelford
                                                Rick L. Shackelford
                                                Adam Siegler
                                          Attorneys for Defendants
                                          Ocean Spray Cranberries, Inc. and
                                          Arnold Worldwide, LLC