UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE LLC; and DOES defendants 1 through 5, inclusive,<br><br>          Defendants. | Case No.: 17cv2335-GPC(MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DECERTIFY CLASS**<br><br>**[REDACTED -ORIGINAL FILED UNDER SEAL]**<br><br>**[Dkt. No. 111.]** |

Before the Court is Defendant Ocean Spray Cranberries, Inc's ("Defendant" or "Ocean Spray") motion to decertify class. (Dkt. No. 111.) Plaintiff Crystal Hilsley ("Plaintiff") filed an opposition and Defendant filed a reply. (Dkt. Nos. 145, 184.) Because discovery relevant to the motion to decertify was conducted after the motion was field, the Court directed Plaintiff to file a sur-reply. (Dkt. No. 189.) Pursuant to the Court's order, Plaintiff filed her sur-reply on July 2, 2019. (Dkt. No. 192.) After a careful review of the briefs, the supporting documentation, and the applicable law, the Court DENIES Defendant's motion to decertify class.

/ / /

/ / /

# Background

In November 2017, Plaintiff filed a consumer class action for violations of California consumer protection laws claiming that the "no artificial flavors" labels on Ocean Spray's Products at issue are false and misleading because each Product contains the artificial flavors of dl-malic acid or fumaric acid, or both, that simulate advertised fruit flavors. (Dkt. No. 1-2, Compl. ¶¶ 8, 9, 10.) Plaintiff alleges six causes of action for violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750 *et seq*; violation of the unlawful prong of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 *et seq*.; violation of the unfair prong of the UCL; violation of California's False Advertising Law ("FAL"), breach of express warranty and breach of implied warranty. (Id. ¶¶ 115-187.)

On November 29, 2018, the Court granted in part Plaintiff's motion for class certification and appointed class counsel. (Dkt. No. 83.) The Court certified a Class under Federal Rule of Civil Procedure ("Rule") 23(b)(2) and also certified a Class under Rule 23(b)(3) as to the UCL, FAL and CLRA causes of action consisting of:

> All California Citizens who purchased one of the following Ocean Spray Products, for personal and household use and not for resale, in California from January 1, 2011 until the date class notice is disseminated:
>
> • Ocean Spray Cran Apple;
> • Ocean Spray Cran Grape;
> • Ocean Spray "100% Apple" Juice Drink;
> • Ocean Spray Cran Rasberry;
> • Ocean Spray Wave Apple with White Cranberries;
> • Ocean Spray Wave Berry Medley;
> • Ocean Spray Cran Cherry;
> • Ocean Spray Cran Pineapple;
> • Ocean Spray Cran Pomegranate;
> • Ocean Spray Diet Cran Pomegranate;
> • Ocean Spray Diet Cran Cherry;
> • Ocean Spray Cranberry Cherry Flavor 100% Juice.
>
> Excluded from the Class are Defendants' current and former officers and directors, members of the immediate families of Defendants' officers and

directors, Defendants' legal representatives, heirs, successors, and assigns, any entity in which Defendants have or had a controlling interest during the Class Period, and the judicial officers to whom this lawsuit is assigned.

(Dkt. No. 83 at 37-38.)

After discovery was almost completed, Ocean Spray filed a motion to decertify class. (Dkt. No. 111.) Since the Court's order on certifying the class, Plaintiff obtained Ocean Spray's retail sales records from Information Resources, Inc. ("IRI") for the period 2015-2019, and Defendant deposed Plaintiff's damages experts, Dr. George E. Belch and Dr. Alan G. Goedde.

## Discussion

**A.     Legal Standard**

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("A district court may decertify a class at any time"). The Court may consider "subsequent developments in the litigation." Gen. Tel. Co. of S.W. v. Falcon, 457 U.S. 147, 160 (1982).

A "party seeking *decertification* of a class should bear the burden of demonstrating that the elements of Rule 23 have *not* been established." Slaven v. BP America, Inc., 190 F.R.D. 649, 651 (C.D. Cal. 2000) (emphasis in original); Gonzales v. Arrow Financial Servs., Inc., 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007). The standard for class decertification is the same as class certification: a district court must be satisfied that the requirements of Rules 23(a) and (b) are met to allow plaintiffs to maintain the action on a representative basis. Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir. 2011); see also O'Connor v. Boeing N. Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000) (in evaluating whether to decertify the class, the court applies the same standard used in deciding whether to certify the class in the first place). The district court has discretion on whether to decertify a class. See Knight v. Kenai Peninsula Borough Sch. Dist., 131 F.3d 807, 816 (9th Cir. 1997).

