GREENBERG TRAURIG, LLP
Rick L. Shackelford (SBN 151262)
Adam Siegler (SBN 116233)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7700; Fax: 310-586-7800
Email:   *ShackelfordR@gtlaw.com*
           *SieglerA@gtlaw.com*

Attorneys for Defendants
Ocean Spray Cranberries, Inc. and Arnold Worldwide, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL HILSLEY, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>v.<br><br>OCEAN SPRAY CRANBERRIES, INC.; ARNOLD WORLDWIDE LLC, and Doe Defendants 1 through 5, inclusive,<br><br>              Defendant. | CASE NO.: 3:17-CV-2335-GPC-MDD<br><br>[Hon. Gonzalo P. Curiel]<br><br>**DEFENDANT OCEAN SPRAY CRANBERRIES, INC.'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION**<br><br>[Filed concurrently with Declaration of Rick Shackelford]<br><br><br>Date of Removal:        September 19, 2017 |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I. INTRODUCTION ................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................... 4

 A. Plaintiff Has Obstructed Settlement In The Hilsley Case .......... 4

 B. Plaintiff Froio Has Cooperated In Settlement Discussions ......... 5

III. ARGUMENT .................................................................... 7

 A. Plaintiff's Ex Parte Is Improper Because There Is No Emergency ........... 7

 B. The Ninth Circuit Has Prohibited Injunctive Relief Against Other Settlements In Other Cases ................................................ 9

 C. Plaintiff's Notice To Relate The Froio Case Is An Admission That The Subject Cases Should Be Settled On A National Basis ........... 15

 D. This Case Should Be Stayed Pending A National Settlement in Froio. .... 16

IV. CONCLUSION ................................................................ 17

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

ACTIVE 44934132v1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ahearn v. Espinosa*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................. 2, 11

*In re Am. Online Spin-Off Accounts Litig.*,
   No. 04-1581-RSWL, 2005 WL 5747463 (C.D. Cal. May 9, 2005) ..................................... 13, 14, 15

*Brod v. Sioux Honey Ass'n*,
   927 F. Supp. 2d 811 (N.D. Cal. 2013) ............................................................................. 16

*Ciuffitelli v. Deloitte & Touche LP*,
   No. 3:16-cv-00580-AC, 2019 WL 1441634 (D. Or. Mar. 19, 2019) .................................... 8

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................. 16

*Elec. Payment Sys. v. Elec. Payment Sols. of Am. Inc.*,
   No. 1:14-cv-02624-WYD-MEH, 2019 WL 2106416 (D. Colo. Jan. 17, 2019) .................... 15

*Espinosa v. Ahearn* (*In re Huyndai & Kia Fuel Econ. Litig.*),
   881 F.3d 679 (9th Cir. 2018) ............................................................................. 2

*Ewing v. K2 Prop. Dev., LLC*,
   No. 16-cv-0678-LAB-AGS, 2018 WL 3436970 (S.D. Cal. July 17, 2018) ......................... 7

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*,
   No. 16-CV-00182-H-BLM, 2018 WL 1470198 (S.D. Cal. Mar. 26, 2018) ........................... 16

*Hibler v. Santander Consumer USA, Inc.*,
   Case No EDCV-13-1354-JGB, 2013 WL 12137716 (C.D. Cal. Nov. 21, 2013) ................... 12, 13

*Jaffe v. Morgan Stanley DW, Inc.*,
   2007 WL 163196 (N.D. Cal. Jan 19, 2007) ............................................................................. 17

*Langer v. McHale*,
   No. 13cv2721-CAB-NLS, 2014 U.S. Dist. LEXIS 183550 (S.D. Cal. Aug. 20, 2014) .......... 7

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 17

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   523 F.3d 1091 (9th Cir. 2008) ............................................................................. *passim*

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002) ............................................................................. 12

ii

*Smith v. CRST Van Expedited, Inc.*,
    No. 10-cv-1116-IEG (WMC), 2012 WL 5873701 (S.D. Cal. Nov. 20, 2012) ................................... 12

*Zepeda v. Paypal, Inc.*,
    No. 10-cv-02500-SBA (JCS), 2014 WL 1653246 (N.D. Cal. Apr. 23. 2014).................................. 12

**California Cases**

*Norwest Mortg., Inc. v. Superior Court*,
    72 Cal. App 4th 214 (1999) ........................................................................................................... 17

**Federal Statutes**

28 U.S.C.
    § 1407 ............................................................................................................................................. 14

Federal Food, Drug, and Cosmetic Act, 21 U.S.C.
    § 301, *et. seq.* ............................................................................................................................ 1, 16
    § 343-1(a)(3) ................................................................................................................................... 16

Federal Rules of Civil Procedure
    Rule 23 .............................................................................................................................................. 3
    Rule 23(b)(2) ................................................................................................................................... 16
    Rule 23(e) .......................................................................................................................................... 8
    Rule 23(g) .......................................................................................................................................... 2
    Rule 42 ............................................................................................................................................ 15
    Rule 42(a) ........................................................................................................................................ 15

