**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiffs and the Class***

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CRYSTAL HILSLEY and WILLIAM RILEY, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  vs.<br><br>OCEAN SPRAY CRANBERRIES, INC.,<br><br>     Defendant. | CASE NO. 3:17-CV-2335-GPC-MDD<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  January 24, 2020<br>Time:  1:30 p.m.<br>Ctrm:  2D<br>Judge: Hon. Gonzalo P. Curiel |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................2

III.    SUMMARY OF THE PROPOSED SETTLEMENT ...................................6

   A.   The Settlement Class.........................................................................6

   B.   Settlement Consideration ..................................................................7

      1.   *Monetary Relief* ..........................................................................7

      2.   *Non-Monetary Relief* ..................................................................7

   C.   The Notice Program and Settlement Administration ....................8

   D.   Claims Process .....................................................................................8

   E.   Opt-Out and Objection Procedures.................................................9

   F.   Release of Claims ...............................................................................10

   G.   Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards .......10

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL ......................11

V.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..................................................................................................13

   A.   Plaintiffs and Class Counsel Have Adequately Represented the  Class......13

   B.   The Settlement was Negotiated at Arm's Length.........................14

   C.   The Relief Provided to the Class is Adequate .............................16

      1.   *The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval* ...........................................................................................17

      2.   *The Proposed Method of Distributing Relief to the Class Is Effective* ....18

      3.   *The Proposed Attorneys' Fee Award is Fair and Reasonable* ...............18

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

4.   *No Side Agreements Were Made in Connection with the Proposed Settlement* .................................................................................19

D.   The Proposed Settlement Treats Class Members Equitably Relative to Each Other..............................................................................................19

VI.   THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER ..............................20

A.   The Court Can Certify a Settlement Class That Is Broader Than the Certified California Litigation Class..........................................................20

B.   The Proposed Nationwide Settlement Class Should be Certified ..............21

1.   *The Class Satisfies Rule 23(a)*................................................21

a.   Numerosity........................................................21

b.   Commonality.....................................................22

c.   Typicality..........................................................23

d.   Adequacy..........................................................23

2.   *The Class Satisfies Rule 23(b)(3)*..........................................24

a.   Common Questions of Law and Fact Predominate .............................24

b.   A Class Action Is the Superior Mechanism for Adjudicating this Dispute ..........................................................26

VII.   THE PROPOSED NOTICE PLAN IS ADEQUATE AND SHOULD BE APPROVED..........................................................................................27

VIII.   PROPOSED SCHEDULE OF EVENTS........................................29

IX.   CONCLUSION.........................................................................30

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)................................................................ 21, 24

*Arnold v. United Artists Theatre Circuit, Inc.,*
   158 F.R.D. 439 (N.D. Cal. 1994)...............................................22

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004) ....................................................12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.,*
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .......................17

*Fulford v. Logitech, Inc.,*
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ....................18

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982)..................................................................23

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ......................................... 12, 13

*Hefler v. Wells Fargo & Co.,*
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018).......................13

*In re Anthem, Inc. Data Breach Litig.,*
   327 F.R.D. 299 (N.D. Cal. 2018)..............................................26

*In re Extreme Networks, Inc. Securities Litigation,*
   2019 WL 3290770 (N.D. Cal. July 22, 2019) .......................13

*In re Hyundai & Kia Fuel Econ. Litig.,*
   926 F.3d 539 (9th Cir. 2019) ............................................ 25, 26

*In re MDC Holdings Securities Litigation,*
   754 F.Supp. 785 (S.D. Cal. 1990)............................................25

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 454 (9th Cir. 2000) ....................................................13

iii

*In re Omnivision Techs., Inc.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................14

*In re Seagate Technologies Sec. Litigation*,

    115 F.R.D. 264 (N.D. Cal. 1987)..........................................................................25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

    *Prod. Liab. Litig.*,

    2013 WL 3224585 (C.D. Cal. June 17, 2013) ....................................................18

*Mazza v. Am. Honda Motor Co.*,

    666 F.3d 581 (9th Cir. 2012) ..............................................................................25

*McGrath v. Wyndham Resort Dev. Corp*,

    2018 WL 637858 (S.D. Cal. Jan. 30, 2018).......................................................18

*Mollicone v. Universal Handicraft*,

    2018 WL 3913689 (S.D. Fla. Aug. 14, 2018) ....................................................19

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

    221 F.R.D. 523 (C.D. Cal. 2004).........................................................................15

*Rodriguez v. W. Publ'g Corp.*,

    563 F.3d 948 (9th Cir. 2009) ..............................................................................14

*Singer v. Becton Dickinson & Co.*,

    2010 WL 2196104 (S.D. Cal. June 1, 2010).......................................................19

*Slaven v. BP Am., Inc.*,

    190 F.R.D. 649 (C.D. Cal. 2000).........................................................................22

*Sullivan v. DB Investments, Inc.*,

    667 F.3d 273 (3d Cir. 2011).................................................................................26

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................19

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011)..............................................................................................22

*Weeks v. Kellogg Co.*,

    2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ...................................................19

iv

*Zamora Jordan v. Nationstar Mortg., LLC,*
    2019 WL 1966112 (E.D. Wash. May 2, 2019) .......................................... 11, 12
*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ..................................................................24

**Statutes**

Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") ...................................3, 4

Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"). ..................................3, 4

Cal. Civ. Code §§ 1750, et seq. ("CLRA") .................................................3, 4

Massachusetts Consumer Protection Act, MGL Ch. 93A ............................4

Massachusetts General Laws Ch. 266 § 91 ..................................................4

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................... 21, 24

Fed. R. Civ. P. 23(a)(2) ............................................................................22

Fed. R. Civ. P. 23(a)(3) ............................................................................23

Fed. R. Civ. P. 23(a)(4) ............................................................................23

Fed. R. Civ. P. 23(e) .................................................................................11

Fed. R. Civ. P. 23(e)(2) ......................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................13

Fed. R. Civ. P. 23(e)(2)(B) ......................................................................14

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................16

Fed. R. Civ. P. 23(e)(2)(D) ......................................................................19

Fed. R. Civ. P. 23(e)(3) ............................................................................19

Rule 23 ................................................................................................. 21, 27

Rule 23(a)(1) ...........................................................................................21

