1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| CRYSTAL HILSLEY and WILLIAM RILEY, on behalf of themselves and all others similarly situated, | CASE NO. 3:17-CV-2335-GPC-MDD |
| Plaintiffs, | <u>CLASS ACTION</u> |
| vs. | **JUDGMENT AND ORDER (1.) GRANTING FINAL APPROVAL** |
| OCEAN SPRAY CRANBERRIES, INC., | **OF CLASS ACTION SETTLEMENT; (2.) AWARDING CLASS COUNSEL FEES AND** |
| Defendant. | **EXPENSES; (3.) AWARDING CLASS REPRESENTATIVES INCENTIVE AWARDS; AND (4.) DISMISSING ACTION WITH PREJUDICE** |

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

Plaintiffs Crystal Hilsley and William Riley ("Plaintiffs"), individually and on behalf of the Class defined below, move this Court for final approval of the proposed settlement in the above-captioned action. This Court has reviewed and considered Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and supporting materials along with Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion") as well as Objections by Michael Gaskins and Shamara Sawyer, ECF Nos. 250, 252, Plaintiffs' response regarding opt-outs and objections, ECF No. 253 and Supplemental Declaration of Class Administrator Gajan Retnasaba, ECF No. 256. A hearing was held on July 31, 2020. ECF No. 258. David Elliott and Michael Houchin, appeared as Class Counsel and Ricky Shackelford and Adam Siegler, appeared on behalf of Defendant. *Id.* No Objectors appeared at the hearing. Having fully considered the record and the requirements of law, this Court orders that the Motion for Final Approval and Fee Motion is **GRANTED** as set forth below.

## I.    **BACKGROUND**

###    **A.**    **The Allegations in the Complaint**

This action was originally filed by plaintiff Crystal Hilsley ("Hilsley") against Ocean Spray Cranberries, Inc. ("Ocean Spray") and Arnold Worldwide, LLC ("Arnold Worldwide") in the Superior Court of California for the County of San Diego. ECF No. 1. On November 16, 2017, Ocean Spray removed the action to this Court. *Id.*

The gravamen of Hilsley's Complaint is that Ocean Spray product labels claiming that certain Ocean Spray beverage products (the "Products") contain "No Artificial Flavors" are allegedly false and misleading because the Products actually contain artificial ingredients, dl-malic acid and fumaric acid, that function as flavors. *See* ECF No. 1-2 ("Compl."), ¶¶ 32, 54. Hilsley alleged that she paid a premium for Ocean Spray Products believing that the Products contained "No Artificial Flavors." *Id.* ¶ 67. Hilsley sought both monetary damages and injunctive relief for the following claims: (1) Violations of the Consumers Legal Remedies

1

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

Act, Cal. Civ. Code Sections 1750, et seq.; (2) Violations of the False Advertising law, Cal. Bus. & Prof. Code Sections 17500, et seq.; (3) Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code Sections 17200, et seq.; (4) Breach of Express Warranties; and (5) Breach of Implied Warranties. ECF No. 1-2. Ocean Spray denied all of Hilsley's allegations, asserting among other claims that the named compounds were used as acidulants and not as artificial flavors in the Products and the Products are properly labeled.

**B.    The Parties Have Engaged in Substantial Discovery**

On April 6, 2018, Plaintiff Hilsley served a first set of Requests for Production of Documents ("RFPs") on Ocean Spray. On June 8, 2018, Hilsley served a first set of Interrogatories ("ROGs") and a second set of RFPs on Ocean Spray. On June 1, 2018, Ocean Spray served RFPs and ROGs on Hilsley. On October 3, 2018, Ocean Spray served a second set of RFPs on Plaintiff Hilsley. Hilsley served objections and responses to Ocean Spray's first set of discovery on July 5, 2018 and second set of RFPs on November 1, 2018. On May 4, 2018, Ocean Spray served objections and responses to Hilsley's first set of RFPs and on July 9, 2018, Ocean Spray served objections and responses to Hilsley's first set of ROGs and second set of RFPs. On August 11, 2018, Hilsley filed an *ex parte* motion to compel Ocean Spray to respond to discovery requests. On September 20, 2018, the Court granted in part and denied in part Hilsley's Motion to Compel, and on October 3, 2018, Ocean Spray served supplemental responses to Hilsley's interrogatories pursuant to the Court's Order. Hilsley asserts that these supplemental responses provided important sales information that helped Hilsley formulate her damages model.

On April 30, 2018, Hilsley served a 30(b)(6) deposition notice on Ocean Spray. On June 20, 2018, Ocean Spray served objections and responses to Hilsley's 30(b)(6) notice. On June 27, 2018, Hilsley took the 30(b)(6) deposition of Erich Fritz. On June 27, 2019, Ocean Spray served a notice of deposition with document requests on Hilsley and an amended notice of deposition on July 31,

2

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

2018. Hilsley served objections and responses to Ocean Spray's amended deposition notice on August 3, 2018. On August 4, 2018, Ocean Spray took the deposition of Ms. Hilsley. On September 27, 2018, Hilsley served a deposition subpoena that included several document requests on Tate & Lyle, Ocean Spray's malic acid ingredient supplier, and on October 22, 2018, Hilsley took the deposition of Matthew Duane, Tate & Lyle's person most knowledgeable. In response to Hilsley's subpoena, Tate & Lyle produced several documents that Hilsley believed were crucial to the claims in the litigation, including the artificial nature of malic acid and its alleged function as a flavoring ingredient. On June 21, 2018, Hilsley served subpoenas on a number of retailers of Ocean Spray products, including Ralphs Grocery Company, Target Corporation, the Vons Companies, Walmart, Inc., and Costco Wholesale Corporation. On May 10, 2019, Hilsley served a subpoena on Information Resources, Inc. ("IRI") and obtained retail-level sales information regarding the Ocean Spray Products.

Both Hilsley and Ocean Spray retained several experts who submitted expert reports or rebuttal expert reports. Drs. Laszlo P. Somogyi, George E. Belch, Alan G. Goedde, and Henry Chin submitted expert reports in support of Hilsley's position. Nancy Higley, Nicole Liska, Paula Lent, and Sarah Butler submitted expert reports in support of Ocean Spray's position. Ocean Spray took the depositions of Drs. Alan G. Goedde, Laszlo P. Somogyi, and George E. Belch on February 7, 2019, March 22, 2019, and May 20, 2019, respectively. Hilsley took the deposition of Paula Lent, Sarah Butler, Nancy Higley, and Nicole Liska on February 22, 2019, May 25, 2019, May 29, 2019, and June 20, 2019, respectively.