Defendant solely moves to decertify the class on whether predominance under Rule 23(b)(3) is met arguing Plaintiff's price premium damages model presented by Dr. Belch and Dr. Goedde does not comply with Comcast.[1]

**B.     Rule 23(b)(3)** [2]

To satisfy the Rule 23(b)(3) predominance requirement, Plaintiff must present a damages model that is consistent with her liability case, and the court "must conduct a rigorous analysis to determine whether that is so." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) (internal quotation marks omitted). Plaintiff "must be able to show that [her] damages stemmed from the defendant's actions that created the legal liability." Leyva v. Medline Indus., Inc., 716 F.3d 510, 514 (9th Cir. 2013). "Calculations need not be exact." Comcast, 133 S. Ct. at 1433.

Here, Plaintiff's liability case is based upon the alleged mislabeling on Ocean Spray "Cran-Apple" and "Cran-Grape" products which state "No . . . artificial flavors" when in fact they contain artificial flavoring chemicals that simulate the advertised fruit flavors. Plaintiff asserts that these misrepresentations led consumers to pay more than they otherwise would have paid. Therefore, Plaintiff's damages model must measure only those damages attributable to Ocean Spray's conduct of mislabeling its Products.

Damages under the UCL[3], FAL[4], and the CLRA[5] all similarly authorize courts to award restitution. Colgan v. Leatherman Tool Grp., 135 Cal. App. 4th 663, 694 (2006).

---

[1] Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013).

[2] In its moving papers, Defendant also argues that Dr. Goedde's report fails the Daubert standard because he failed to consider real-world pricing data in his report despite recognizing this was something he required and even if $3.25 is realistic average retail price for Ocean Spray's products during the class period, Dr. Goedde failed to apply that price to a reliable sales record and instead applied it to whole sales figures. Since the motion was filed, Dr. Goedde reviewed the retail sales data of Ocean Spray Products and submitted a supplemental expert report on this data. Therefore, Defendant's arguments are mooted with the production of Ocean Spray's retail sales and pricing information for Products sold at retail in California.

[3] Cal. Bus. & Prof. Code § 17203.

[4] Cal. Bus. & Prof. Code § 17535.

[5] Cal. Civ. Code § 1780(a)(3).

Restitution restores the status quo "by returning to the plaintiff funds in which he or she has an ownership interest." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003). "The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received." Werdebaugh v. Blue Diamond Growers, Case No. 12cv2724-LHK, 2014 WL 2191901, at *22 (N.D. Cal. Dec. 15, 2014) (citing Colgan, 135 Cal. App. 4th at 700). "Restitution can . . . be determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." Id. While a plaintiff must present the likely method for determining class damages, "it is not necessary to show that [this] method will work with certainty at this time." Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 379 (N.D. Cal. 2010). Comcast demands that Plaintiff demonstrates, with evidence, that there is a class-wide method of determining damages that is consistent with her theory of liability. See Comcast Corp., 133 S. Ct. at 1433.

In support of class certification, Dr. Belch conducted a consumer survey to determine whether a "claim on a package label that Ocean Spray Cranberry juice-based beverage products, such as Cran-Apple and Cran-Grap, contain no artificial flavors and the absence of a label declaration of artificial flavors, affect the price a reasonable consumer is willing to pay for them." (Dkt. No. 23-20, Belch Expert Report ¶ 6.) In a supplemental declaration, Dr. Belch explained he relied on contingent valuation methodology when he conducted his consumer survey. (Dkt. No. 75-1, Suppl. Belch Decl. ¶ 5.) Contingent valuation is "a survey based method of estimating the value that a consumer places on an item by varying its features and having them directly report what they are willing to pay for it." (Id.) The methodology measures "what a reasonable consumer would have paid for the Ocean Spray Cranberry juice products if they were aware of the use of artificial flavors in them." (Id.) The survey asks "respondents to consider a hypothetical scenario and they are then asked to consider new information to

help them make a purchase decision." (Id. ¶ 6.) In its prior order on class certification, the Court explained,