**Other State Statutes**

Massachusetts General Law 93-A ......................................................................................................... 3

**Other Authorities**

All Writs Act.................................................................................................................................... 2, 14

Anti-Injunction Act ............................................................................................................................... 2

William B. Rubenstein et al., *Newberg on Class Actions* § 13:60 (5th ed. Supp. 2019) .......................... 12

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

## I.   INTRODUCTION

Plaintiff Hilsley's *ex parte* application should be denied because there is no emergency.  Plaintiff seeks to enjoin Ocean Spray from attempting to settle on a national basis in the *Froio* case pending in the District of Massachusetts that currently includes 49 states and could be expanded to include California.  But such a settlement, if it were to occur, would be subject to approval by Judge Saylor, the judge in the District of Massachusetts to whom the *Froio* case is assigned.  *If* such a settlement materializes, and *if* the settlement could affect Plaintiff's interests (neither of which she can show at this point), she will have ample time and opportunity to raise her concerns there.  There is no emergency to justify *ex parte* relief, and no irreparable injury to Plaintiff if this Court declines her entreaty to enjoin proceedings in another federal court.

On the merits, Plaintiff's request for "clarification" of this Court's class certification order is a complete misnomer.  The "clarity" she seeks includes relief that she never requested as part of her class certification motion – namely, that she should be granted a monopoly on any and all settlement efforts, even though she deliberately chose to sue only on behalf of a California class.  Any request for such relief would have been improper at the class certification stage, and it is improper now.  As this Court is aware from prior briefing, the law regarding food labeling is set by federal law (the Food, Drug and Cosmetics Act), and any differences created by state law are expressly preempted.  Accordingly, there could never be any effective "California-only" settlement.  Rather, any negotiated resolution of the core "malic/fumaric acid as flavor" issue was necessarily going to be on a national basis, regardless whether this case or *Froio* provided the vehicle for reaching such a result.  For that reason, any requirement or order that would carve California consumers off and confine their treatment to the *Hilsley* case and only *Hilsley* frustrates the goal of settlement and merely guarantees either more litigation, or indirectly creates an inappropriate monopoly for one group of lawyers in settlement

1

3:17-CV-2335

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

*ACTIVE 44934132v1*

discussion.[1]  The principal difference between Plaintiff and Froio is that Froio elected to sue in Massachusetts, where Ocean Spray has its principal place of business and is therefore subject to general jurisdiction, rather than relying upon California's long-arm statute.  Thus, the *Froio* case does not present the same potential choice of law issues that existed until recently in the Ninth Circuit regarding all multi-state class actions (and which still exist for multi-state litigated class actions), because Ocean Spray is subject generally to Massachusetts law.[2]

As for her requested monopoly, Plaintiff has the law exactly backwards.  She cites *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008) as authority for an order blocking settlements in other courts in favor of an earlier-filed case—but the Ninth Circuit ***rejected*** such an order as an improper injunction that violated the All Writs Act and the Anti-Injunction Act.  Thus, *Negrete* forecloses the relief she seeks.  Plainly put, she cites no other authority to support the relief her *ex parte* application seeks.[3]

---

[1] Plaintiff contorts the advisory committee notes to Rule 23(g) as supporting this sort of nationwide monopoly for a one-state class.  Neither the Rule nor the notes supports this result, and Plaintiff cites no case from any jurisdiction even remotely adopting or endorsing her argument.  Moreover, the entire argument is flatly insupportable in light of the Ninth Circuit's *Negrete* decision, discussed at length below.

[2] A few months after this case was removed, a panel of the Ninth Circuit issued its decision in *Espinosa v. Ahearn* (*In re Huyndai & Kia Fuel Econ. Litig.*), 881 F.3d 679 (9th Cir. 2018), which cast doubt upon the ability of this court to approve any nationwide class settlement, particularly if the settlement and remedies were based upon California state consumer protection law.  The *Froio* plaintiffs filed in the District of Massachusetts, where Ocean Spray has its principal place of business and, therefore, any nationwide settlement that might eventually occur did not present the same issues as in *Ahearn*. When *Ahearn* was recently reversed by an *en banc* panel in June 2019, concerns about this Court's ability to approve a negotiated nationwide settlement were alleviated, but there was never a national class nor settlement proposed in this case.  *See Ahearn v. Espinosa*, 926 F.3d 539 (9th Cir. 2019).  Moreover, by the date the *en banc* decision in *Espinosa* issued, the *Froio* mediation had already been scheduled.  [Shackelford Decl., ¶ 3.]

[3] The remaining orders cited by Plaintiff [Dkt. 199 at 7:27–8:12] are similarly unhelpful. Nothing in any of those orders purported to grant the interim class counsel being appointed the exclusive authority to negotiate regarding matters outside the ordering courts' jurisdiction.