Rule 23(b)(3) ...........................................................................................24

Rule 23(c)(2)(B) .......................................................................................27

**Other Authorities**

1 H. Newberg & Conte, *Newberg on Class Actions* § 3.10 (1992) .........................22

v

*Manual*, § 21.633 ..................................................................27

NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.) .......................................13

NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) .......................................14

NEWBERG ON CLASS ACTIONS § 13:50 (5th ed.) .......................................15

NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.) .......................................16

NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.) .......................................18

NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.) .......................................20

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Crystal Hilsley and William Riley ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement with Defendant Ocean Spray Cranberries, Inc. ("Ocean Spray" or "Defendant") and state as follows:

## I.   <u>INTRODUCTION</u>

After hard-fought litigation with written discovery, depositions, contested motion practice, expert discovery, and extensive settlement negotiations, Plaintiffs and Ocean Spray reached this proposed Settlement. The Settlement Agreement establishes both monetary and non-monetary relief and requires Ocean Spray to pay $5,400,000 into a **non-reversionary** settlement fund.[1] If approved, the Settlement will bring an end to what has been, and likely would continue to be, highly contentious and costly litigation centered upon unsettled legal questions.

Therefore, this motion seeks the entry of an order providing for, among other things: (1) preliminary approval of the Settlement; (2) preliminary certification of a Settlement Class and appointment of the Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (3) approval of the Settlement Administrator; (4) approval of the Notice program; (5) approval of the Claims process; and (6) the scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Settling Parties' proposed Settlement is exceedingly fair, and well within the range of preliminary approval for several reasons. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Ocean Spray's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in substantial discovery, motion practice, and extensive arm's-length negotiations. Third, the Settlement was not conditioned on any amount of attorneys'

---

[1] A copy of the Settlement Agreement ("Agreement") is attached to the concurrently filed Declaration of Ronald A. Marron in Support of Plaintiffs' Motion for Preliminary Approval ("Marron Decl.") as Exhibit 1. Capitalized terms in this Motion have the same meaning as the capitalized terms defined in the Agreement.

1

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

fees for Class Counsel or Incentive Awards for Plaintiffs, which speaks to the fundamental fairness of the process. For all of these reasons, and as further described below, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This action was originally filed by plaintiff Crystal Hilsley ("Hilsley") against Ocean Spray Cranberries, Inc. ("Ocean Spray") and Arnold Worldwide, LLC ("Arnold Worldwide") in the Superior Court of California for the County of San Diego. (Dkt. No. 1). On November 16, 2017, Ocean Spray removed the action to this Court. (Dkt. No. 1). The gravamen of Plaintiff Hilsley's Complaint was that the Ocean Spray product labels claiming that certain Ocean Spray beverage products (the "Products") contain "No Artificial Flavors" are false and misleading because the Products actually contain artificial ingredients, dl-malic acid and fumaric acid, that function as flavors. (*See* Dkt. No. 1-2 ("Compl."), ¶¶ 32, 54). Plaintiff alleged that she paid a premium for Ocean Spray Products believing that the Products contained "No Artificial Flavors." (Compl., ¶ 67). Hilsley sought both monetary damages and injunctive relief for the following claims: (1) Violations of the Consumers Legal Remedies Act, Cal. Civ. Code Sections 1750, *et seq*.; (2) Violations of the False Advertising law, Cal. Bus. & Prof. Code Sections 17500, *et seq*.; (3) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code Sections 17200, *et seq*.; (4) Breach of Express Warranties; and (5) Breach of Implied Warranties. (Dkt. No. 1-2). Ocean Spray has denied any and all allegations, including because the named acids were used as acidulants and not artificial flavors in the Products.

On August 16, 2018, Plaintiff Hilsley filed a Motion for Class Certification and to Appoint Class Counsel. (Dkt. No. 23). On November 29, 2018, the Court issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification and to Appoint Class Counsel. (Dkt. No. 83). Class certification was granted with respect to Plaintiff Hilsley's claims under the Consumers Legal

2

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), and the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"). (Dkt. No. 83). However, the Court denied class certification for Plaintiff Hilsley's claims for breach of express and implied warranties. (Dkt. No. 83). On September 8, 2018, Ocean Spray filed a Motion for Summary Judgment. (Dkt. No. 31). On October 30, 2018, the Court issued an Order Denying Defendants' Motion for Summary Judgment. (Dkt. No. 76).

On March 27, 2019, Plaintiff Hilsley filed a Motion for Partial Summary Judgment and on April 11, 2019, Plaintiff Hilsley filed a Motion to Exclude the Testimony, Opinions, and Reports of Defendants' Experts. (Dkt. Nos. 101, 105). On April 11, 2019, Defendant Ocean Spray Cranberries, Inc. filed a Motion for Summary Judgment and a Motion to Decertify the Class. (Dkt. Nos. 108-109). On April 11, 2019, Arnold Worldwide, LLC, filed a Motion for Summary Judgment. (Dkt. No. 111). On June 24, 2019, the Court denied Plaintiff's Motion to Exclude Defendant's Experts. (Dkt. No. 188). On July 3, 2019, the Court granted in part and denied in part Plaintiff's Motion for Partial Summary Judgment, denied Defendant Ocean Spray's Motion for Summary Judgment, and granted Defendant Arnold Worldwide, LLC's Motion for Summary Judgment. (Dkt. No. 193). Defendant Arnold Worldwide, LLC was dismissed as a Defendant and several of Ocean Spray's affirmative defenses were dismissed. *See id*. On July 10, 2019, the Court denied Ocean Spray's Motion to Decertify the Class. (Dkt. No. 196).

Plaintiff and Ocean Spray both filed Rule 26(a)(3)(A) Pretrial Disclosures on July 26, 2019. (Dkt. Nos. 201, 202). On July 25, 2019, Plaintiff filed a Notice of Related Case, asserting that the action titled *Froio, et al. v. Ocean Spray Cranberries, Inc.*, Case No. 1:18-cv-12005-FDS (D. Mass. Sept. 24, 2018) ("*Froio*") is related to the instant action. (Dkt. No. 198). That same day, July 25, 2019, Plaintiff Hilsley filed an *Ex Parte* Motion to Clarify and Amend Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification and Appointing Class

3

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Counsel. (Dkt. No. 199). On August 2, 2019, Ocean Spray filed an Opposition to Plaintiff's Notice of Related Case and an Opposition to Plaintiff's *Ex Parte* Motion. (Dkt. Nos. 204-205). On August 22, 2019, Ocean Spray filed a Motion to Stay the *Hilsley* action in light of a "memorandum of understanding [that] ha[d] recently been executed between the parties to the *Froio* action" that would include a nationwide class action settlement. (Dkt. No. 210).