**C.    The Parties Also Engaged in Extensive Motion Practice Before this Court**

During the course of the litigation, the Parties also engaged in extensive motion practice including multiple cross motions for Summary Judgment and motions to certify and to decertify the Class. On August 16, 2018, Hilsley filed a Motion for Class Certification and to Appoint Class Counsel. ECF No. 23. On

3

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

November 29, 2018, the Court issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification and to Appoint Class Counsel. (ECF No. 83. Class certification was granted with respect to Hilsley's claims under the CLRA, the UCL, and the FAL. ECF No. 83. However, the Court denied class certification for Hilsley's claims for breach of express and implied warranties. *Id.*

On September 8, 2018, Ocean Spray filed its first Motion for Summary Judgment. ECF No. 31. On October 30, 2018, the Court issued an Order Denying Defendants' Motion for Summary Judgment. ECF No. 76. On March 27, 2019, Hilsley filed a Motion for Partial Summary Judgment and on April 11, 2019, Hilsley filed a Motion to Exclude the Testimony, Opinions, and Reports of Defendants' Experts. ECF Nos. 101, 105. On April 11, 2019, Ocean Spray filed a second Motion for Summary Judgment and a Motion to Decertify the Class. ECF Nos. 108-09. On April 11, 2019, Arnold Worldwide, LLC, also filed a Motion for Summary Judgment. ECF No. 111. On June 24, 2019, the Court denied Plaintiff's Motion to Exclude Ocean Spray's Experts. ECF No. 188. On July 3, 2019, the Court granted in part and denied in part Hilsley's Motion for Partial Summary Judgment, denied Defendant Ocean Spray's second Motion for Summary Judgment, and granted Defendant Arnold Worldwide, LLC's Motion for Summary Judgment. ECF No. 193. The Court dismissed Defendant Arnold Worldwide, LLC as a Defendant and also dismissed several of Ocean Spray's affirmative defenses. *Id.* On July 10, 2019, the Court denied Ocean Spray's Motion to Decertify the Class. ECF No. 196.

### D. The Parties Were Prepared to Go to Trial

Hilsley and Ocean Spray both filed Rule 26(a)(3)(A) Pretrial Disclosures on July 26, 2019. ECF Nos. 201, 202. The Parties attended a Pretrial Conference that took place on August 23, 2019. During the Pretrial Conference, the Court entered an Order setting a trial date for November 4, 2019, but encouraged the Parties to discuss a resolution of the *Hilsley* matter. ECF No. 213. The Court also issued a Pretrial Order on August 26, 2019. ECF No. 214. On October 11, 2019, Hilsley

4

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1  filed four separate motions in liminie in preparation for trial. ECF Nos. 220, 221,

2  222 & 223.

3        **E.**    **Settlement Negotiations and Preliminary Approval**

4        Following the Pretrial Conference that took place on August 23, 2019, the

5  Parties began meaningful settlement negotiations. On August 26, 2019, Magistrate

6  Judge Mitchell D. Dembin ordered a settlement conference to be held on

7  September 19, 2019. ECF No. 212. Prior to, during and after the settlement

8  conference held before Magistrate Judge Dembin, the Parties engaged in strenuous

9  settlement negotiations that resulted in the Settlement Agreement. The Parties

10 invested substantial time and effort to work through initially incompatible

11 settlement postures and overcome vigorous disagreements. The proposed

12 resolution embodied in the Settlement was the product of heavily contested arm's

13 length negotiation.

14       On October 18, 2019, the Parties filed a Notice of Settlement with the Court.

15 ECF No. 224. Thereafter, on October 25, 2019, Plaintiff Hilsley along with

16 Plaintiff William Riley, a Massachusetts resident, filed a First Amended

17 Complaint. ECF No. 228. The First Amended Complaint describes a nationwide

18 class and seeks both monetary damages and injunctive relief for the following

19 claims: (1) Violations of the CLRA; (2) Violations of the FAL; (3) Violations of

20 the UCL.; (4) Violations of the Massachusetts Consumer Protection Act, MGL Ch.

21 93A; and (5) Violations of Massachusetts General Laws Chapter 266 § 91.

22       On November 8, 2019, Plaintiffs filed their Motion for Preliminary

23 Approval of Class Action Settlement. ECF No. 232. On December 11, 2019,

24 Michael Froio and Mikhail Surman, the plaintiffs in the related action titled *Froio,*

25 *et al. v. Ocean Spray Cranberries, Inc.*, Case No. 1:18-cv-12005-FDS (D. Mass.

26 Sept. 24, 2018) ("*Froio*"), filed a Motion to Intervene in the present action.[1] ECF

27 _____

28 [1] On July 25, 2019, Plaintiff Hilsley filed a Notice of Related Case, asserting that
the *Froio* Action is related to the instant action. ECF No. 198. On August 22, 2019,
Ocean Spray filed a Motion to Stay the *Hilsley* action in light of a "memorandum

1   No. 233. The *Froio* Plaintiffs contended that they "do not seek to obstruct the

2   settlement," but rather were intervening for the purpose of obtaining compensation

3   for their work in the *Froio* Action. ECF No. 233-1 at 1:4-8.  The preliminary

4   approval hearing was held on January 23, 2020 ECF No. 239. Following the

5   preliminary approval hearing, this Court issued an Order denying the *Froio*

6   Plaintiffs' Motion to Intervene holding that "the more appropriate procedure for

7   the relief Proposed Intervenors seek is to file an objection to the settlement as

8   opposed to intervening as plaintiffs." ECF No. 240 at 11:15-17. On January 31,

9   2020, the Court entered an Order granting Preliminary approval of the proposed

10  settlement finding that the settlement is "fair, reasonable, adequate, and in the best

11  interests of the Settlement Class." ECF No. 241 at 14 ¶ 3. This Court also approved

12  the Parties' proposed notice plan and set the Final Approval Hearing for July 31,

13  2020 at 1:30 p.m. ECF No. 241.

14  **II.      SUMMARY OF THE SETTLEMENT**

15          Plaintiffs now move for final approval of a Settlement Class defined as

16  follows: All citizens and residents of the United States who, on or after January 1,

17  2011 until the January 31, 2020 (the "Class Period"), purchased one of the

18  following Products for personal or household use and not for resale, in their

19  respective state of citizenship:

20  - Ocean Spray® Cran-Apple™;
21  - Ocean Spray® Cran-Grape™;
    - Ocean Spray® "100% Apple" Juice Drink;
22  - Ocean Spray® Cran-Raspberry™;
23  - Ocean Spray® Wave™ Apple with White Cranberries;
    - Ocean Spray® Wave™ Berry Medley;
24  - Ocean Spray® Cran-Cherry™;
25

26  ───────────────────────────────────────────

27  of understanding [that] ha[d] recently been executed between the parties to the
    *Froio* action" that would include a nationwide class action settlement. ECF No.
28  210. On September 4, 2019, Ocean Spray withdrew its Motion to Stay Proceedings
    to allow for continued settlement negotiations in the instant action. ECF No. 216.