> District courts have held that contingent valuation analysis is a reliable survey based methodology to determine price premium damages. See Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig., No. MDL 10-2172-CJC, 2012 WL 4904412, at *1 (C.D. Cal. Sept. 20, 2012) ("hedonic regression, contingent valuation, and discrete choice, are generally accepted, have been tested, and are part of peer-reviewed studies"); Dzielak v. Whirlpool Corp., Civ. No. 12cv89 (KM)(JBC), 2017 WL 1034197, at *16-18 (D.N.J. Mar. 17, 2017) (Daubert[6] analysis); Miller v. Fuhu Inc., No. 2:14cv6119-CAS-AS, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015) ("numerous courts, including this one, have accepted both [Choice-Based Conjoint Analysis] and [Contingent Valuation Method] as reliable methodologies for calculating price premiums on a class[-]wide basis in consumer class actions.").
>
> . . .
>
> District courts have held that demonstrating a consumer's willingness to pay is insufficient to satisfy Comcast as it fails to take into consideration any "corresponding gain by the defendant." See Hadley,[7] 324 F. Supp. 3d at 1105 ("courts have repeatedly rejected conjoint analyses that only measure demand-side willingness-to-pay"). "The ultimate price of a product is a combination of market demand and market supply." In re NJOY, Inc. Consumer Class Action Litig., 120 F. Supp. 3d 1050, 1119-20 (C.D. Cal. 2015) (rejecting expert's conjoint and direct method analyses because it "completely ignores the price for which NJOY is willing to sell its products, what other e-cigarette manufacturers say about their products, and the prices at which those entities are willing to sell their products.").
>
> At the same time, courts have found that the supply side of the conjoint analysis damages model is satisfied if the prices in the surveys reflect the actual market prices during the class period and the quantities used reflect the actual quantities of products sold. Hadley, 324 F. Supp. 3d at 1105; Brookfield v. Craft Brew Alliance, Inc., Case No. 17cv1027-BLF, 2018 WL 4952519, at *18-19 (N.D. Cal. Sept. 25, 2018); In re MyFord Touch Consumer Litig., 291 F. Supp. 3d 936, 969-71 (N.D. Cal. 2018) (finding that the conjoint analysis adequately accounted for supply-side factors "by

---

[6] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).
[7] Hadley v. Kellogg Sales Co., 324 F. Supp. 3d 1084 (N.D. Cal. 2018).

> assuming that the supply—the quantity—was fixed"); <u>Davidson v. Apple, Inc.</u>, Case No. 16cv4942-LHK, 2018 WL 2325426, at *22 (N.D. Cal. May 8, 2018) (finding that a proposed conjoint analysis from the same expert adequately "account[ed] for the supply side of the equation" and because the supply remains constant as it is not affected by the failure to disclose or not).

(Dkt. No. 83 at 26, 28-9.) After a review of the relevant case law, the Court concluded that Dr. Belch's survey methodology, which assessed the consumers' willingness to pay, along with Dr. Goedde's formula, using a $3.25 standard retail price and Ocean Spray's actual wholesale unit sales in California, which could account for supply-side factors, could create a damages framework satisfying <u>Comcast</u> on the UCL, FAL and CLRA claims. (<u>Id.</u> at 29-30.) Dr. Goedde used a $3.25 retail price to reflect actual prices but he recognized that Defendant had not yet obtained retail pricing data. The Court noted that based on this, Plaintiff may be able to obtain retail pricing data either "directly from retailers or from websites of retailers who sell the disputed Products." (<u>Id.</u> at 30 n. 16.) As a result, because Plaintiff's damages framework could account for supply-side factors if actual retail sales data of Ocean Spray is obtained, the Court concluded that her damages model satisfied <u>Comcast</u> on the UCL, FAL and CLRA claims. (Dkt. No. 83 at 30.)