2

In fact, in terms of common sense and judicial economy, it makes sense to resolve the subject claims on a national basis. And Plaintiff has recently confirmed that by filing a Notice of Related Case [Dkt. 198] which states that the "plaintiffs in the *Froio* action *assert identical claims to those asserted in the present Hilsley action* . . . ."[4]

If Plaintiff and her counsel wanted to be the sole arbiters of a national class or national class settlement, they should have requested a national class in the complaint and in the motion for class certification. They did neither. This current motion is a naked power grab, and an improper attempt to achieve that result through the back door. Plaintiff's motion makes no showing whatsoever that there is anything so unique or special about California law or California consumers that their interests could not be protected as part of a national class settlement, if one is achieved. Nor has Plaintiff cited any authority for the proposition that Rule 23, or class certification orders, necessarily create "litigation fiefdoms" that fall under the exclusive domain of a particular group of lawyers. National class settlements happen routinely, approved by district court judges all over the country, even in the face of competing actions pending elsewhere. Again, as the Ninth Circuit made clear in *Negrete*, the role of courts is to police the ***outcome*** of settlement processes in reviewing proposed class settlements to determine they are fair and reasonable—not to police the process by which settlements are negotiated, nor to confer monopoly negotiating power on any "preferred" set of lawyers.

Plaintiff's motion certainly makes no showing that the District Court in Massachusetts is unable to police any outcome in *Froio* by making an appropriate inquiry—indeed, applying a rigorous analysis—to any settlement that might be put before that Court to determine that its terms are fair and reasonable to ***all*** class members, Californians included. Judge Saylor's role in that regard would be no different than the role this Court would have played in evaluating any one-state or national settlement if,

---

[4] Notably, Plaintiff's counsel—the same ones bringing this *ex parte* application—recently served a demand letter under Massachusetts General Law 93-A on behalf of an ostensible Massachusetts consumer. [Shackelford Decl., ¶ 5, Ex. 3.] This was a transparent attempt to gain a toe hold for counsel to inject themselves into the proceedings in Massachusetts.

for example, Plaintiff had not frustrated the mandatory settlement conference this Court ordered to take place over four months ago. Thus, far from enjoining the pending settlement discussions in the *Froio* case (which controlling Ninth Circuit precedent precludes anyway), the Court should stay proceedings in this case until the *Froio* court can consider a motion for preliminary approval.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Has Obstructed Settlement In The Hilsley Case

Although Plaintiff's motion ostensibly seeks "clarity" that her counsel have the sole ability to negotiate settlement of this case, the irony is that she and her counsel have obstructed settlement in this case. This Court's original scheduling order set a mandatory settlement conference date of April 1, 2019 before Magistrate Judge Dembin. [Dkt. 14.] In the weeks leading up to that MSC date, Plaintiff and her counsel refused to produce key damages calculations and refused to produce their survey/damages expert for deposition. Ocean Spray's MSC statement pointed out that Ocean Spray would be in no position to participate meaningfully in an MSC until it had deposed Plaintiff's key experts. Indeed, Ocean Spray had to bring a successful motion to compel the deposition of Plaintiff's key survey/damages expert, Dr. Belch. We do not know what Plaintiff said in her MSC statement, but we do know what happened after Ocean Spray submitted its MSC statement. Literally the day after the MSC statements were submitted, and nearly a week before the MSC was set to occur, Magistrate Judge Dembin entered an order taking the MSC off calendar, concluding it would be "futile." [Dkt. 96.]

Until very recently, this case has been in an aggressive litigation posture with the Court recently resolving three summary judgment motions and a motion to decertify the class. The parties here made no headway in discussing settlement on any basis as long as those motions remained unresolved. In particular, the motion to decertify was litigated over an extended period of time because extensive expert discovery was required as part of that motion. Furthermore, the Court has not heard the last of the shortcomings in Plaintiff's expert reports, because they will be raised in connection with the motions in

4

limine, should this case eventually get that far. In short, although any ***negotiated*** resolution was only ever going to be on a nationwide basis, this case has never been a proper vehicle to achieve such resolution.

### B. Plaintiff Froio Has Cooperated In Settlement Discussions

In sharp contrast, Plaintiff Froio and his counsel in the Massachusetts action have been responsive and cooperative. Although Plaintiff derides the efforts of Froio and his counsel in litigating that matter to date, the simple reality is that the proceedings before this Court in the *Hilsley* case have not been held in a secret star chamber. Most of the evidence, and all of the Courts' rulings, have been publicly available for all the world to see and, more important, to factor into any settlement discussions. Admittedly, the *Froio* team has avoided filing ill-fated motions to exclude experts and has not engaged in such dilatory tactics as refusing produce experts for deposition until compelled to do so by court order. The *Froio* team, unlike Plaintiff, put themselves in a position to conduct a meaningful mediation as scheduled, rather than engage in conduct that would render mediation "futile." But any notion that Ocean Spray has attempted, or would have been able, to negotiate a settlement with some uninformed and complicit group of plaintiff's lawyers is both foolish and far-fetched.