The Parties attended a Pretrial Conference that took place on August 23, 2019. Marron Decl., ¶ 12. During the Pretrial Conference, the Court entered an Order setting a trial date for November 4, 2019, but encouraged the Parties to discuss a resolution of the Hilsley matter. (Dkt. No.  213; *see also* Marron Decl., ¶ 12). Thereafter, the Parties in this action began engaging in meaningful settlement negotiations. Marron Decl., ¶ 12. On August 26, 2019, Magistrate Judge Mitchell D. Dembin ordered a settlement conference to be held on September 19, 2019. (Dkt. No. 212; Marron Decl., ¶ 13). On September 4, 2019, Defendant filed a Notice of Withdrawal of its Motion to Stay Proceedings to allow for continued settlement negotiations. (Dkt. No. 216). Plaintiffs Hilsley and Riley filed a First Amended Complaint on October 25, 2019. (Dkt. No. 228). The First Amended Complaint pursues a nationwide class and seeks both monetary damages and injunctive relief for the following claims: (1) Violations of the Consumers Legal Remedies Act, Cal. Civ. Code Sections 1750, *et seq.*; (2) Violations of the False Advertising law, Cal. Bus. & Prof. Code Sections 17500, *et seq.*; (3) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code Sections 17200, *et seq.*; (4) Violations of the Massachusetts Consumer Protection Act, MGL Ch. 93A; and (5) Violations of Massachusetts General Laws Chapter 266 § 91.

Prior to and during the settlement conference held before Magistrate Judge Dembin, the Parties engaged in hard-fought settlement negotiations that resulted in the Settlement Agreement. Marron Decl., ¶ 13. The time that it took to work out significant details and vigorous disagreements between the parties demonstrate that this proposed resolution was the product of heavily disputed and arm's length

4

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

negotiation. Marron Decl., ¶ 13.

The Parties have also engaged in substantial discovery. Marron Decl., ¶ 4. On April 6, 2018, Hilsley served a first set of Requests for Production of Documents ("RFPs") on Ocean Spray. Marron Decl., ¶ 4. On June 8, 2018, Plaintiff Hilsley served a first set of Interrogatories ("ROGs") and a second set of RFPs on Ocean Spray. Marron Decl., ¶ 4. On June 1, 2018, Ocean Spray served RFPs and ROGs on Plaintiff Hilsley. Marron Decl., ¶ 4.  On October 3, 2018, Ocean Spray served a second set of RFPs on Plaintiff Hilsley. Marron Decl., ¶ 4. Plaintiff Hilsley served objections and responses to Ocean Spray's first set of discovery on July 5, 2018 and second set of RFPs on November 1, 2018. Marron Decl., ¶ 5.  On May 4, 2018, Ocean Spray served objections and responses to Hilsley's first set of RFPs and on July 9, 2018, Ocean Spray served objections and responses to Hilsley's first set of ROGs and second set of RFPs. Marron Decl., ¶ 5. On August 11, 2018, Plaintiff Hilsley filed an *ex parte* motion to compel Ocean Spray to respond to discovery requests. Marron Decl., ¶ 6.  On September 20, 2018, this Court granted in part and denied in part Hilsley's Motion to Compel, and on October 3, 2018, Ocean Spray served supplemental responses to Hilsley's interrogatories pursuant to the Court's Order. Marron Decl., ¶ 6. The supplemental responses provided important sales information that helped Plaintiff formulate her damages model. Marron Decl., ¶ 6.

On April 30, 2018, Plaintiff Hilsley served a 30(b)(6) deposition notice on Ocean Spray. Marron Decl., ¶ 7.  On June 20, 2018, Ocean Spray served objections and responses to Hilsley's 30(b)(6) notice. Marron Decl., ¶ 7. On June 27, 2018, Plaintiff Hilsley took the 30(b)(6) deposition of Erich Fritz. Marron Decl., ¶ 7. On June 27, 2019, Ocean Spray served a notice of deposition with document requests on Plaintiff Hilsley and an amended notice of deposition on July 31, 2018. Marron Decl., ¶ 8.  Plaintiff served objections and responses to Defendant's amended deposition notice on August 3, 2018. Marron Decl., ¶ 8.  On August 4, 2018, Defendant Ocean Spray took the deposition of Plaintiff Hilsley. Marron Decl., ¶ 8. On September 27, 2018 Hilsley served a deposition subpoena that included several

document requests on Tate & Lyle, Ocean Spray's malic acid ingredient supplier, and on October 22, 2018, Hilsley took the deposition of Matthew Duane, Tate & Lyle's person most knowledgeable. Marron Decl., ¶ 9. In response to Hilsley's subpoena, Tate & Lyle produced several documents that Plaintiff believed were crucial to Hilsley's claims in the litigation, including the artificial nature of malic acid and its alleged function as a flavoring ingredient. Marron Decl., ¶ 9. On June 21, 2018, Plaintiff Hilsley served subpoenas on a number of retailers of Ocean Spray products, including Ralphs Grocery Company, Target Corporation, the Vons Companies, Walmart, Inc., and Costco Wholesale Corporation. Marron Decl., ¶ 10. On May 10, 2019, Plaintiff Hilsley served a subpoena on IRI and obtained retail level sales information regarding the Ocean Spray Products. Marron Decl., ¶ 10.