6

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

- Ocean Spray® Cran-Pineapple™;
- Ocean Spray® Cran-Pomegranate™;
- Ocean Spray® diet Cran-Pomegranate™;
- Ocean Spray® Diet Cran-Cherry™;
- Ocean Spray® 100% Juice Cranberry Cherry Flavor
- Ocean Spray® Cran-Strawberry™
- Ocean Spray® Diet Blueberry
- Ocean Spray® Diet Cranberry With Lime
- Ocean Spray® Cran-Lemonade™
- Ocean Spray® Classic Tea White Cranberry Peach
- Ocean Spray® Cran-Tea™ White Cranberry Peach
- Ocean Spray® Classic Tea Cranberry
- Ocean Spray® Cran-Tea™ Cranberry
- Ocean Spray® 100% Premium Juice Cranberry Apple
- Ocean Spray® 100% Cranberry Concord Grape
- Ocean Spray® 100% Juice Cranberry Raspberry
- Ocean Spray® 100% Juice Cranberry Pomegranate
- Ocean Spray® 100% Juice Tropical Citrus Fruit & Vegetable
- Ocean Spray® Light Tropical Citrus Fruit And Vegetable
- Ocean Spray® 100% Juice Cranberry Pomegranate Blueberry Fruit  &
  Vegetable
- Ocean Spray® Pink Cranberry Passionfruit Juice Drink
- Ocean Spray® 100% Juice Cranberry Mango
- Ocean Spray® Pink Lite Cranberry Juice Drink
- Ocean Spray® Light Cran-Mango™
- Ocean Spray® Pink Cranberry Juice Drink
- Ocean Spray® Pink Lite Cranberry Juice Drink
- Ocean Spray® Pink Cranberry Juice Drink
- Ocean Spray® Ruby Pomegranate
- Ocean Spray® Diet Cran-Tea™
- Ocean Spray® 100% Juice Cranberry Pineapple
- Ocean Spray® Diet Cran-Pineapple™
- Ocean Spray® Mocktails Tropical Citrus
- Ocean Spray® Cran-America™
- Ocean Spray® Pink Cranberry Juice Drink
- Ocean Spray® Cranharvest™ Cranberry Apple Cider
- Ocean Spray® Diet Cran-Raspberry™
- Ocean Spray® Diet Cran-Apple™

7

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

- Ocean Spray® Diet Cranberry
- Ocean Spray® Diet Cran-Grape™
- Ocean Spray® Cranberry Cranenergy™
- Ocean Spray® Diet Ruby Red
- Ocean Spray® New Light 50 Cranberry Grape
- Ocean Spray® Sparkling Citrus Tangerine
- Ocean Spray® Cranenergy™ Sparkling Diet Cranberry
- Ocean Spray® Ruby Cherry
- Ocean Spray® Cherry Juice Cocktail
- Ocean Spray® Cranenergy™ Sparkling Cranberry
- Ocean Spray® Sparkling Pink Cranberry Juice Drink
- Ocean Spray® Pom Blue Sparkling Beverage
- Ocean Spray® Sparkling Cranberry
- Ocean Spray® Diet Pom Blue Sparkling Beverage
- Ocean Spray® Sparkling Diet Cranberry
- Ocean Spray® Sparkling Cran-Raspberry™
- Ocean Spray® Sparkling Cran-Grape™
- Ocean Spray® Diet Cran-Lemonade™
- Ocean Spray® Cran-Mango™
- Ocean Spray® Ruby Cranberry
- Ocean Spray® 100% Citrus Tangerine Orange
- Ocean Spray® 100% Citrus Mango Pineapple
- Ocean Spray® Cran-Tropical™ Juice Drink
- Ocean Spray® Light Cranberry Apple
- Ocean Spray® Diet Cran-Mango™
- Ocean Spray® Light Ruby Red
- Ocean Spray® Blueberry Juice Cocktail
- Ocean Spray® Blueberry Pomegranate
- Ocean Spray® Diet Blueberry Pomegranate
- Ocean Spray® Pomegranate Cranenergy™
- Ocean Spray® Light Cran-Pomegranate™
- Ocean Spray® Wave ™ Mango Pineapple
- Ocean Spray® Raspberry Cranenergy™
- Ocean Spray® Diet Cran-Blackberry™
- Ocean Spray® New Light 50 Cranberry Raspberry.

Excluded from the Settlement Class are (1) any judicial officer presiding over the action; (2) the Defendant, its subsidiaries, parent companies, successors,

8

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1    predecessors, and any entity in which Defendant or its parent has a controlling
2    interest, and each of their current or former officers, directors, and employees; (3)
3    legal representatives, successors, or assigns of any such excluded person; and (4)
4    any person who properly executes and files a timely request for exclusion.

5        The Settlement Agreement provides that Ocean Spray will pay
6    $5,400,000.00 into a settlement fund. ECF No. 232-3, Marron Decl., Ex. 1,
7    Agreement § 7.4. This fund will be used, among other things, to pay all authorized
8    claims to the Settlement Class Members, the costs of settlement administration and
9    notice to the Class Members, any necessary taxes and expenses, Class Counsel's
10   fees and expenses, and incentive awards to the named Plaintiffs. *Id.* § 7.6. For
11   Authorized Claimants, Ocean Spray will provide $1.00 in cash from the Settlement
12   Fund per bottle of Products purchased (any size) during the Class Period, up to 20
13   bottles, limited to one claim per household, with a *pro rata* adjustment if necessary
14   as described below. *Id.* § 7.2.1. No additional proof of purchase is required beyond
15   a timely and properly submitted claim form. *Id.* § 7.2.1. The settlement provides
16   for a *pro rata* reduction of the amount afforded each Claimant if the claims exceed
17   the amount in the settlement fund (*id.* § 7.2.3) or a *pro rata* increase of the amount
18   afforded each Claimant if the settlement fund is not exhausted. *Id.* § 7.2.3. The
19   valid claims appear to likely exceed the settlement amount resulting in a slight *pro*
20   *rata* decrease.

21       The Settlement also provides for valuable injunctive relief. Under the terms
22   of the Settlement,  Ocean Spray agrees that within 12 months after the Final
23   Approval Effective Date, Ocean Spray will discontinue manufacturing, for retail
24   sale in the United States, the Products that contain the artificial versions of malic
25   acid and/or fumaric acid as an ingredient with labels that contain the claim "no
26   artificial flavors," provided Ocean Spray shall be permitted to exhaust existing
27   label stock purchased, printed, or ordered prior to the Final Approval Effective
28   Date even if the associated Products are manufactured later than 12 months after
     the Final Approval Effective Date. *Id.* § 7.3. By removing the allegedly misleading

9

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

labeling, any further alleged economic injury to consumers is prevented. The injunctive relief provided by this settlement provides significant value to consumers, continuing long into the future.

### III.    NOTICE AND CLAIMS PROCESS

The Court finds that the Class has received the best notice practicable and that the notice complies with due process requirements. The Parties' selection and retention of Classaura LLC as the Notice Administrator was reasonable and appropriate. Based on the Declaration of Gajan Retnasaba, the Court hereby finds that the Settlement Notices were published to the Class Members substantially in the form and manner approved by the Court in its Preliminary Approval Order. ECF No. 248-2. The Settlement Notices provided fair, effective and the best practicable notice to the Class of the Settlement and the terms thereof. The Notices also informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, and set forth the date, time, and place of the Fairness Hearing and Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing. The Court further finds that the Settlement afforded Class members a reasonable period of time to exercise such rights. *See Weeks v. Kellogg Co.*, No. CV 09-8102(MMM)(RZx), 2013 WL 6531177, at *22 (C.D. Cal. Nov. 23, 2011) (class members' deadline to object or opt out must arise after class counsel's fee motion is filed); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (same). The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions. The Court also finds that Defendant has satisfied all notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, as attested to by the Retnasaba Declaration.  ECF No. 248-2.