Through discovery, Plaintiff obtained detailed California retail sales data of Ocean Spray Products from IRI, a company that collects and aggregates retail sales data provided by retailers from 2015-2018. (Dkt. No. 145-5, Houchin Decl., Ex. 3, Dr. Goedde's Suppl. Expert Report ¶ 4.) Dr. Goedde reviewed the data provided by IRI and also reviewed actual sales data produced by Walmart as well as websites of several major retailers in California to compare the listed prices of the Products at issue. (<u>Id.</u>) In a supplemental expert report, Dr. Goedde concludes that the real-world pricing data confirms that the $3.25 price of a 64 fl. oz. container of a Product is reasonable given the typical historical retail prices of Ocean Spray's Products. (<u>Id.</u> ¶ 6.) He opines that the "$3.25 reference price comports with real world pricing data and is within a realistic price range for the products at issue." (<u>Id.</u>)

Defendant argues that despite the completion of discovery, Plaintiff fails to use the recently produced actual retail sales data to determine a real-world price premium and instead continues to use a $3.25 reference price that does not account for any real-world pricing for the class years from 2011 to 2017. Without the ability to connect to the real-world conditions, Plaintiff's damages model is an impermissible demand side only valuation model. In support, Ocean Spray presents its rebuttal expert, Nicole Liska, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 186-3, Shackelford Decl., Ex. B, Liska Suppl. Decl. ¶ 3 (UNDER SEAL).) She explains that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Id. ¶ 6 (UNDER SEAL).)[8] Ocean Spray argues that Dr. Belch's inflated reference price is not tethered to prices actually paid in the real world and his contingent valuation method cannot address the supply side because the key that holds Dr. Goedde and Dr. Belch's opinions together is the "average retail selling price of Ocean Spray's products." (Dkt. No. 111-1 at 8.)

Plaintiff responds she complied with the Court's direction to obtain real world pricing and sales data and was able to negotiate the production of Ocean Spray's retail sales data from IRI during the period from 2015-2019. Based on IRI's data, Dr. Goedde then estimated total retail sales from January 1, 2011 to April 21, 2019. (Dkt. No. 145-5, Houchin Decl., Ex. 3, Goedde Suppl. Expert Report ¶ 4.) In a supplemental expert

---

[8] Ocean Spray also contends that because the actual average price during 2015-2018 for the 64 fl. oz. Ocean Spray Cran Apple and Cran Grape products sold for $2.60, the average price consumers actually paid was less than the $2.64 price Dr. Belch opined consumers would be willing to pay even if the Products were labeled as "artificially flavored." Therefore, the actual prices show there is no price premium because the actual average weighted price of a 64 fl. oz. Product is already $2.64. In the sur-reply, Plaintiff counters that Defendant's reasoning is mathematically flawed because it suggests that Ocean Spray already discounted the price of its Products to a price point that consumers would expect to pay even if they were deceived. If the $2.64 average price is utilized, consumers would still be willing to pay less for the Product, or 19%. The Court agrees that Defendant's analysis is flawed as it doesn't take into consideration that the respondents indicated they would be willing to pay less for a label stating artificial flavors.

8

report, Dr. Goedde concludes that Ocean Spray's retail pricing data confirms that $3.25 "is reasonable given the range of typical historical retail prices of 64 fl. oz Ocean Spray products based on the IRI data and based on a review of retailer websites . . . and comports with real world pricing data and is within a realistic range for the products at issue." (Id. ¶ 6.) In the sur-reply, Plaintiff contends that $3.25 is a reasonable reference price for the Products at issue as the law requires a consumer survey reference price must only be within a reasonable range of actual Product sale prices. (Id. at 189 at 3 (citing Brookfield v. Craft Brew Alliance, Inc., No. 17cv1027-BLF, 2018 WL 4952519, at *19 (N.D. Cal. Sept. 25, 2018).)[9] Dr. Goedde found that the average selling price of the 64 fl. oz. Products have historically ranged as high as $3.99 and the weekly average sales prices for the 64 oz Products is $2.64. Pursuant to Brookfield, the $3.25 reference price is both "higher and lower" than actual Product sales prices.

Dr. Goedde, in sur-reply, explains that Lent's interpretation of the IRI data is fatally flawed because the IRI data reflects four week averages prices, not individual sales. (Dkt. No. 195-2, Goedde Suppl. Decl. in support of Sur-Reply ¶ 6.) Lent's reliance on the average price for each product during a four-week period does not allow an inference about the price of each unit or the distribution of individual prices above or below that average. (Id. ¶¶ 9, 10.)