There are limits to what Ocean Spray can disclose at this juncture due to the confidentiality of the *Froio* mediation in Massachusetts. Ocean Spray can confirm that the mediation occurred over 2 days, on June 18, 2019 and resuming on July 18, 2019. Both sessions were held before the Hon. Stephen Neel (Ret.), a respected judge and current JAMS mediator. Again, deferring to the limits of what can be disclosed, it is safe to say that a significant consideration for the *Froio* plaintiffs in mediation was the risk at trial for what this Court has termed the "death knell" [Dkt. 83 at 8:21–22] for the basic claim both here and in Massachusetts—namely, that plaintiffs would eventually get nothing because they could not prove that malic and fumaric acids function as flavors in Ocean Spray's products.

Notwithstanding the mediation confidentiality, there are some facts that can be disclosed. To begin, Ocean Spray produced the same sort of documents to the *Froio* plaintiffs as were produced in this case. Ocean Spray also produced national wholesale sales figures (similar to the California wholesale figures provided to Plaintiff). Both the *Froio* plaintiffs and Judge Neel had access to the publicly available court records in this case. This included motion papers in which Ocean Spray identified what it viewed as significant shortcomings in the reports and methods employed by Plaintiff's experts. In short, the parties had more than sufficient information to conduct meaningful, good faith, arms' length settlement negotiations – indeed precisely the kind of information that Plainitff had kept to herself and rendered the scheduled MSC futile.

At this point, nothing has been made public about the mediation or its outcome. However, Ocean Spray anticipates that the *Froio* plaintiffs will file a motion for preliminary settlement approval within the next 30 days. At that point, the terms of the proposed settlement will be publicly available.

Of course, in support of any motion for preliminary approval, the parties will have to demonstrate that the terms are fair and reasonable and that the settlement was the product of good faith, arms' length negotiations and not collusive. *Prima facie*, a two-day mediation before a retired judge would certainly provide the setting for such a settlement, but ultimately that would be for a court to decide—namely, the United States District Court for the District of Massachusetts. In all events, Ocean Spray cannot be faulted for exploring a resolution that would bring an end to all of this class litigation, nor for doing so with an adversary in a position to produce such a result (Froio), as opposed to negotiating a one-state resolution with Plaintiff that did nothing to address claims in the remaining states.

Let's call Plaintiff's application out for what it is: simply, her lawyers are concerned they might be frozen out of their fees by virtue of a settlement in *Froio*. They have no basis to complain that the interests of any "class," be it California or nationwide, are not protected ***because as of the filing of the ex parte application they had no idea***

*what the terms of any such settlement might be*. For that matter, they still don't know because the mediation confidentiality precludes any disclosure of terms for now. Notably, the same lawyers have put before the Court the docket from *Froio*, so they obviously knew mediation was scheduled, yet they never asked to participate. They never took steps to create the monopoly they are asking this Court to fashion for them. In any event, as discussed below, none of the relief Plaintiff is seeking from this Court is legally available to her. Indeed, the monopoly she seeks is actually foreclosed by binding Ninth Circuit precedent.

## III. ARGUMENT

### A. Plaintiff's Ex Parte Is Improper Because There Is No Emergency

Plaintiff is not entitled to *ex parte* relief because she has not demonstrated any emergency that warrants it. "Ex parte relief is a form of *emergency* relief, which requires the moving party show why regular motion procedures 'must be bypassed' and why the use is justified." *Ewing v. K2 Prop. Dev., LLC*, No. 16-cv-0678-LAB-AGS, 2018 WL 3436970, at *1 (S.D. Cal. July 17, 2018) (emphasis added) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490, 492 (C.D. Cal. 1995)); *Langer v. McHale*, No. 13cv2721-CAB-NLS, 2014 U.S. Dist. LEXIS 183550, at *4 (S.D. Cal. Aug. 20, 2014) ("An ex parte application seeks to bypass the regular noticed motion procedure; consequently, the party requesting ex parte relief must establish a basis for giving the application preference."). "Generally, the moving party must show *irreparable injury or prejudice* will result without emergency relief." *Ewing*, 2018 WL 3436970, at *1.

In her rush to thwart any possible settlement in another action pending in a different district court, Plaintiff fails to establish the existence of any circumstances that could justify her motion, let alone having her motion heard on an *ex parte* basis. Most notably, she cannot point to any such settlement (because nothing has been made public), much less establish that its terms would irreparably injure or prejudice her or that its approval is sufficiently imminent, to justify emergency relief. Plaintiff contends that she went through the *motions* to seek *ex parte* relief by taking the proper steps to notify

Defendant's Opposition to Plaintiff's *Ex Parte* Motion

Ocean Spray's counsel pursuant to the Court's local rules, but neglects to even address why she needs to be heard on an *ex parte* basis in the first place. Neither her motion nor the accompanying declaration of her counsel allege any ***emergency*** or threat of irreparable harm that could justify hearing her motion on an expedited basis. *See AF Holdings LLC v. Doe*, No. 12cv01525 LAB(RBB), 2012 WL 3061481, at *2 (S.D. Cal. July 24, 2012) (denying plaintiff's *ex parte* application to conduct expedited discovery in part because plaintiff failed to "discuss whether its request is a proper subject for *ex parte* consideration or why the regular noticed motion procedures must be bypassed").