Both Plaintiff and Defendant retained several experts who submitted expert reports or rebuttal expert reports. Marron Decl., ¶ 11. Drs. Laszlo P. Somogyi, George E. Belch, Alan G. Goedde, and Henry Chin submitted expert reports in support of Plaintiff Hilsley's position. Marron Decl., ¶ 11. Nancy Higley, Nicole Liska, Paula Lent, and Sarah Butler submitted expert reports in support of Defendant's position. Marron Decl., ¶ 11. Defendant took the depositions of Drs. Alan G. Goedde, Laszlo P. Somogyi, and George E. Belch on February 7, 2019, March 22, 2019, and May 20, 2019, respectively. Marron Decl., ¶ 11. Plaintiff took the deposition of Paula Lent, Sarah Butler, Nancy Higley, and Nicole Liska on February 22, 2019, May 25, 2019, May 29, 2019, and June 20, 2019, respectively. Marron Decl., ¶ 11.

### III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   The Settlement Class

The proposed settlement establishes a Settlement Class comprised of all United States residents who purchased certain Ocean Spray Products for personal or household use and not for resale, in their respective state of citizenship from January

6

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1, 2011 until the date preliminary approval is granted. Agreement at § 2.26.[2] The Ocean Spray Products covered by the Settlement are listed in section 2.26 of the Settlement Agreement. Agreement § 2.26.

## B. Settlement Consideration

### 1. Monetary Relief

The Settlement Agreement provides that Ocean Spray will pay $5,400,000.00 into a settlement fund. Agreement at § 7.4. This fund will be used, among other things, to pay authorized claims to the Settlement Class Members, to pay the costs of settlement administration and notice to the Class Members, to pay any necessary taxes and tax expenses, to pay Class Counsel's fees and expenses, and to pay incentive awards to the named Plaintiffs. Agreement at § 7.6. For Authorized Claimants, Ocean Spray will provide $1.00 in cash from the Settlement Fund per bottle of Products purchased (any size) during the Class Period, up to 20 bottles, limited to one claim per household. Agreement at § 7.2.1. No additional proof of purchase will be required beyond a timely and properly submitted claim form, and no evidence of additional purchases will entitle a claimant to receive compensation in excess of $20.00 (unless distribution is increased *pro* rata). Agreement at § 7.2.1. The settlement provides for a *pro rata* reduction if the claims exceed the amount in the settlement fund (Agreement at § 7.2.3) or a *pro rata* increase if the settlement fund is not exhausted. Agreement at § 7.2.3. The distribution of the settlement fund is discussed in detail in Section V(C)(ii) below.

### 2. Non-Monetary Relief

Pursuant to the Agreement, Ocean Spray agrees to the following injunctive relief: Within 12 months after the Final Approval Effective Date, Ocean Spray shall discontinue manufacturing, for retail sale in the United States, the Products that

---

[2] The Settlement Class specifically excludes Defendant's current and former officers and directors, members of the immediate families of Defendant's officers and directors, Defendant's legal representatives, heirs, successors, and assigns, any entity in which Defendant has or had a controlling interest during the Class Period, and the judicial officers to whom this lawsuit is assigned. Agreement at § 2.26.

contain the artificial versions of malic acid and/or fumaric acid as an ingredient with labels that contain the claim "no artificial flavors", provided Ocean Spray shall be permitted to exhaust existing label stock purchased, printed, or ordered prior to the Final Approval Effective Date even if the associated Products are manufactured later than 12 months after the Final Approval Effective Date.[3] Agreement at § 7.3.

## C.    The Notice Program and Settlement Administration

Pending this Court's approval, Classaura, LLC will serve as the Settlement Administrator, and will be responsible for administrating the Notice program and for paying valid claims to Settlement Class members. Agreement at § 2.25. The Notice program consists of four different components: (1) a Settlement Website, (2) online notice, (3) print publication notice in *USA Today*, and (4) a press release via PR Newswire. Agreement at Ex. D [Notice Plan]. The forms of the proposed Notices, agreed upon by Class Counsel and Ocean Spray, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits B & C. The Settlement Administrator shall also establish a Toll-Free phone number with recordings of information about this Settlement, and will remain open and accessible through the Claim Deadline. Agreement at § 6.3.3.  The details of the notice plan are described fully in the Declaration of Gajan Retnasaba that is attached as Exhibit D to the settlement agreement.

## D.    Claims Process

The Claims process here is intentionally straightforward, easy to understand for Settlement Class members, and designed so that Settlement Class members can make a claim to their portion of the Settlement Fund without complication. Settlement Class members will make a claim by submitting a valid and timely Claim

---

[3] The injunctive relief does not require the recall of any product already sold to retail customers or in their respective distribution chains; does not require any relabeling of any products; and does not apply to any labels ordered, purchased, or printed prior to the Final Approval Effective Date. The injunctive relief does not require destruction of any inventory of finished goods solely due to the label bearing the claim "no artificial flavors," and it does not require the destruction of any label stock purchased, printed, or ordered prior to the Final Approval Effective Date. Agreement at § 7.3.

Form to the Settlement Administrator. A copy of the Claim Form is attached to the Settlement Agreement as Exhibit A. Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website.[4] Once a Settlement Class member submits a Claim Form and it is reviewed and approved by the Settlement Administrator, the Settlement Class member will automatically receive a cash payment as discussed above.

### E.   Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice. Agreement at § 5.1. Settlement Class members also have the option to opt-out electronically through the settlement website. Agreement at § 5.1. Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Ocean Spray, subject to any defenses that Ocean Spray may have against those claims. The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Agreement at § 5.1. A Settlement Class member must opt-out of the Settlement Class by the Objection/Exclusion Deadline. Agreement at § 5.1.

Settlement Class members who wish to file an objection to the Settlement likewise must do so no later than the Objection/Exclusion Deadline. Agreement at § 5.2. To be effective, Objections must include (a) a reference, in its first sentence, to the Litigation, *Hilsley v. Ocean Spray Cranberries, Inc., et al.*, No. 3:17-cv-2335-GPC-MDD; (b) the Objector's full, legal name, residential address, telephone number, and email address (and the Objector's lawyer's name, business address, telephone number, and email address if objecting through counsel); (c) a statement describing the Objector's membership in the Settlement Class, including a

---

[4] The Claim Form requires basic information from Settlement Class members, including: (1) name; (2) current address; (3) email address; (4) identification and date of the Products purchased; (5) location of where the Products were purchased from; and (6) a current contact telephone number. Agreement at Ex. A.

verification under oath as to the date, name of the Products purchased, and the location and name of the retailer from whom the Objector purchased the Products, and/or a receipt reflecting such purchases, and all other information required by the Claim Form; (d) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (e) copies of any papers, briefs, or other documents upon which the objection is based; (f) a list of all persons who will be called to testify in support of the objection; (g) a statement of whether the Objector intends to appear at the Final Approval Hearing; (h) a list of the exhibits that the Objector may offer during the Final Approval Hearing, along with copies of such exhibits; and (i) the objector's signature.  Agreement at § 5.3.[5]

## F.    Release of Claims

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class member, and each of their heirs, spouses, guardians, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment shall have fully, finally, and forever released, relinquished, and discharged all claims asserted or which could have been asserted in the Litigation involving allegations of misleading statements or misrepresentations concerning the Products (collectively, "Claims") against the Released Parties. Agreement at § 10.1. The term "Released Parties" is defined in Section 2.22 of the Settlement Agreement. Agreement at § 2.22.