As of June 16, 2020, Classaura received 259,882 claim forms from prospective class members.  *Id.* ¶ 17. Out of the total claim forms received,

10

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1  Classaura has found 64,728 claim forms to be invalid due to being duplicative or
2  not meeting the settlement criteria. *Id.* ¶ 18.  In a supplemental declaration filed on
3  July 23, 2020, Classaura stated it received an additional 51,503 claim forms of
4  which 22,554 were deemed invalid due to duplication or not meeting the settlement
5  criteria.  ECF No. 256, Retnasaba Suppl. Decl. ¶ 4. Therefore, 28,949 additional
6  claims forms were received for a total of 224,103 valid claim forms. *Id.*  The
7  average claim form reported 16.3 purchases. *Id.* Thus, Classaura estimates that the
8  total number of valid claims that will be paid is 3,661,994. *Id.* In addition, there
9  have been 13 requests for exclusion from the settlement[2] and no class members
10  have objected to the settlement. ECF No. 256, Retnasaba Suppl. Decl. ¶ 5.

11  **IV.    FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

12       "[T]here is a strong judicial policy that favors settlements, particularly where
13  complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d
14  1095, 1101 (9th Cir. 2008).  Approval of a proposed class action settlement is
15  governed by Federal Rule of Civil Procedure 23(e). "Rule 23(e) was amended in
16  2018 to create uniformity amongst the circuits and to focus the inquiry on whether
17  a proposed class action is 'fair reasonable, and adequate.'" *Moreno v. Beacon*
18  *Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 1139672, at *5 (S.D. Cal.
19  Mar. 9, 2020) (J. Curiel).  "[T]he 2018 amendment to Rule 23(e) establishes core
20  factors district courts must consider when evaluating a request to approve a
21  proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-
22  0175-TOR, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

23       Rule 23(e) now provides that the Court may approve a class action
24  settlement "only after a hearing and only on a finding that it is fair, reasonable, and
25  adequate after considering whether: (A) the class representatives and class counsel
26  have adequately represented the class; (B) the proposal was negotiated at arm's

27

28  ―――――――――――――――
    [2] Classaura reports that it received one day late request to opt-out of the settlement.  ECF No.
    256, Retnasaba Suppl. Decl. ¶ 5.

length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

"Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement." *Zamora*, 2019 WL 1966112, at *2. "The purpose of the amendment to Rule 23(e)(2) is establish [sic] a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." *Id*. Factors that the Ninth Circuit have typically considered include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"While the Ninth Circuit has yet to address the amendment to Rule 23(e)(2) . . . the factors in amended Rule 23(e)(2) generally encompass the list of relevant factors previously identified by the Ninth Circuit." *Zamora*, 2019 WL 1966112, at *2 (alteration in original). Indeed, "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's

instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)." *In re Extreme Networks, Inc. Sec. Litig.,* No. 15-CV-04883-BLF, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019); *see also Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

### A.    Adequate Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." Final approval criteria—Rule 23(e)'s multifactor test, 4 NEWBERG ON CLASS ACTIONS § 13:48 (5th ed.). A determination of adequacy of representation requires that "two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000), *as amended* (June 19, 2000) (citing *Hanlon*, 150 F.3d at 1020); *see also Hefler*, 2018 WL 6619983, at *6.

The Court finds that Class Counsel and the Class Representatives have adequately represented the Class. The proposed class representatives in this action have no conflicts of interest with other class members and have prosecuted this action vigorously on behalf of the Class.  Each of the named Plaintiffs alleged they have suffered the same injuries as the absent class members because each purchased an Ocean Spray beverage Product, for personal and household use, in reliance on the "No Artificial Flavors" statement on the Product label. *See* ECF No. 229, FAC. Each of the named Plaintiffs pursued this action vigorously on behalf of the class and each has kept informed about the status of the proceedings. On August 4, 2018, Ocean Spray took the deposition of Plaintiff Crystal Hilsley. Plaintiff William Riley was similarly willing to sit for a deposition and both of the

named Plaintiffs were fully prepared to testify at trial. Accordingly, the named Plaintiffs have adequately represented the Class.

The Court finds that Class Counsel have also vigorously represented the Class and have no conflicts of interest. The Settlement was negotiated by counsel with extensive experience in consumer class action litigation. Through the discovery process, Class Counsel has obtained sufficient information and documents to evaluate the strengths and weaknesses of the case. *See Final approval criteria—Rule 23(e)(2)(A): Adequate representation*, 4 NEWBERG ON CLASS ACTIONS § 13:49 (5th ed.) ("if extensive discovery has been done, a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information."). Based on their experience, Class Counsel have concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 976 (9th Cir. 2009) (Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). Accordingly, the Court finds that Class Counsel and the Class Representatives are adequate representatives of the Class.

## B. Arm's Length Negotiations

Regarding the negotiation process, the Court finds that the Settlement Agreement is the result of an adversarial, non-collusive, and arms-length negotiation. Here, the settlement was negotiated at arm's length after hard-fought litigation and discovery. The Parties did not begin settlement discussions until after the Court had entered Orders on Plaintiff Hilsley's Motion to Exclude (ECF No. 105, and Motion for Partial Summary Judgment, ECF No. 101, and Defendant

14

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1   Ocean Spray's Motion for Summary Judgment, ECF No. 108, and Motion to
2   Decertify the Class, ECF No. 109. Settlement discussions also did not begin until
3   after the Parties had exchanged written discovery and documents, which speaks to
4   the fundamental fairness of the process. *See Nat'l Rural Telecomms. Coop. v.*
5   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following
6   sufficient discovery and genuine arms-length negotiation is presumed fair.").
7   Further, settlement discussions did not begin until this Court entered a Pretrial
8   Order and encouraged the parties to discuss settlement. The time that it took to
9   work out significant details and vigorous disagreements between the parties and
10  the parties' need for a settlement conference in front of Judge Dembin demonstrate
11  that this proposed resolution was the product of heavily disputed and arm's length
12  negotiation. The settlement negotiations were hard-fought, with both Parties and
13  their counsel thoroughly familiar with the applicable facts, legal theories, and
14  defenses on both sides.

15      Under the terms of the settlement, class members who submit a timely claim
16  will be entitled to actual monetary relief that includes $1.00 in cash from the
17  Settlement Fund per bottle of Products purchased (any size) during the Class
18  Period up to 20 bottles, adjusted if necessary for the number of claims filed,
19  limited to one claim per household. ECF No. 232-3, Marron Decl., Ex. 1,
20  Agreement § 7.2.1. Additionally, Ocean Spray has agreed to valuable injunctive
21  relief. *Id.* § 7.3. Class Counsel intends to request a fee and out-of-pocket expense
22  award of up to 33.33% of the Settlement Fund, *id.* § 8.1. This amount is not
23  disproportionate to the value of the recovery received by the Class. The settlement
24  agreement also does not contain a "clear sailing" provision "in which defendant[]
25  agreed not to object to an award of attorneys' fees." *See In re Bluetooth Headset*
26  *Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The settlement is also not
27  contingent upon an award of attorneys' fees to class counsel and the amount of
28  fees awarded is within the sole discretion of the Court. Finally, the settlement
    agreement does not contain a "kicker" arrangement whereby unpaid attorneys' fees

15

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1  revert to the defendant. *Id.* at 949; ECF No. 232-3, Marron Decl., Ex. 1,

2  Agreement § 8.1. Instead, unpaid attorneys' fees will be added to the class fund

3  and will not revert back to Ocean Spray. Accordingly, the Court finds no signs of

4  conflicts of interest, collusion, or bad faith in the parties' settlement negotiation

5  process.