Ultimately, the parties' analyses on how to compute the price premium differ. Liska disputes the price calculation used by Dr. Goedde in the survey ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ while Dr. Goedde calculates a "reference price" which he explains is a reasonable price looking at the range of historical retail prices of 64 fl. oz. Ocean Spray Products. (Compare Dkt. No. 186-3, Shackelford

---

[9] In Brookfield, the district court concluded that a price range comports with real world pricing data where the expert report reflected a "'realistic' price range for the product, which can and must include prices 'higher or lower than the prices of currently offered products.'" Brookfield, 2018 WL 4952519, at *19.

9

Decl., Ex. B, Liska Suppl. Decl. ¶ 6a (UNDER SEAL) with Dkt. No. 145-5, Houchin Decl., Ex. 3, Dr. Goedde Suppl. Expert Report ¶ 6.) The experts differ on the price used in the survey to calculate the price premium. (See e.g., Dkt. No. 186-3, Shackelford Decl., Ex. B, Lisa Suppl. Decl. ¶ 4 (UNDER SEAL) ("Plaintiff's price premium calculation [is] baseless and unjustified.")

Importantly, the parties do not dispute the accuracy of the retail sales data of IRI or that these retail sales data satisfy the supply side factor of a price premium analysis. As noted by the district court in Hadley, if "(1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period", they account for supply side factors. See Hadley, 324 F. Supp. 3d at 1105. In this case, because actual retail sales data of the Products have been produced, the supply side factors can be satisfied and any dispute as to the method of calculation does not warrant decertification.

In determining a price premium, district courts have utilized either a reasonable price range or average retail price. Compare Brookfield v. Craft Brew Alliance, Case No. 17cv2038-BLF, 2018 WL 4952519, at *19 (N.D. Cal. Sept. 25, 2018) (court had no issue regarding the prices expert used relying on a "realistic" price range for the product, which can and must include prices "higher or lower than the prices of currently offered products" and not the exact prices charged for the product); with Allen v. Hyland's Inc., 300 F.R.D. 643, 671 (C.D. Cal. 2014) (restitution or out-of-pocket costs can be "readily calculated using Defendants' sales numbers and an average retail price."); Lambert v. Nutraceutical Corp., Case No. ED CV 13-05942-AB (SPx) 2015 WL 2015 WL 12655392, at *6 n.7 (N.D. Cal. June 24, 2015) ("What the Court is saying is that Plaintiff needs both pieces of evidence under this model-Defendant's sales to its retailers and the average retail price . . . ."); Werdebaugh, 2014 WL 7148923, at *13 ("Plaintiff's use of a weighted average price alone is not independently problematic under Comcast."). At this stage, the Court need not determine which expert's analysis should apply. See In re

Aftermarket Auto. Lighting Prods. Antitrust Litig., 276 F.R.D. 364, 373-74 (C.D. Cal. 2011) (where two experts present opposing expert analyses, "the [c]ourt is not supposed to decide at the certification stage which expert analysis or model is better.").

As long as Plaintiff presents real world pricing data to support her damages model, she has sufficiently satisfied Comcast, and any disputes as to the method of calculating the price premium can be challenged later at trial. The Court concludes that Plaintiff has satisfied the supply factor of the price premium damages model.

In its reply, Ocean Spray also challenges the demand side "willingness to pay" survey methodology of Dr. Belch's contingent valuation methodology. First, in her sur-reply, Plaintiff contends that challenges on Belch's methodology was raised for the first time in Ocean Spray's reply and not in its moving papers even though nothing new has developed on Dr. Belch's damages model. The Court agrees that a party may not raise new issues for the first time in a reply brief. See Cedano–Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."); United States ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000). Ocean Spray is essentially seeking reconsideration of the Court's ruling on Dr. Belch's survey methodology and improperly raises additional issues that could have been raised when Ocean Spray filed its opposition to class certification. Because Plaintiff was given an opportunity to address these issues in her sur-reply, the Court considers Defendant's argument.

On certification, the Court concluded that any challenges to Dr. Belch's methodology go to the weight not its admissibility and concluded that his damages model satisfied the demand side of a contingent valuation methodology under Comcast. (Dkt. No. 83 at 25, 27-28.)