Even if the parties reach a settlement in the *Froio* action, that settlement would not have any impact upon Plaintiff's claims, or those of California consumers, until it is approved by the Massachusetts court, something that could not occur quickly or in secret. *See* Fed. R. Civ. P. 23(e) (setting forth detailed procedures for obtaining court approval of a class action settlement); *see also Ciuffitelli v. Deloitte & Touche LP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, at *6 (D. Or. Mar. 19, 2019) ("The process of approving a class action settlement involves multiple steps and can be time consuming."). In the event Plaintiff concludes that any such settlement in fact could cause her irreparable injury or prejudice (which fear, for now, is uninformed and baseless), she would have time to take appropriate steps to raise her concerns in an orderly fashion, not through the kind of manufactured emergency her *ex parte* application seeks to create.

There simply is no emergency here. Any settlement reached in *Froio* would not be approved in the time it would take Plaintiff to properly notice her motion for regular hearing. And any harm that Plaintiff could possibly presume to suffer as a result of a settlement that might be announced in *Froio* is not irreparable, because she does not even know what those terms might be, much less that she would be harmed by them.

*Ex parte* motion practice is not proper just because a party would prefer to have relief granted sooner rather than later; it must be justified by compelling proof of some emergency or threat of irreparable harm. Plaintiff has failed to present any and her application should be denied.

**B.     The Ninth Circuit Has Prohibited Injunctive Relief Against Other Settlements In Other Cases**

Plaintiff's accusations that Ocean Spray is engaging in a nefarious-sounding "reverse auction" are completely unfounded, and do not give this Court any authority to enjoin Ocean Spray from simultaneously negotiating a nationwide settlement of similar claims raised in a class action filed in a different forum. In fact, the precise relief Plaintiff seeks has been prohibited by the leading case cited (but not discussed) in her own moving papers, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008).

In *Negrete*, the Ninth Circuit ***reversed*** an order from the Central District that prevented the defendants from proceeding with settlement negotiations in similar class actions in other federal districts without first obtaining permission from the plaintiff's counsel. As in *Negrete*, *see id.* at 1095, Plaintiff's counsel submitted a proposed order that effectively would create an injunction precluding any other class representative, class counsel, or other court from doing anything that would indirectly affect Plaintiff's recovery of damages and fees:

> The Law Offices of Ronald A. Marron and the Law Office of David Elliot and their individual attorneys ("Class Counsel") ***shall have the sole authority to perform or delegate*** as appropriate the following tasks ***on behalf of the certified Class***:
>
> a)     Conduct ***settlement negotiations*** with Defendant and if there is a settlement, propose a ***claims protocol*** and plan of allocation;
>
> b)     Enter into ***stipulations and/or agreements with opposing counsel*** as necessary for the conduct of the litigation;
>
> c)     Determine and ***present*** (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties ***the position of the Plaintiff and the Class on all matters*** arising during pretrial proceedings and at trial;
>
> d)     ***Coordinate and conduct discovery*** on behalf of Plaintiff and the Class consistent with the requirements of the Federal Rules;
>
> e)     ***Allocate the distribution of attorneys' fees*** and reimbursement of expenses ordered by the Court, if any; and

9

f) **Perform such other duties as may be incidental** to the proper coordination of pretrial and trial activities authorized by further order of this Court.

The Court hereby retains **jurisdiction over the claims of the certified Class for all purposes, including settlement approval**.

[Proposed Order submitted by Plaintiff on July 25, 2019, emphasis added.]

By seeking a veto power on any **national** settlements, Plaintiff wants the Court to force Ocean Spray to negotiate "exclusively" with her and her counsel, even though they are not in a position to provide complete relief or to put an end to this litigation because of her tactical decision to pursue only one-state relief, even though the issues raised by her claims are necessarily governed by federal food labeling law. That is improper, unlawful, and merely ensures more and further litigation, not an end to it. Plaintiff hopes that by framing her request as merely asking this Court to "amend" and "clarify" its earlier class certification order to provide relief she never requested, [Dkt. 199 at 6:1820], the Court will not notice the substance and effect of what she seeks. But that is exactly the same type of disguised injunction that the Ninth Circuit rejected in *Negrete*:

> The order **enjoins Allianz from even discussing settlements** in other cases that could affect any claims in this litigation, without obtaining the permission of its opponent in this litigation or allowing its opponent to actually conduct the discussions; it further **precludes any proposed settlement of other cases** without the approval of this district court. **In practical effect, it was an injunction**. The consequences of the order are serious to say the least—none of the other cases in which Allianz is, or may be, involved can be settled by or in the other courts in which they are located absent permission of Negrete Counsel and the court in this case. . . . Nor does **Negrete's attempt to characterize the order as nothing more than a scheduling order** change our analysis. That is just another **inventive label with no real substance**. The order does not set forth a mere pretrial procedure, or merely prescribe the conduct of the parties while they await trial. As already explained, the order **effectively precludes Allianz from proceeding in other actions brought against it in other courts**. In fact, the district court recognized as much when it declared that it did not presently intend to enforce the order as to certain other federal actions because it did not wish to interfere with the other judges' handling of the progress of those actions at that time.