## G.    Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards

The Settlement Agreement provides that Class Counsel may request an award

---

[5] In addition, Settlement Class Members, if applicable, must include with their Objection (a) the identity of all counsel who represent the objector, including former or current counsel who may be entitled to compensation for any reason related to the objection; and (b) a detailed list of any other objections submitted by the Settlement Class Member, or his/her counsel, to any class actions submitted in any court, whether state or federal, in the United States in the previous five (5) years. Agreement at § 5.3.

of attorneys' fees and out-of-pocket expenses of up to 33.33% of the Settlement Fund, subject to this Court's approval. Agreement at § 8.1. Ocean Spray has also agreed not to oppose an application for an Incentive Award for Plaintiff Riley of up to $1,000.00 and an application for an Incentive Award for Plaintiff Hilsley up to $9,000.00. Agreement at § 8.3. If the Court grants Plaintiffs' Motion for Preliminary Approval, then Plaintiffs will fully address the reasonableness of the requested fee and incentive awards in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards.

## IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL

Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e). "[T]he 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

Rule 23(e) now provides that the Court may approve a class action settlement "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

11

"Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement." *Zamora*, 2019 WL 1966112, at *2. "The purpose of the amendment to Rule 23(e)(2) is establish [sic]  a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." *Id*. Factors that the Ninth Circuit have typically considered include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ;[6] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"While the Ninth Circuit has yet to address the amendment to Rule 23(e)(2)….the factors in amended Rule 23(e)(2) generally encompass the list of relevant factors previously identified by the Ninth Circuit." *Zamora*, 2019 WL 1966112, at *2 (alteration in original). Indeed, "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)." *In re Extreme Networks, Inc. Securities Litigation*, No. 15-CV-04883-BLF, 2019 WL 3290770, at

---

[6] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at the appropriate time.

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*6 (N.D. Cal. July 22, 2019); *see also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

## V.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   Plaintiffs and Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).  This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Final approval criteria—Rule 23(e)'s multifactor test*, 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.). A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020); *see also Hefler*, 2018 WL 6619983, at *6.

The proposed class representatives in this action have no conflicts of interest with other class members and each have prosecuted this action vigorously on behalf of the Class.[7] Each of the named Plaintiffs have suffered the same injuries as the absent class members because each purchased an Ocean Spray beverage Product, for personal and household use, in reliance on the "No Artificial Flavors" statement on the Product label. (*See generally* First Amended Complaint, Dkt. No. 228). Each of the named Plaintiffs are dedicated to vigorously pursue this action on behalf of the class and each have kept themselves informed about the status of the proceedings. On August 4, 2018, Ocean Spray took the deposition of Plaintiff Crystal Hilsley.

---

[7] *See* Declarations of Crystal Hilsley and William Riley submitted concurrently herewith.

Marron Decl., ¶ 8. Plaintiff William Riley was similarly willing to sit for a deposition and both of the named Plaintiffs were fully prepared to testify at trial. Accordingly, the named Plaintiffs have adequately represented the Class.

Class Counsel have also vigorously represented the Class and have no conflicts of interest. The Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Marron Decl., ¶¶ 18-36. & Ex. 2 (firm resume of Law Offices of Ronald A. Marron). Through the discovery process, Class Counsel has obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. Marron Decl., ¶ 14. *See Final approval criteria—Rule 23(e)(2)(A): Adequate representation*, 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ("if extensive discovery has been done, a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information."). Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Marron Decl., ¶ 14. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 976 (9th Cir. 2009) (Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Accordingly, adequacy of representation is satisfied.

**B.    The Settlement was Negotiated at Arm's Length**

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expenses, sometimes called 'collusive settlements.'" *Final approval criteria—Rule 23(e)(2)(B): Arm's length negotiation*, 4 NEWBERG ON CLASS ACTIONS § 13:50 (5th

14

ed.).  Here, the settlement was negotiated at arm's length after hard-fought litigation and discovery. The Parties did not begin settlement discussions until after the Court had entered Orders on Plaintiff Hilsley's Motion to Exclude (Dkt. No. 105) and Motion for Partial Summary Judgment (Dkt. No. 101), and Defendant Ocean Spray's Motion for Summary Judgment (Dkt. No. 108) and Motion to Decertify the Class (Dkt. No. 109). Marron Decl., ¶ 12.  Settlement discussions also did not begin until after the Parties had exchanged written discovery and documents, which speaks to the fundamental fairness of the process. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Further, settlement discussions did not begin until Judge Curiel entered a Pretrial Order and encouraged the parties to discuss settlement. The time that it took to work out significant details and vigorous disagreements between the parties and the parties' need for a settlement conference in front of Judge Dembin demonstrate that this proposed resolution was the product of heavily disputed and arm's length negotiation. Marron Decl., ¶ 13.  The settlement negotiations were hard-fought, with both Parties and their counsel thoroughly familiar with the applicable facts, legal theories, and defenses on both sides. Marron Decl., ¶ 13.