6        **C.    Adequate Relief**

7        The Court concludes that the relief provided for the Class is adequate. Ocean

8  Spray has agreed to settle this matter for a non-reversionary total of $5,400,000.

9  ECF No. 232-3, Marron Decl., Ex. 1, Agreement § 7.4. In lieu of taking this matter

10  to trial with the possibility of obtaining no relief, the Court finds that this is an

11  excellent result for the Class. Further, the $5,400,000 nationwide settlement

12  amount is reasonable considering that damages would be limited to a fraction of

13  total sales if Plaintiffs were to prevail at trial. Damages for the nationwide class

14  would be based on the price premium method, which is based on the difference

15  between the value of the Products with the "No Artificial Flavors" statement and

16  the actual value received.

17        The amount of recovery per claimant is also adequate considering that

18  Settlement Class Members can claim $1.00 in cash from the Settlement Fund per

19  bottle of Products purchased (any size) during the Class Period, up to 20 bottles,

20  limited to one claim per household. *Id.* § 7.2.1. Here, Classaura received 224,103

21  valid claim forms.  ECF No. 256, Retnasaba Suppl. Decl. ¶ 4. The average valid

22  claim form reported 16.3 purchases of Ocean Spray Products. *Id.* Accordingly, the

23  total number of valid claims that will be paid will be 3,661,994. *Id.* Once notice

24  and administration costs along with Plaintiffs' requested attorneys' fees, costs, and

25  incentive awards are deducted from the $5,400,000 Settlement Fund, there will be

26  approximately $3,177,965.00[3] available for distribution to the Settlement Class.

27

28  _____
[3] When the motion was filed on June 18, 2020 there was approximately $3,185,430.00 available
for distribution. ECF No. 248-1 at 25. But based the supplemental declaration of Retnasaba on
July 23, 2020, the total amount to be distributed is $3,177,965 with the increased administration

16

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

This means there will be a slight *pro rata* decrease and $.86[4] will be paid per bottle claimed for each valid and timely claim submitted. ($3,177,965.00 is available funds for distribution / 3,661,994 valid claims = $.86 per claim). Because the average valid claim form reported 16.3 purchases, the average settlement class member will receive approximately $14.02.[5]

The Court finds that this recovery is adequate considering that Plaintiffs calculated the average price of the Ocean Spray products at $3.25 *See* ECF No. 192-5. The recovery per purchase (up to twenty purchases per household) for each claimant is an excellent result considering it represents a large fraction of total damages alleged by Plaintiffs and that Plaintiffs believed could have been recoverable at trial. Indeed, Hilsley's expert, Dr. Belch, opined that the price premium attributable to the "No Artificial Flavors" claim is roughly 19%. (*See* ECF No. 192-5). Taking Hilsley's presumed average retail price of $3.25 and price premium of 19%, the damages for each Product purchased could total 61 cents. ($3.25 x 19% price premium = 61 cents). Moreover, the settlement agreement provides for valuable injunctive relief. ECF No. 232-3, Marron Decl., Ex. 1, Agreement § 7.3.

Balancing all of the factors that go into protracted litigation and taking this into consideration, the Court finds that the amount offered in the settlement is fair and reasonable.

### 1.    *Costs, Risks, and Delay of Trial and Appeal*

---

cost from $404,750, ECF No. 248-2, Retnasaba Decl. ¶ 21, to $412,215, ECF No. 256, Retnasaba Suppl. Decl. ¶ 7.

[4] At the hearing Class Counsel indicated his calculation resulted in $.85 per bottle being paid for the claims. However, based on the numbers, the Court's calculation still remains $.86 per bottle. The $0.01 difference is not material to the Court's ultimate conclusion that the recovery is adequate.

[5] Again, at the hearing, Class Counsel stated that based on his $.85 per bottle calculation, the average settlement class members will receive is about $13.85.

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

The Court concludes that the costs, risks, and delay of trial and appeal further support final approval. Proceeding in this litigation in the absence of settlement poses various risks including the possibilities of Plaintiffs losing at trial or on appeal. Such considerations have been found to weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### 2.    *Effectiveness of Proposed Method of Distributing Relief to the Class*

The Court finds that the claims process was straightforward and allows Settlement Class members to make a claim by submitting a valid and timely Claim Form to the Settlement Administrator without complication. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous.").

The Settlement Agreement here provides for pro rata distribution to class, which will ensure that class members receive as much of the settlement fund as possible. This *pro rata* distribution ensures that Settlement Class Members will receive the maximum amount of the settlement fund and that no money will revert back to Defendant. *See McGrath v. Wyndham Resort Dev. Corp.*, No. 15CV1631 JM (KSC), 2018 WL 637858, at *6 (S.D. Cal. Jan. 30, 2018) (finding a non-reversionary settlement fund to be "fair, reasonable, and adequate."). As discussed above, there will be a slight *pro rata* decrease due to the number of valid claims submitted and approximately $.86 will be paid out for each of the estimated 3,661,994 valid claims. Because the average valid claim form reported 16.3 purchases, the average settlement class member will receive approximately $14.02

18

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1  from the settlement fund. Accordingly, the Court hereby approves the proposed
2  method of distributing funds to the Class.

3        **3.      The Requested Attorneys' Fees, Costs, and Incentive Awards Are**
4                **Fair and Reasonable**

5        Class counsel seeks attorneys' fees in the amount of $1,593,924.83 which
6  represents 29.51% of the common fund and costs in the amount of $205,895.17.
7  ECF No. 245-1. Based on the reasoning below, the Court finds that the attorneys'
8  fee and costs are reasonable.

9        **4.      Agreements Under Rule 23(e)(3)**

10       Rule 23(e)(3) requires that the Parties "must file a statement identifying any
11  agreement made in connection with the [settlement] proposal." Fed. R. Civ. P.
12  23(e)(3). Rule 23(e)(5)(B) also requires court approval for any consideration paid
13  for "forgoing or withdrawing an objection." Fed. R. Civ. P. 23(e)(5)(B). The Court
14  has been advised that Class Counsel has entered into a confidential settlement
15  agreement with counsel for the Plaintiffs in the related action titled *Froio, et al. v.*
16  *Ocean Spray Cranberries, Inc.*, Case No. 1:18-cv-12005-FDS (D. Mass. Sept. 24,
17  2018) ("*Froio*") that provides for incentive payments and attorneys' fees for the
18  *Froio* plaintiffs for their efforts in prosecuting that action.

19       The Court finds that this agreement is reasonable in light of the fact that the
20  present settlement will encompass the *Froio* Plaintiffs' claims and because the
21  *Froio* Plaintiffs previously sought to intervene in this action for purpose of seeking
22  attorneys' fees and costs. ECF No. 233. Although the Motion to Intervene was
23  denied, this Court recognized that the *Froio* Plaintiffs could still object to the
24  settlement for purposes of seeking incentive payments and attorneys' fees. ECF
25  No. 240 at 11:15-17. The *Froio* Plaintiffs could also appeal the Court's ruling on
26  their Motion to Intervene.

27       The confidential settlement agreement resolves the *Froio* Plaintiffs' claims
28  for attorneys' fees and incentive awards thereby ensuring that relief provided to the
Settlement Class in this action will not be delayed. ECF No. 255 (UNDER SEAL).