In its reply, Ocean Spray again challenges Dr. Belch's methodology and now argues that Dr. Belch failed to follow Professor Diamond's "Reference Guide on Survey

Research" which he testified was authoritative on conducting surveys. For example, Ocean Spray argues Dr. Belch did not have adequate controls to account for preexisting impressions, he did not pretest his questions to confirm that the respondents understood them, he had no information about what actual retail prices his survey respondents paid or what products and how many they purchased, and he could not tell whether their responses reflected their own purchasing history or were a reaction to his reference price. (Dkt. No. 184, D's Reply at 4-5.) Plaintiff does not address this argument in her sur-reply; however, the Court notes these arguments again go to challenges to methodology not admissibility. See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1036 (9th Cir. 2010) ("[T]echnical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility." Id. (internal citation and quotation marks omitted); Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1263 (9th Cir. 2001) (once a survey is admitted, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility."). Moreover, as to a Comcast analysis, Defendant's argument does not challenge whether Plaintiff's damages theory is consistent with her theory of liability but merely challenges the reliability of the underlying data. Defendant's challenge to Dr. Belch's methodology is without merit.

Next, Ocean Spray asserts that Dr. Belch's survey respondents only looked at labels and prices of 64 fl. oz. bottles of Cran Apple and Cran Grape and his survey results cannot apply to other Products at issue or any other package configurations. It also contends that there is no basis to apply his opinions to products with different labels that do not feature the challenged "no artificial flavor" claim on the front of the bottles as the 64 fl. oz. bottles do and there is no way to extrapolate "willingness to pay" responses about the 15% juice products and 100% juice products where consumer bases for purchasing those product lines could possibly be different. Ocean Spray's arguments ultimately raise challenges that address the merits of the damages calculation and not

12

challenges to a Comcast analysis. See In re Arris Cable Modem Consumer Litig., 327 F.R.D. 334, 349 (N.D. Cal. 2018) ("To the extent that some Modem buyers may be owed $0 in restitution, that is a matter of damage calculations, and the Ninth Circuit has held that 'damage calculations alone cannot defeat certification.'"). These damage calculations can be addressed later at trial.

Lastly, Ocean Spray argues that ███████████████████████████████████████████████████████████████████. (Dkt. No. 186-2, Shackelford Decl., Ex. A, Dr. Belch Depo. at 148:13-25 (UNDER SEAL).) Ocean Spray claims that the 19% premium Dr. Belch assessed ignores the nearly ¾ of the populations' indifference to the claim. Plaintiff sur-replies that Defendant's argument is inapposite, and even if true, 72% of respondents indicated that an artificial flavor label would influence the price they would be willing to pay and a larger percentage stated they would not buy the Product if they found it was falsely advertised with "no artificial flavors." Dr. Belch ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 191-1, Dr. Belch Suppl. Decl. ¶ 8 (UNDER SEAL).) The parties dispute Dr. Belch's use of the survey results to determine the price premium and his interpretation.

Again, Ocean Spray's argument raises issues concerning the merits of the damages calculation and not challenges to decertify a class under Comcast. See In re Arris Cable Modem Consumer Litig., 327 F.R.D. at 370 ("To the extent that Defendant asserts that the conjoint survey overstates the magnitude or frequency of the performance issues, that is a merits argument about the proper amount of damages, not a mismatch between Plaintiffs' damages model and theory of liability."); see Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1136 (9th Cir. 2016) (Under predominance, the "possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members"

13

does not "reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never exposed to the challenged conduct to begin with.").

Thus, Defendant's arguments challenging the demand side "willingness to pay" survey methodology of Dr. Belch's does not warrant decertification. Because the demand side and supply side factors of Plaintiff's price premium analysis have been accounted for in Dr. Belch and Dr. Goedde's expert reports and declarations, they satisfy Comcast. Thus, the Court DENIES Defendant's motion to decertify class.

**Conclusion**

Based on the reasoning above, the Court DENIES Defendant Ocean Spray's motion to decertify. The hearing set for July 12, 2019 shall be **vacated**.

IT IS SO ORDERED.

Dated: July 10, 2019

Hon. Gonzalo P. Curiel
United States District Judge