10

*Negrete*, 531 F.3d at 1097 (emphasis added).

Thus, Plaintiff is trying to do here exactly what the Ninth Circuit in *Negrete* said was improper. [5] And in support of those efforts, Plaintiff tries to play a similar trump card as did the Plaintiff in *Negrete*: accusing Ocean Spray of engaging in a reverse auction. But Plaintiff ignores the fact that the Ninth Circuit categorically dismissed Negrete's argument based on an alleged reverse auction, noting that "[e]ven supposing that [a reverse auction] would be enough to justify an injunction of one district court by another one, there is no evidence of underhanded activity in this case." *Id.* at 1099. The Ninth Circuit then explained that allowing one district court to enjoin proceedings in another whenever the specter of a reverse auction was raised would have the practical effect of foreclosing the possibility of ever settling competing class actions: "none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Id.* at 1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002). [6] Plaintiff's argument assumes the very worst in both Ocean Spray and the *Froio* team, but also assumes that another federal court, in the person of Judge Saylor of the District of Massachusetts, would be unable to see through any collusive settlement.

Even if the Court were to accept Plaintiff's insinuation that the mere ***possibility*** of a so-called "reverse auction" was grounds to enjoin proceedings in another district court (a position the Ninth Circuit declined to endorse), Plaintiff would still not be entitled to the relief she seeks because she has failed to substantiate her accusations. *See id.* at 1109 ("Negrete Counsel floated out the specter of a reverse auction, but brought forth no facts

---

[5] Indeed, if the law were as Plaintiff argues, the *Froio* plaintiffs would be filing papers in the District of Massachusetts seeking to enjoin any efforts by Plaintiff to swoop in and settle before the *Froio* court could consider a motion for preliminary approval.
[6] The "reverse auction" specter was also raised recently in *Espinosa v. Ahearn*, 926 F.3d 539 (9th Cir. 2019). Despite having the opportunity to condemn such "auctions" outright (if the law actually condemned them as such), the *en banc* panel of the Ninth Circuit again brushed "reverse auction" objections aside as unsupported by any evidence. *Id.* at 569.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION
ACTIVE 44934132v1

to give that eidolon more substance.").  And the Ninth Circuit is not alone in rejecting unfounded assertions of a "reverse auction" as a basis for interfering with efforts to settle class actions.  *See, e.g. Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) ("Absent some more concrete evidence of collusion than Objector's conclusory allegations and inferences, we decline to disturb the district court's conclusion that the settlement was not a collusive reverse auction."); *Zepeda v. Paypal, Inc.*, No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, at *7 (N.D. Cal. Apr. 23. 2014) (ignoring allegations of a reverse auction that were "conclusory and unsupported by evidence"); *Smith v. CRST Van Expedited, Inc.*, No. 10-cv-1116-IEG (WMC), 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012) ("[T]hough Cole makes passing reference to the possibility of a reverse auction, he makes no showing of anything suggesting impropriety on the part of the settling parties."). Here, Plaintiff offers no evidence of a "reverse auction" beyond baseless conclusory allegations and the fact that the *Froio* action was filed after *Hilsley*. As the preceding cases—including the one case Plaintiff herself relies upon—establish, that is not enough.[7]  Moreover, the fact of a mediator-supervised process that would require approval by a district court judge creates a more-than-adequate safeguard against the specter of an unfair settlement.

The appointment of Plaintiff's counsel as class counsel changes nothing—especially in light of the litigation conduct that frustrated settlement prospects in the *Hilsley* case.  In this regard, Judge Bernal's opinion in *Hibler v. Santander Consumer USA, Inc.*, Case No EDCV-13-1354-JGB, 2013 WL 12137716 (C.D. Cal. Nov. 21, 2013) iS instructive.  There, a series of class actions had been filed in 2011, and several were consolidated in the Northern District of Illinois, with Espejo as lead plaintiff and his counsel was appointed as interim lead counsel.  Espejo and the defendant engaged in

---

[7] Plaintiff's companion citation to Newburg on Class Actions is similarly unavailing, as the section she cites relates to potential issues in *approving* a class settlement, and not the enjoining of a settlement in one district by a court in another. *See* William B. Rubenstein et al., *Newberg on Class Actions* § 13:60 (5th ed. Supp. 2019) (discussing reverse auctions in the context of settlement approval).

mediation in August 2013, but that mediation broke down, eventually prompting the mediator to inform the parties that "perpetuating the appearance of an ongoing mediation when there is an apparently irreconcilable disagreement seems inappropriate to me, so I will close my file and consider the mediation as terminated." *Id*., at *2, n.6.