Here, class members who submit a timely claim will be entitled to actual monetary relief that includes $1.00 in cash from the Settlement Fund per bottle of Products purchased (any size) during the Class Period, up to 20 bottles, limited to one claim per household. Agreement at § 7.2.1. Additionally, Ocean Spray has agreed to valuable injunctive relief. Agreement at § 7.3.  Although Class Counsel intends to request a fee and out-of-pocket expense award of up to 33.33% of the Settlement Fund (Agreement at § 8.1), this amount is not disproportionate to the amount of recovery received by the Class.  The settlement agreement also does not contain a "clear sailing" provision "in which defendant[] agreed not to object to an award of attorneys' fees." *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The settlement is also not contingent upon an award of

attorneys' fees to class counsel and the amount of fees awarded is within the sole discretion of the Court. Finally, the settlement agreement does not contain a "kicker" arrangement whereby unpaid attorneys' fees revert to the defendant. *Id.* at 949; Agreement at § 8.1. Instead, unpaid attorneys' fees will be added to the class fund and will not revert back to Ocean Spray. Therefore, this Court may presume that the settlement is fundamentally fair and was negotiated at arm's length by competent counsel who are experienced in class action litigation.

## C.   The Relief Provided to the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). "Before the Rule arrives at the articulation of sub-factors, its general directive asks whether the class's relief is adequate." *Final approval criteria—Rule 23(e)(2)(C): Adequate relief*, 4 NEWBERG ON CLASS ACTIONS § 13:51 (5th ed.). "In evaluating the value of the class members' claims, the court need not decide the merits of the case nor substitute its judgment of what the case might be worth for that of class counsel; however, 'the court must at least satisfy itself that the class settlement is within the 'ballpark' of reasonableness.'" *Id.* (citation omitted).

Ocean Spray has agreed to settle this matter for a non-reversionary total of $5,400,000. Agreement at § 7.4. In lieu of taking this matter to trial with the possibility of obtaining no relief, this is an excellent result for the Class. Further, the $5,400,000 nationwide settlement amount is reasonable considering that damages would be limited to a fraction of total sales if Plaintiffs were to prevail at trial. Damages for the nationwide class would be based on the price premium method, which is based on the difference between the value of the Products with the "No Artificial Flavors" statement and the actual value received.

16

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The amount of recovery per claimant is also adequate considering that Settlement Class Members can claim $1.00 in cash from the Settlement Fund per bottle of Products purchased (any size) during the Class Period, up to 20 bottles, limited to one claim per household. Agreement at § 7.2.1. This recovery is significant considering that the Plaintiff calculated the average price of the Ocean Spray products at $3.25 (*See* Dkt. No. 192-5). The $1.00 recovery per purchase (up to twenty purchases per household) for each claimant is an excellent result considering it represents a large fraction of total damages alleged by Plaintiffs and that Plaintiffs believed could have been recoverable at trial. Indeed, Hilsley's expert, Dr. Belch, opined that the price premium attributable to the "No Artificial Flavors" claim is roughly 19%. (*See* Dkt. No. 192-5). Taking Hilsley's presumed average retail price of $3.25 and price premium of 19%, the damages for each Product purchased could total 61 cents. ($3.25 x 19% price premium = 61 cents). Balancing all of the factors that go into protracted litigation and taking this into consideration, the Parties believe $1.00 per bottle represents a fair settlement amount. Moreover, the settlement agreement provides for injunctive relief. Agreement at § 7.3.

### 1.     The Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

The costs, risks, and delay of trial and appeal further support preliminary approval.  Proceeding in this litigation in the absence of settlement poses various risks such as failing to certify a national class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *Fulford v. Logitech,*

17

*Inc.*, No. 08-cv-02041 MNC, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

### 2.    The Proposed Method of Distributing Relief to the Class Is Effective

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Final approval criteria—Rule 23(e)(2)(C)(ii): Distribution method*, 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). The claims process is straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."). Significantly, if there is any remaining cash amount in the Settlement Fund after payment of Notice and Settlement Administrator expenses, a Fee and Expense Award, any necessary taxes, tax expenses, Incentive Awards, and the total amount of all Authorized Claims, the Settlement Administrator shall divide any remaining monetary amounts equally among the Authorized Claimants and shall pay each such Authorized Claimant his or her *pro rata* share of the remaining monetary amount. Agreement at § 7.2.3. This *pro rata* distribution ensures that Settlement Class Members will receive the maximum amount of the settlement fund and that no money will revert back to Defendant. *See McGrath v. Wyndham Resort Dev. Corp.*, No. 15CV1631 JM (KSC), 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary settlement fund to be "fair, reasonable, and adequate."). Accordingly, the Court should find the proposed method of distribution of class funds to be effective.

### 3.    The Proposed Attorneys' Fee Award is Fair and Reasonable

As discussed above, the Settlement Agreement provides that Class Counsel may request an award of attorneys' fees and out-of-pocket expenses of up to 33.33%

of the Settlement Fund, subject to this Court's approval. Agreement at § 8.1. Although the "benchmark" for attorneys' fees in the Ninth Circuit is typically 25% of the common fund, *Bluetooth*, 654 F.3d at 942, Class Counsel's fee request is within the range of what courts have approved in other class action cases. *See, e.g., Singer v. Becton Dickinson & Co.*, No. 08–CV–821–IEG, 2010 WL 2196104 (S.D. Cal. June 1, 2010) (awarding 33.33% of $1 million settlement fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding 33.33% of $300,000 settlement fund)*; Weeks v. Kellogg Co.,* No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30% of the $2.5 million settlement fund); *Mollicone v. Universal Handicraft*, No. 17-21468-CIV, 2018 WL 3913689, at *3 (S.D. Fla. Aug. 14, 2018) (awarding Class Counsel fees in the amount of 31.9% of the settlement fund); *Rawa*, 2018 WL 2389040, at *9 (awarding Class Counsel 28% of the settlement fund).  If the Court grants Plaintiffs' Motion for Preliminary Approval, then Class Counsel will fully address the reasonableness of their requested fee award in their forthcoming Motion for Attorneys' Fees, Costs, and Incentive Awards.

### 4.  *No Side Agreements Were Made in Connection with the Proposed Settlement*

Rule 23(e)(3) requires that the Parties "must file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3). No agreements were made in connection with the settlement aside from the Settlement Agreement itself. Marron Decl., ¶ 17.

### D.  **The Proposed Settlement Treats Class Members Equitably Relative to Each Other**

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Final approval*

19

*criteria—Rule 23(e)(2)(D): Intra-class equity*, 4 NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.).  Here, the settlement treats each class member equally.  As discussed above, each class member can make a claim for $1.00 in cash from the Settlement Fund per bottle of Products purchased (any size) during the Class Period, up to 20 bottles, limited to one claim per household. Agreement at § 7.2.1. Because each class member is treated equally, the Court should approve the settlement as fair, reasonable, and adequate.