19

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

The payment made under the confidential agreement will also be deducted from the attorneys' fees awarded to Class Counsel in this action and therefore will not diminish the recovery to the Class in any way. Accordingly, the Court finds that the agreement between Class Counsel and the *Froio* Plaintiffs is fair and reasonable and the Court hereby approves the agreement under Rule 23(e)(5)(B).

### D.    Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." *Final approval criteria—Rule 23(e)(2)(D): Intra-class equity,* 4 NEWBERG ON CLASS ACTIONS § 13:56 (5th ed.). The Court finds that the apportionment of relief among Class Members treats class members equitably. As discussed above, each valid claim submitted will be paid approximately $.86 following a slight pro rata decrease. Because each class member is treated equally, the Court approves the settlement as fair, reasonable, and adequate.

### E.    Absence of Governmental Participation

Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class-action settlement, CAFA presumes that—once put on notice—state or federal officials will "raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *see also LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26, 2013) (same); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2013 WL 1120801 at *8 (N.D. Cal. Mar. 18, 2013) (same). To date, no state or federal official has raised any objection to the settlement.

20

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

**F.     The Reaction of the Class**

In order to assess the reaction of class members, the Court considers the number of opt-out requests as well as the number of objections to the settlement. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 812 (3rd Cir.1995) ("In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors"); *Pallas v. Pacific Bell*, No. C–89–2373 DLJ, 1999 WL 1209495, *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness"). It is well established that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (collecting cases).

Classaura has received a total of 224,103 valid claim forms. ECF No. 256, Retnasaba Suppl. Decl. ¶ 4. Settlement Class members are eligible to request payment for up to twenty purchases of Ocean Spray Products per household on their claim forms and the average claim form reported 16.3 purchases. *Id.* Thus, Classaura estimates that the total number of valid claims that will be paid is about 3,661,994, and the average class member will receive $14.02 from the Settlement Fund. In addition, according to Classaura, there have been 13 requests for exclusion from the settlement and no class members have objected to the settlement as of June 16, 2020. *Id.* ¶ 5.

However, Class Counsel received two letters from class members expressing a desire to object to the settlement and received fifteen letters from class members expressing dissatisfaction with the settlement. ECF No. 248-8, Marron Decl. 18; *id.*, Ex. 1. Because it was unclear whether these class members sought exclusion from the settlement, Class Counsel responded with a written letter providing detailed instructions on how to opt-out of the settlement. ECF No. 248-8, Marron Decl., Ex. 1. On July 9, 2020, the Court received two Objections from Michael

21

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

Gaskins, Jr. and Shamara Sawyer.  ECF Nos. 250, 252. The letters express their dissatisfaction and disagreement with the terms of the settlement.  *Id.* In response, Class Counsel argue that these letters are not Objections but merely express dissatisfaction with the settlement and do not request exclusion nor state an objection as required by Rule 23(e) or the Settlement Agreement. ECF No. 253.

Rule 23(e) provides that any objection must state "whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e). The Settlement Agreement provides that any objection must be filed with the Court and sent to counsel for the parties. ECF No. 232-3, Agreement ¶ 5.2. In order to be effective, "Objections must be in writing and accompanied by documents or other evidence, as well as any factual or legal argument the objecting Settlement Class member intends to rely upon in making his or her Objection." *Id.* ¶ 5.3. Objections must include, *inter alia,* "(c) a statement describing the Objector's membership in the Settlement Class, including a verification under oath as to the date, name of the Products purchased, and the location and name of the retailer from whom the Objector purchased the Products, and all other information required by the Claim Form; (d) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (e) copies of any papers, briefs, or other documents upon which the objection is based; (f) a list of all persons who will be called to testify in support of the objection; (g) a statement of whether the Objector intends to appear at the Final Approval Hearing (note: if the objector intends to appear at the Final Approval Hearing through counsel, the objection must also state the identity of all attorneys representing the objector who will appear at the Final Approval Hearing); (h) a list of the exhibits that the Objector may offer during the Final Approval Hearing, along with copies of such exhibits." *Id.*

Here, the two Objections filed with the Court generally express dissatisfaction over the $1 per bottle with a maximum of 20 bottles as an "insult" or "slap in the face." ECF Nos. 250, 252. As a threshold matter, the Court finds

22

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

that each Objection is not proper under Rule 23(e) as each fails to state "whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Fed. R. Civ. P. 23(e). Moreover, even if the Court were to construe the two letters as valid Objections, they do not comply with the provisions of the Settlement Agreement which requires a host of information concerning an Objection. *See* ECF No. 232-3, Agreement ¶ 5.2. Of importance is providing a statement of the grounds for the objection as well as legal support and/or documentation to support his or her position that the settlement is an "insult" or a "slap in the face" and not reasonable. *Id.* The two Objectors have failed to provide any factual or legal support for their dissatisfaction. Accordingly, the Court overrules the Objections.

Based on the 224,103 valid claims, the opt-out rate (13 opt-outs) is .000058 percent and objection rate (2 objections) is .0000089 percent. Based on this, the Court finds that the response from Class members has been overwhelmingly positive. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("The court had discretion to find a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections [0.014 percent]"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where 90,000 class members received notice, and 45 objections were received); *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *15 (N.D. Cal. Apr. 22, 2010) (finding that an opt-out rate of 0.4 percent supported "the fairness of the Settlement"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (finding that an opt-out rate of 0.10614 percent and an objection rate of 0.0052 percent represented "overwhelming support" for the settlement by class members and "strong circumstantial evidence supporting the fairness of the Settlement"). This positive reaction to the Settlement indicates that this Court "'may appropriately infer that [the] class action settlement is fair,

23

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

1   adequate, and reasonable when few class members object to it.'" *Garner*, 2010 WL
2   1687832, at *14.

3   **V.     CERTIFICATION OF SETTLEMENT CLASS**

4            When presented with a proposed settlement, a court must first determine
5   whether the proposed settlement class satisfies the requirements for class
6   certification under Rule 23. In assessing those class certification requirements, a
7   court may properly consider that there will be no trial. *Amchem Prods., Inc. v.*
8   *Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only
9   class certification, a district court need not inquire whether the case, if tried, would
10  present intractable management problems . . . for the proposal is that there be no
11  trial."). For the reasons discussed below, the Court finds that the Settlement Class
12  meets the requirements of Rule 23(a) and (b).

13           **A.     Rule 23(a)**
14           *1.     Numerosity*

15           Rule 23(a)(1) requires that "the class is so numerous that joinder of all
16  members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "As a general matter,
17  courts have found that numerosity is satisfied when class size exceeds 40 members,
18  but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190
19  F.R.D. 649, 654 (C.D. Cal. 2000). Here, there have been approximately 224,103
20  valid claims submitted and the Settlement Class obviously satisfies the numerosity
21  requirement. Accordingly, the Court finds that the proposed Class is so numerous
22  that joinder of their claims is impracticable.

23           *2.     Commonality*

24           Rule 23(a)(2) requires the existence of "questions of law or fact common to
25  the class." *See* Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiffs
26  and class members' claims "depend on a common contention," "capable of class-
27  wide resolution . . . [meaning] that determination of its truth or falsity will resolve
28  an issue that is central to the validity of each one of the claims in one stroke." *Wal-*
    *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Because the commonality

                                            24
    *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

requirement may be satisfied by a single common issue, it is easily met. 1 H.
Newberg & Conte, NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992).