Enter plaintiff Hibler, whose complaint was filed in the Central District of California on August 2, 2013 – some two years ***after*** the cases consolidated in the Northern District of Illinois, and only a few days before the Espejo-led mediation terminated. The defendant, notwithstanding the appointment of Espejo's counsel as "interim lead counsel," engaged in mediation with Hibler before a different mediator, Judge Papas. As the court noted, "During the mediation and subsequent negotiations, Defendant contends he never disclosed nor discussed with Judge Papas or [Hibler's] counsel the terms of the proposed settlement between Defendant and [Espejo]." *Id*. at *2. Hibler and defendant eventually concluded a global settlement that would resolve all claims pending in all of the various class actions, including *Espejo*. *Id*.

In rejecting Espejo's efforts to intervene in the *Hibler* case, Judge Bernal rejected Espejo's suggestions that the *Hibler* settlement was the product of a collusive reverse auction. The court specifically noted that the *Hibler* settlement had been reached through mediation before an experienced judge and negotiated between experienced counsel. *Id*. at *5, n.11. The court further noted that that Espejo's rights were protected because he could object to the settlement and/or opt out if he was unhappy with it. *Id*. at *4. Similarly here, if a settlement ultimately materializes in *Froio*, those same avenues of relief are available to Plaintiff. What is not available is the kind of court-ordered roadblock she is requesting to prevent any settlement negotiations from occurring or settlement being reached in the *Froio* case.

Possibly recognizing that *Negrete* does not support her, Plaintiff recently filed a procedurally unauthorized "response" [Dkt. 203] to Ocean Spray's required notice of opposition, and relied upon a district court case decided three years before the Ninth Circuits' *Negrete* decision: *In re Am. Online Spin-Off Accounts Litig.*, No. 04-1581-

13

RSWL, 2005 WL 5747463 (C.D. Cal. May 9, 2005). In addition to being inconsistent with *Negrete*, that case is completely distinguishable. There, a total of twelve class actions alleging that AOL opened spin-off sub accounts ("SOSAs") without permission were consolidated in the Central District pursuant to the multidistrict litigation statute, 28 U.S.C. § 1407. *Id.* at *1. Months later—apparently after some unsuccessful attempts by the defendant to settle the MDL actions—AOL reached a settlement in a ***separate*** class action pending in an Illinois ***state court***. *Id.* at *2. The MDL plaintiffs subsequently sought an order enjoining the Illinois settlement from proceeding, claiming that "when AOL was unsuccessful in settling the MDL SOSA litigation before this Court, it secretly negotiated to settle the MDL SOSA claims in a completely unrelated non-SOSA state court." *Id.* at *3.[8] The district court eventually held that an injunction was warranted under the All Writs Act, noting that the case presented extraordinary circumstances.

The court based its decision on two distinguishing facts. First, the court noted that "the parties have begun -settlement [sic] negotiations in the MDL litigation" and that settlement of the Illinois action would likely "eviscerat[e] the Court's MDL jurisdiction over the putative SOSA class." *Id.* at *5. Second, the court also noted that enjoining the Illinois settlement in favor of the MDL proceedings was in line with the purposes of the MDL statute—"to allow 'centralization' and to prevent the type of forum-shopping that can occur from reverse auctions." *Id.*

Neither element is present here. By her own conduct, Plaintiff impeded settlement discussions to the point that Magistrate Judge Dembin cancelled a Court-ordered and scheduled mandatory settlement conference on the grounds that "a settlement conference at this time is futile." [Dkt. 96.] Additionally, there have been no MDL proceedings initiated regarding Ocean Spray's juices, so any centralization policy is inapplicable.[9]

---

[8] By filing her purported notice of related case, Plaintiff has conceded that at least the "unrelated" component in *AOL* is missing here.

[9] Additionally, *America Online* is distinguishable because there was evidence of some collusion between AOL and the Illinois plaintiffs, something that is entirely absent here. In support of their motion, the MDL plaintiffs noted that no references had been made to

14

### C. Plaintiff's Notice To Relate The Froio Case Is An Admission That The Subject Cases Should Be Settled On A National Basis

Plaintiff's attempt to enjoin a national settlement is completely undermined by her recently filed Notice of Related Case. [Dkt. 198]. In that Notice, Plaintiff asserts that:

> The plaintiffs in the *Froio* action **assert identical claims to those asserted in the present Hilsley action** that certain Ocean Spray juice products contain undisclosed flavoring ingredients called malic acid and fumaric acid despite being labeled as containing "No Artificial Flavors." *Froio* Compl., ¶¶ 17-33. The *Froio* plaintiffs seek to represent a class defined as "all persons in the United States who purchased the Products during the class period, excluding people in California" as well as Massachusetts and New York sub-classes. *Froio* Compl., ¶ 46. The *Froio* plaintiffs assert consumer protection claims under the laws of Massachusetts and New York. ***Assignment to a single district judge would be likely to effect a saving of judicial efforts and resources***. However, the *Froio* action is currently pending before the Honorable Judge F. Dennis Saylor, IV of the United States District Court for the District of Massachusetts. For the foregoing reasons, Plaintiff hereby provides notice that *Froio* is related to the present action.