## VI.   THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS AND ENTER THE PRELIMINARY APPROVAL ORDER

### A.   The Court Can Certify a Settlement Class That Is Broader Than the Certified California Litigation Class

The Court can amend or alter the class definition at any time before a decision on the merits. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Vizcaino v. United States Dist. Crt. for W. Dist. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999). Here, the Court previously certified a California Class. (Dkt. No. 83). The proposed nationwide Settlement Class is broader than the certified California litigation class because it includes a nationwide class of consumers (as opposed to California class of consumers) and it includes additional Ocean Spray products that contain malic acid and/or fumaric acid beyond what was contained in Hilsley's Complaint. Here, certifying a proposed Settlement Class including additional Ocean Spray products is appropriate because each of the additional products also claim that the products are made with "No Artificial Flavors." Furthermore, the Settlement provides substantial benefits to all Settlement Class Members equally, as the monetary compensation afforded to California Class Members will be the same as the monetary compensation afforded to Class Members in all other states. Similarly, the injunctive relief will equally benefit all Class Members nationwide because all Ocean Spray Products sold nationwide will be modified in the same manner under the Settlement.

Moreover, the Court can certify a settlement class that is broader than a previously certified litigation class. Courts routinely alter or expand previously-

20

certified classes for purposes of certifying a settlement class. *See, e.g., Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 320 (C.D. Cal. 2016) (adding additional time period and removing exclusion for class members who used coupons to previously certified class definition for purposes of settlement); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Practices Act (FDCPA) Litig.*, Civ. No. 2:13-MD-2426-DBH, 2016 WL 543137, at *2 (D. Me. Feb. 10, 2016) (certifying a settlement class that has been "merged and expanded by agreement" to cover not only the previously certified class of Maine residents, but also residents nationwide); *Hahn v. Massage Envy Franchising LLC*, No. 3:12-cv-00153-DMS-BGS, 2015 WL 2164981, at *1 (S.D. Cal. Mar. 6, 2015) (granting preliminary approval of class action settlement that expanded the certified class to encompass former and current members of Defendant's clinics or spas nationwide, rather than only former members in California).

Accordingly, Plaintiffs respectfully request that the Court certify the proposed nationwide Settlement Class, defined in Section 2.26 of the Settlement Agreement.

**B.    The Proposed Nationwide Settlement Class Should be Certified**

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). For the reasons below, the Class meets the requirements of Rule 23(a) and (b) for purposes of the Settlement.

***1.    The Class Satisfies Rule 23(a)***

**a.  Numerosity**

Rule 23(a)(1) requires that "the class is so numerous that joinder of all

1  members is impracticable." *See* Rule 23(a)(1). "As a general matter, courts have

2  found that numerosity is satisfied when class size exceeds 40 members, but not

3  satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649,

4  654 (C.D. Cal. 2000). Here, the proposed Class is comprised of thousands of

5  consumers who purchased the Products – a number that obviously satisfies the

6  numerosity requirement. Accordingly, the proposed Class is so numerous that

7  joinder of their claims is impracticable.

8  **b. Commonality**

9      Rule 23(a)(2) requires the existence of "questions of law or fact common to

10  the class." *See* Rule 23(a)(2). Commonality is established if plaintiffs and class

11  members' claims "depend on a common contention," "capable of class-wide

12  resolution . . . [meaning] that determination of its truth or falsity will resolve an issue

13  that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

14  *Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because the commonality

15  requirement may be satisfied by a single common issue, it is easily met. 1 H.

16  Newberg & Conte, *Newberg on Class Actions* § 3.10, at 3-50 (1992).

17      There are ample issues of both law and fact here that are common to the

18  members of the Class. All of the Class Members' claims arise from a common

19  nucleus of facts and are based on the same legal theories. Plaintiffs claim that the

20  "No Artificial Flavors" statement on the Ocean Spray Product labels is false and

21  misleading because the Products allegedly contain artificial ingredients (malic acid

22  and fumaric acid) that functions as flavors. These alleged misrepresentations were

23  made in a uniform manner to each of the Class Members. Accordingly, commonality

24  is satisfied by the existence of these common factual issues. *See Arnold v. United*

25  *Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality

26  requirement met by "the alleged existence of common discriminatory practices").

27      Second, Plaintiffs' claims are brought under legal theories common to the

28  Class as a whole. Alleging a common legal theory alone is enough to establish

commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not

22

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, all of the legal theories asserted by Plaintiffs are common to all Class Members. Given that there are virtually no issues of law which affect only particular, individual members of the Class, commonality is satisfied.

### c. Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims . . . of the class." *See* Rule 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

The claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of the purchase of Ocean Spray Products for personal or household use after relying on Ocean Spray's allegedly misleading "No Artificial Flavors" representations. The named Plaintiffs have precisely the same claims as the Class and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. The named Plaintiffs and all Class Members have been injured in the same manner by this conduct. Therefore, Plaintiffs satisfy the typicality requirement.

### d. Adequacy

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." *See* Rule 23(a)(4). Adequacy of the class representatives and Class

23

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Counsel was fully addressed in Section V(A) above and will not be repeated here.

### 2. *The Class Satisfies Rule 23(b)(3)*

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

### a. Common Questions of Law and Fact Predominate

The proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-62. In this case, common questions of law and fact exist and predominate over any individual questions, including, in addition to whether this settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*: (1) whether Ocean Spray's representations regarding its "No Artificial Flavors" claims were false and misleading or reasonably likely to deceive consumers; (2) whether Ocean Spray violated the CLRA, UCL, FAL and the MGL; (3) whether Ocean Spray had defrauded Plaintiff and the Class Members; and (4) whether the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable

24

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

relief, including restitution, and if so, the nature and amount of such relief.