The Court finds that there are ample issues of both law and fact here that are
common to the members of the Class. All of the Class Members' claims arise from
a common nucleus of facts and are based on the same legal theories. Plaintiffs'
claim that the "No Artificial Flavors" statement on the Ocean Spray Product labels
is false and misleading because the Products allegedly contain artificial ingredients
(malic acid and fumaric acid) that function as flavors. These alleged
misrepresentations were made in a uniform manner to each of the Class Members.
Accordingly, commonality is satisfied by the existence of these common factual
issues. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448
(N.D. Cal. 1994) (commonality requirement met by "the alleged existence of
common discriminatory practices").

Second, Plaintiffs' claims are brought under legal theories common to the
Class as a whole. A legal theory common to the Class is itself sufficient to
establish commonality. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and
law need not be common to satisfy the rule. The existence of shared legal issues
with divergent factual predicates is sufficient, as is a common core of salient facts
coupled with disparate legal remedies within the class."). Here, all of the legal
theories asserted by Plaintiffs are common to all Class Members. Given that there
are virtually no issues which affect only particular, individual members of the
Class, the Court finds that commonality is satisfied.

### 3. *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiffs be
"typical of the claims . . . of the class." See Fed. R. Civ. P. 23(a)(3). "Under the
rule's permissive standards, representative claims are 'typical' if they are
reasonably coextensive with those of absent class members; they need not be
substantially identical." *See Hanlon*, 150 F.3d at 1020. In short, to meet the
typicality requirement, the representative plaintiffs simply must demonstrate that

the members of the settlement class have the same or similar grievances. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

The Court finds that the claims of the named Plaintiffs are typical of those of the Class. Like those of the Class, their claims arise out of the purchase of Ocean Spray Products for personal or household use after relying on Ocean Spray's allegedly misleading "No Artificial Flavors" representations. The named Plaintiffs have precisely the same claims as the Class and must satisfy the same elements of each of their claims, as must other Class Members. Supported by the same legal theories, the named Plaintiffs and all Class Members share claims based on the same alleged course of conduct. The named Plaintiffs and all Class Members have allegedly been injured in the same manner by this conduct. Therefore, the Court finds that the Plaintiffs satisfy the typicality requirement.

### 4. *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a)(4). Adequacy of the class representatives and Class Counsel was fully addressed in Section IV(A) of this Court's Order above. Accordingly, adequacy of representation is satisfied.

### B. The Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed class. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

### 1.    *Predominance*

The Court finds that the proposed Class is well-suited for certification under Rule 23(b)(3) because questions common to the Class Members predominate over questions affecting only individual Class Members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Id.* As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 619-62. In this case, common questions of law and fact exist and predominate over any individual questions, including, in addition to whether the settlement is reasonable (*see Hanlon*, 150 F.3d at 1026-27), *inter alia*: (1) whether Ocean Spray's representations regarding its "No Artificial Flavors" claims were false and misleading or reasonably likely to deceive consumers; (2) whether Ocean Spray violated the CLRA, UCL, FAL and the MGL; (3) whether Ocean Spray defrauded Plaintiff and the Class Members; and (4) whether the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution, and if so, the nature and amount of such relief.

There are no concerns here about certifying a nationwide settlement class under *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). In *Mazza*, the Ninth Circuit held that, when certifying a nationwide class, the burden is on the defendant to show "'that foreign law, rather than California law, should apply to class claims.'" *See also In re MDC Holdings Securities Litigation*, 754 F. Supp. 785, 803–04, 808 (S.D. Cal. 1990) (the "court presumes that California law controls unless and until defendants show that choice of law problems render the common law claims inappropriate for class treatment."); *In re Seagate Technologies Sec. Litigation*, 115 F.R.D. 264, 269, 274 (N.D. Cal. 1987) (applying California law to nationwide class because "[a]bsent the defendant carrying [its]

27

1    burden, California law would govern the foreign state plaintiffs' claims" and noting

2    several other decisions reaching this conclusion).

3        The Ninth Circuit recently held that differences in state law do not defeat

4    predominance in the settlement class context. *See In re Hyundai & Kia Fuel Econ.*

5    *Litig.*, 926 F.3d 539, 561 (9th Cir. 2019). This is especially relevant here because

6    Ocean Spray is not opposing the certification of a nationwide class involving

7    California and Massachusetts law for purposes of the Settlement. Consequently,

8    for this Settlement, Ocean Spray is voluntarily subjecting itself to California and

9    Massachusetts law, including California's Consumer Legal Remedies Act and

10   Massachusetts' Consumer Protection Act, which provide greater protections to

11   consumers than other jurisdictions. Where, as here, Ocean Spray's products were

12   widely distributed and there are significant contacts with California residents, and

13   where Ocean Spray does not oppose California law applying to the nationwide

14   Settlement Class, the *Mazza* choice of law analysis is easily satisfied because the

15   interests of other states will not be impaired. *In re Hyundai & Kia Fuel Econ.*

16   *Litig.*, 926 F.3d at 561. Massachusetts' MGL can also be applied to the nationwide

17   Settlement Class because Ocean Spray maintains its principal place of business in

18   Massachusetts and Massachusetts has significant contacts with the claims of each

19   class member.

20       Moreover, the considerations driving the remainder of the *Mazza* analysis

21   are inapplicable here. In the settlement context, other states' interests would not be

22   undermined by the application of California and Massachusetts law because Ocean

23   Spray is opting into a regime that protects consumers more vigorously than other

24   states. In *Hanlon*, the Ninth Circuit also held that "the idiosyncratic differences

25   between state consumer protection laws are not sufficiently substantive to

26   predominate over the shared claims." *Hanlon*, 150 F.3d at 1022–23; *In re Hyundai*

27   *& Kia Fuel Econ. Litig.*, 926 F.3d at 561 ("no party argued that California's

28   choice-of-law rules should not apply to this class settlement"); *Sullivan v. DB*

     *Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("variations in the rights and

28

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (finding that differences between state consumer protection laws do not defeat predominance and certifying nationwide settlement class). Accordingly, the Court hereby finds that common issues predominate.

### 2. *Superiority*

The Court finds that the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Class Member likely lacks the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to try to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Accordingly, the Court finds that common questions predominate and a class action is the superior method of adjudicating this controversy.

## VI.    MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

Class counsel seeks attorneys' fees in the amount of $1,593,924.83 which represents 29.51% of the common fund and costs in the amount of $205,895.17. ECF No. 245-1.

While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The

Court has discretion to determine which calculation method to use in order to achieve a reasonable result. *Id.* at 942. At the fee-setting stage, the interests of the plaintiffs and their attorneys diverge and described as "adversarial"; therefore, the district court assumes a fiduciary role for the class plaintiffs. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

In common fund cases, a district court has discretion to apply either the percentage of the fund method or the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir. 1994). Once a method is selected, the Ninth Circuit encourages district courts to cross-check with the other method in order to guard against an unreasonable result. *In re Bluetooth*, 654 F.3d 944 ("Thus, even though the lodestar method may be a perfectly appropriate method of fee calculation, we have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.2002) ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *In re Toys R U-Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 459 (C.D. Cal. 2014) ("a court applying the lodestar method to determine attorney's fees may use the percentage-of-the-fund analysis as a cross-check"); *but see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (citing *In re Hyundai and Kia Fuel Economy Litig.,* 926 F.3d 539, 571 (9th Cir. 2019) (courts are not required to perform a "crosscheck" using the percentage method given difficulty in measuring dollar value of injunctive relief.)).