[*Id.,* emphasis added]

Regardless of the merits of Plaintiff's Notice,[10] relating cases is appropriate where the cases at issue "involve a common question of law or fact." Fed. R. Civ. P. 42(a).

_____

SOSAs in the Illinois action until the day the Illinois plaintiffs simultaneously filed an amended complaint and a motion to approve their settlement with AOL. *Id.* at *2. A similar situation is not present in the *Froio* litigation. [*See* Dkt. 199, Ex. 1 (September 24, 2018 class action complaint from the *Froio* action).] Indeed, Plaintiff's own moving papers establish that the fact and date of mediation in *Froio* were posted on the docket. Nothing was carried out in secret.

[10] Ocean Spray notes that Rule 42 does not confer authority on courts to consolidate actions pending in different district courts. *See Elec. Payment Sys. v. Elec. Payment Sols. of Am. Inc.*, No. 1:14-cv-02624-WYD-MEH, 2019 WL 2106416, at *1-2 (D. Colo. Jan. 17, 2019) (citing cases from several circuits for the proposition that "when a party moves to consolidate cases pending in different districts, the court so moved lacks the authority to grant the motion").

Thus, Plaintiff cannot—with any consistency—file a Notice in which she informs the Court that the two cases are so similar that "[a]ssignment to a single district judge would be likely to effect a saving of judicial efforts and resources," [Dkt. 198, at 1:14–15], and then at the same time argue that Ocean Spray should be barred from effecting any settlement on a nationwide basis, consistent with FDCA labeling requirements. There is simply no room for state-by-state relief.

## D. This Case Should Be Stayed Pending A National Settlement in *Froio*.

Food labels are governed by the Food, Drug, and Cosmetic Act on a national basis, and food labels must therefore be consistent on a national basis. *See* 21 U.S.C. § 343-1(a)(3) ("[N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce– . . . any requirement for the labeling of food of the type required by section . . . 343(k) . . . that is not identical to the requirement of such section."); *Brod v. Sioux Honey Ass'n*, 927 F. Supp. 2d 811, 822 (N.D. Cal. 2013) ("The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et. seq.*, establishes national uniform food labeling requirements."). Ocean Spray is a manufacturer and sells to distributors and retailers, so it cannot control which bottles go to which states. Therefore, any potential injunctive relief that could be part of a settlement (e.g., label changes) would have be made on a consistent, national basis, and any injunctive relief for a Rule 23(b)(2) class would likewise have to be implemented on a national basis. There is no room for any "California-specific" relief.

The *Froio* case has three significant advantages for producing a resolution compared to the *Hilsley* case. First, that case already includes most of the country—with a putative class representing 49 of the 50 states, and can easily be expanded to cover all 50 states, thereby putting an end to both cases. "The Ninth Circuit maintains a 'strong judicial policy' in favor of settlement of class actions." *Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-CV-00182-H-BLM, 2018 WL 1470198 at *4 (S.D. Cal. Mar. 26, 2018); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* MOTION

Second, Ocean Spray is headquartered in Massachusetts, the venue for the *Froio* action. Accordingly, there is no issue with extraterritorial application of any state consumer protection law; Massachusetts law is generally applicable to Ocean Spray's activities *vis a vis* consumers. The same is not true for this Court, because there are limits on the extra-territorial application of California's consumer protection laws as pertains to non-citizen corporations (like Ocean Spray) and non-California consumers. *See Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App 4th 214, 223-24 (1999) (California's UCL does not apply to foreign corporation's conduct that occurs outside California and may harm non-California residents); *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (reversing certification of nationwide class based on assumption that California law could apply to transactions outside California involving non-California citizens).

Third, settlement discussions in *Froio* have made significant progress, while Plaintiff has rendered even court-ordered settlement discussion futile. This case should be stayed in deference to those advanced discussions to see if a final settlement can be approved in *Froio*. *Jaffe v. Morgan Stanley DW, Inc.*, 2007 WL 163196 (N.D. Cal. Jan 19, 2007) (granting two month stay to allow advanced settlement negotiations to play out in a parallel case).

## IV.  CONCLUSION

Plaintiff's *ex parte* application is procedurally defective and wrong on the law. But it does highlight the need for a consistent and comprehensive national solution to the malic acid cases. Ocean Spray respectfully requests that Plaintiff's *ex parte* should be denied, and in particular that her proposed order should be rejected as being an unlawful injunction against other proceedings and settlements. Ocean Spray further respectfully requests that the Court stay further proceedings in this case for 60 days to see if the

//

//

ACTIVE 44934132v1

settlement in *Froio* can be expanded to include California, which would resolve this dispute in all 50 states.

Dated:  August 1, 2019

Respectfully submitted,

GREENBERG TRAURIG, LLP


By:   */s/:  Rick L. Shackelford*

Rick L. Shackelford
Adam Siegler
Attorneys for Defendants
Ocean Spray Cranberries, Inc. and
Arnold Worldwide, LLC

ACTIVE 44934132v1