There are also no concerns here about certifying a nationwide settlement class under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). In *Mazza*, the Ninth Circuit held that, when certifying a nationwide class, the burden is on the defendant to show "'that foreign law, rather than California law, should apply to class claims.'" *See also In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 803–04, 808 (S.D. Cal. 1990) (the "court presumes that California law controls unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment."); *In re Seagate Technologies Sec. Litigation*, 115 F.R.D. 264, 269, 274 (N.D. Cal. 1987) (applying California law to nationwide class because "[a]bsent the defendant carrying [its] burden, California law would govern the foreign state plaintiffs' claims" and noting several other decisions reaching this conclusion).

The Ninth Circuit recently held that differences in state law do not defeat predominance in the settlement class context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019). This is especially relevant here because Ocean Spray is not opposing the certification of a nationwide class involving California and Massachusetts law for purposes of the Settlement. Consequently, for this Settlement, Ocean Spray is voluntarily subjecting itself to California and Massachusetts law, including California's Consumer Legal Remedies Act and Massachusetts' Consumer Protection Act, which provide greater protections to consumers than other jurisdictions. Where, as here, Ocean Spray's products were widely distributed and there are significant contacts with California residents, and where Ocean Spray does not oppose California law applying to the nationwide Settlement Class, the *Mazza* choice of law analysis is easily satisfied because the interests of other states will not be impaired. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561. Massachusetts' MGL can also be applied to the nationwide Settlement Class because Ocean Spray maintains its principal place of business in Massachusetts and Massachusetts has significant contacts with the claims of each

25

class member.

Moreover, the considerations driving the rest of the *Mazza* analysis are inapplicable here. In the settlement context, other states' interests would not be undermined by the application of California and Massachusetts law because Ocean Spray is opting into a regime that protects consumers more vigorously than other states. In *Hanlon*, the Ninth Circuit also held that "the idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims." *Hanlon*, 150 F.3d at 1022–23; *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 561 ("no party argued that California's choice-of-law rules should not apply to this class settlement"); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (finding that differences between state consumer protection laws do not defeat predominance and certifying nationwide settlement class). Accordingly, the Court should find that common issues predominate.

**b. A Class Action Is the Superior Mechanism for Adjudicating this Dispute**

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to try to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## VII.   THE PROPOSED NOTICE PLAN IS ADEQUATE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice. *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows class members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court. *Id.*

Here, the Notices will accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, the Final Approval Hearing and the rights of all parties, including the rights to file objections and to opt out of the class. The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. *See* Exhibits B, C, & D to Settlement Agreement.   In addition, the Settlement Administrator will disseminate notice to the Class through the following channels:

**Settlement Website:** The Settlement Administrator will maintain a settlement website located at www.NoArtificialFlavors.com ("Settlement Website"). The Settlement Administrator will post prominently on the Settlement Website information and documents about the case. The Settlement Website will also provide an email address, phone number, and postal contacts for Class Members to request further information, hard copies of information, or request help in the claim filing process. Agreement at Ex. D [Retnasaba Decl., ¶¶ 9-13].

**Social Media Notice:** The Settlement Administrator will conduct a neutral

online advertising campaign on Facebook.com, a media outlet with approximately 230 million adult registered users in the United States. Agreement at Ex. D [Retnasaba Decl., ¶ 14]. The advertising will be published in a manner designed to reach 15 million adults residing in the United States who are identified as having an interest in Ocean Spray or juice beverages. Agreement at Ex. D [Retnasaba Decl., ¶¶ 15-16].

**Publication Notice**: The Notice Program also includes a national print publication notice in *USA Today*, a national newspaper with a circulation of approximately 730,000 and a reach of approximately 2,600,000 readers. Agreement at Ex. D [Retnasaba Decl., ¶ 17]. The publication notice will include a general description of the settlement, eligibility criteria, and will direct class members to the Settlement Website for further information, including how to file a claim. Agreement at Ex. D [Retnasaba Decl., ¶ 19].

**Press Release:** The Settlement Administrator will craft a neutral, informational press release providing a summary of the Settlement using PR Newswire, a national press release survey viewed by thousands of media outlets across the country, including national and local newspapers, websites, and television and radio stations. Agreement at Ex. D [Retnasaba Decl., ¶ 20]. The Settlement Administrator will also forward the press release to several websites and e-mail lists used by members of the public with an interest in making class action claims when they are eligible. Agreement at Ex. D [Retnasaba Decl., ¶ 21].

**Toll-Free Number:** The Settlement Administrator will additionally establish a Toll-Free phone number with recordings of information about this Settlement, and will remain open and accessible through the Claim Deadline. Agreement at § 6.3.3 & Ex. D [Retnasaba Decl., ¶ 13].

**CLRA Notice:** Section 1781 of the Consumers Legal Remedies Act (CLRA) requires published notice of the settlement in a newspaper of general circulation in the county of the transaction, once a week for four consecutive weeks. Agreement at Ex. D [Retnasaba Decl., ¶ 22]. CLRA notice will be published over four

28

consecutive weeks in San Diego Uptown Examiner, a newspaper in San Diego – the county where Plaintiff Hilsley's transaction took place. Agreement at Ex. D [Retnasaba Decl., ¶ 22].

## VIII.  PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered. The Parties respectfully propose the following schedule:

| EVENT | DEADLINE |
|---|---|
| Deadline for publishing Notice | 45 days after entry of the Preliminary Approval Order. |
| Filing papers in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards | 15 days prior to the objection/ exclusion deadline. |
| For filing an objection with the Court, or submitting a Request for Exclusion to the Settlement Administrator | 30 days prior to the Final Approval Hearing. |
| Deadline for submitting claim forms | 120 days after notice to the class. |
| Filing papers in support of Motion for Final Approval | 28 days prior to the Final Approval Hearing. |
| Filing of response to objections | 14 days prior to the Final Approval Hearing. |
| Final Approval Hearing | 150 days after notice to the class. |

# IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval, provisionally certify the Class, approve the proposed notice plan, and enter the Proposed Preliminary Approval Order.


DATED: November 8, 2019          Respectfully submitted,



*/s/ Ronald A. Marron*
RONALD A. MARRON

**LAW OFFICES OF**
**RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
Lilach Halperin
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**LAW OFFICE OF DAVID ELLIOT**
DAVID ELLIOT (SBN 270381)
*davidelliot@elliotlawfirm.com*
2028 3rd Avenue
San Diego, CA 92101
Telephone: (858) 228-7997
***Attorneys for Plaintiffs and the Class***