The Settlement Agreement provides that "Class Counsel may make an application for an award of Class Counsel's Fees and Expenses in the Litigation not to exceed 33.33% of the Settlement Fund" (ECF No. 232-3, Marron Decl., Ex. 1, Agreement at ¶ 8.1). The fee award sought in the present case is reasonable

1  when judged by the standards of this circuit. *See, e.g., In re Bluetooth Headset*
2  *Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The $1,593,924.83 fee
3  award accounts for 29.51% of the $5,400,000.00 Settlement Fund and is well
4  within the percentage range that courts have allowed in the Ninth Circuit. *Id.* at
5  942; *see also Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D.
6  Cal. 2010) ("typical range of acceptable attorneys' fees in the Ninth Circuit is 20%
7  to 33 1/3 % of total settlement value"); *Hopkins v. Stryker Sales Corp.*, No. 11-
8  2786, 2013 WL 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (acknowledging
9  same and awarding 30%); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377
10 (N.D. Cal. 1989) ("[a] review of recent reported cases discloses that nearly all
11 common fund awards range around 30%"); *Pokorny v. Quixtar, Inc.*, No. 07-00201
12 SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) (acknowledging same, stating
13 30% award is "the norm absent extraordinary circumstances that suggest reasons to
14 lower or increase the percentage" and granting fee request of 27.3%); *see also In re*
15 *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (award of 33% of
16 settlement fund as fees affirmed).

17      Moreover, "in cases under $10 million, the awards more frequently will
18 exceed the 25% benchmark." *Lopez v. Youngblood*, No. 07-474, 2011 WL
19 10483569, *13 (E.D. Cal. Sept. 1, 2011). Class Counsel's fee request is also
20 reasonable under the lodestar method. Class Counsel's total lodestar in this action
21 equals $1,568,261.50. ECF No. 245-2, Marron Decl.; ECF No. 245-6, Elliott Decl.
22 Accordingly, the $1,593,924.83 fee award results in a positive multiplier of 1.01.
23 *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001)
24 ("Multipliers can range from 2 to 4, even higher."); *Van Vranken v. Atlantic*
25 *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (3-4 are in the "range [of]
26 common" multipliers for sophisticated class actions). Moreover, the fee award is
27 justified based on the excellent results obtained, the experience and skill of
28 Counsel, the complexity of issues, the risk of non-payment, and the preclusion of

31

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

other work. Pursuant to Federal Rule of Civil Procedure 23(h)[6], the Court orders
that Class Counsel is entitled to reasonable attorneys' fees incurred in connection
with the action in the amount of **$1,593,924.83**, to be paid at the time and in the
matter provided in the Settlement Agreement.

Class Counsel are also entitled to reimbursement of the out-of-pocket costs
they reasonably incurred investigating and prosecuting this case. *See In re Media
Vision Tech. Sec. Litig*., 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v.
Electric Auto-Lite Co.,* 396 U.S. 375, 391-92 (1970)). Based on the declarations
submitted by Class Counsel in support of the Fee Motion, the Court finds that
Class Counsel have incurred out-of-pocket litigation expenses (paid and un-
reimbursed) in the amount of $205,895.17. Accordingly, the Court further awards
Class Counsel **$205,895.17** in litigation costs, to be paid at the time and manner
provided in the Settlement Agreement.

Plaintiffs seek $9,000 for an incentive award to Crystal Hilsley and $1,000
to William Riley. Incentive awards are designed to "compensate class
representatives for work done on behalf of the class, to make up for financial or
reputational risk undertaken in bringing the action, and, sometimes, to recognize
their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-
59. "Incentive awards are fairly typical in class action cases," but are ultimately
"discretionary." *Id.* at 958. In deciding whether to approve an incentive award,
courts consider factors including:

> 1) the risk to the class representative in commencing suit, both
> financial and otherwise; 2) the notoriety and personal difficulties
> encountered by the class representative; 3) the amount of time and
> effort spent by the class representative; 4) the duration of the litigation
> and; 5) the personal benefit (or lack thereof) enjoyed by the class
> representative as a result of the litigation.

---

[6] Rule 23(h) provides that the "court may award reasonable attorney's fees and nontaxable costs
that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

32

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD

*Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995). The Class Representatives in this action have actively participated in and assisted Class Counsel with this litigation for the substantial benefit of the Class. ECF No. 245-2, Marron Decl. ¶ 33; ECF No. 232-5, Hilsley Decl. ¶¶ 3-10; ECF No. 232-6, Riley Decl. ¶¶ 3-6. Each of the Class Representatives have reviewed material filings; have had continuous communications with Class Counsel; have reviewed and approved the Settlement Agreement; and were committed to securing substantive relief on behalf of the Class. ECF No. 245-2, Marron Decl. ¶ 33; ECF No. 232-5, Hilsley Decl. ¶¶ 3-10; ECF No. 232-6, Riley Decl. ¶¶ 3-6. Moreover, Plaintiff Crystal Hilsley actively participated in additional discovery and sat for a deposition. ECF No. 245-2, Marron Decl. ¶ 34. Accordingly, the Court awards incentive payments as follows: (a) **$1,000** incentive payment to Plaintiff William Riley; and (b) **$9,000** incentive payment to Plaintiff Crystal Hilsley.

## VII.    OTHER MATTERS

**Implementation of Settlement**. The Parties are hereby directed to implement the Settlement according to its terms and conditions.

**Enforcement of Settlement**. Nothing in this Final Approval Order shall preclude any action to enforce or interpret the terms of the Settlement. Any action to enforce or interpret the terms of the Settlement shall be brought solely in this Court.

**Retention of Jurisdiction**. The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, and this Final Order, and for any other necessary and appropriate purpose. Without limiting the foregoing, the Court retains continuing jurisdiction over all aspects of this case including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder, the Settlement Notice and sufficiency thereof, any objection to the

Settlement, any request for exclusion from the certified Class, the adequacy of representation by Class Counsel and/or the Class Representative, the amount of attorneys' fees and litigation expenses to be awarded Class Counsel, the amount of any incentive awards to be paid to the Class Representatives, any claim by any person or entity relating to the representation of the Class by Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Order, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this action and Settlement. Further, the Court retains continuing jurisdiction to enter any other necessary or appropriate orders to protect and effectuate the Court's retention of continuing jurisdiction provided that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under the Settlement Agreement.

**Dismissal of Action With Prejudice**. The claims against Defendant Ocean Spray Cranberries, Inc. in this action, including all individual and Class claims resolved in it, are hereby dismissed on the merits and with prejudice.

Pursuant to the Court's order granting summary judgment in favor of Arnold Worldwide LLC (Dkt. 193), the claims against Defendant Arnold Worldwide LLC in this action, including all individual and Class claims resolved in it, are hereby dismissed on the merits and with prejudice.

**IT IS SO ORDERED.**

Dated:  August 3, 2020

Hon. Gonzalo P. Curiel
United States District Judge

34

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-cv-2335-GPC-MDD